IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 4:18CR00975 CDP/JMB |
| v. ) | |
| ) | |
| DUSTIN BOONE, ) | |
| CHRISTOPHER MYERS, ) | |
| RANDY HAYES, and ) | |
| BAILEY COLLETTA, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT BAILEY COLLETTA'S**
**OBJECTION TO PRESENTENCE REPORT**

COMES NOW Defendant, Bailey Colletta, by and through her attorneys of record, and for her Objection to the Pre-Sentence Report, states the following:

On September 6, 2019, Defendant Colletta entered a plea of guilty pursuant to a written negotiated plea agreement to one count of a single count Superseding Information charging her with making a false statement to a Grand Jury, in violation of 18 U.S.C. § 1623(a).

On November 7, 2019, the Probation Office of the United States District Court for the Eastern District of Missouri filed its presentence report of the same date regarding Defendant Bailey Colletta. The report was prepared by Senior U.S. Probation Officer Ryan D. Wilke.

As noted in Paragraph 3 of the report, the parties to the plea agreement agreed that either party may request a sentence above or below the sentencing guidelines range. The parties further agreed that the base offense level is 24.

Paragraphs 3 through 8 of the Presentence Report sets forth the calculations for the enhancements and reductions under the sentencing guidelines. The parties agree that the resulting estimate of Total Offense Level as contained in Paragraph 8 is either 23 or 19. This variance in the Total Offense Level calculation as explained in Paragraph 5, is a result of Defendant's belief contrary to the Government's viewpoint, that a four level reduction is applicable pursuant to USSG §3B1.2(a) because she was a *minimal* participant in the underlying offense.

This disagreement of the parties concerning over the applicability of a minimal participant guideline reduction is further explained in Paragraph 75, page 16 of the Presentence Report. The argument against applying this reduction is premised on Application Note 2 in USSG 2X3.1, which says: "The adjustment from S3B1.2 (Mitigating Role) **normally** would not apply because an adjustment for reduced culpability in incorporated in the base offense level." [Emphasis added]

It is Defendant's position that this case and her role or participation in the underlying offense(s) for which her three co-defendants are charged is anything but "normal." To begin with, it is significant to note that Mr. Wilke, in his presentence report, tacitly agrees with the contrast between Defendant Colletta's role and that of the other defendants when he states in Paragraph 75: "Although it appears the defendant did play a minor role in the

2

instant offense..." Also, in Paragraph 25, page 8 Mr. Wilke states that Colletta is "...least culpable...."

The facts of this case provide a stark contrast between Defendant's conduct and that of her co-defendants which Defendant believes removes her circumstance from the language in Application Note 2 of what, "...normally would not apply..." and forms the basis of her objection to the report.

Paragraph 4 of the Authors' Comments which follow Application Note 2 in USSG 2X3.1 lends support to Defendant's objection and provides guidance to the Court. It states:

> "By using 'normally,' the Commission indicates that there will be cases when §3B1.2 would apply. If a sentencing court decides to apply §3B1.2, the resulting sentence would seem to be a guideline sentence, rather than a departure, because neither this guidance nor 3B1.2 precludes an adjustment under 3B1.2."

Context is important to the consideration of Defendant Colletta's minimal participation. Some of this context is provided within the Presentence Report and will be expanded upon here.

On September 17, 2017, the Civil Disturbance Teams ("CDT") teams were divided into "arrest teams" and "line teams." The line teams provided police presence and crowd control. After being deployed to a location, they marched into the disturbance areas in a military style column and dispersed into a line formation when necessary. Those members of the arrest teams were to be summoned to process any subjects that were arrested by the line teams.

Colletta was assigned to a CDT with Hays, co-defendants Boone and Myers, and other police officers. CDT teams were normally comprised of six members – five officers and a sergeant. The team Colletta was assigned to was designated as a Line Team. Line

3

team members were assigned to carry either a riot baton or a riot shield. Colletta was assigned to carry a shield. At the time, Colletta was approximately 5' 4" tall, weighed 140 pounds, and outfitted with riot gear in addition to her duty belt. She was encumbered with a protective ("bulletproof") vest, shin pads, knee pads, another light weight vest, oxygen mask, fire extinguisher, and a large, ill-fitting visor-equipped riot helmet that required constant adjusting for visibility. This fact coupled with her short stature in relation to the taller officers in front of her made it difficult for her to fully appreciate her surroundings as the column of CDT teams advanced toward the intersection of Olive and 14th Street.

Colletta does not seek to distance herself or deny the following statements in the Presentence Report regarding the lack of probable cause to arrest L.H. However, the statement: "Bailey Colletta who <u>initiated</u> the unlawful arrest but was not directly involved in the assault of L.H. is least culpable…" (Paragraph 25, page 8), needs to be addressed.

Colletta, together with other police officers, did in fact tell L.H. to "get on the ground." If that instruction to L.H. is legally construed to be the first step in effectuating a custodial arrest, then one would have to accept as accurate that such words mean she initiated the arrest.

However, without further context, use of the word "initiated" may imply that it was Colletta's decision and hers alone to arrest L.H. without probable cause. Such an implication would be misleading and one to which Defendant Colletta objects.

It ignores the herd mentality during the chaos of events on the evening of September 17, 2017. It ignores the fact that she was one of several other CDT members who "veered" off toward the corner of Olive and 14th street where L.H. was encountered. It suggests that

4

she was the one making the determination to veer from the column of officers marching north on 14th Street. It suggests that it was her decision to target L. H. for apprehension or arrest. It suggests that it was her that first broke ranks and led other CDT members and co-defendants over to L.H.'s position.

As has been noted, Defendant Colletta graduated from the St. Louis Metropolitan Police Academy in April 2017. In March 2017, one month prior to her graduation, she attained 24 years of age. Following graduation from the Academy, Sgt. Randy Hays was her initial field training officer ("FTO"). Colletta was a naïve, unmarried 23-year-old at the time. Hays was 31 and married. Hays engaged in a highly inappropriate romantic relationship with Colletta. Hays and his wife were divorced soon thereafter and the relationship between Colletta and Hays continued, and they were still romantically involved on the evening of September 17, 2017, when the assault of L.H. occurred.

Colletta, a probationary officer out of the Academy on the job for only five months, should not be cast as an instigator of L.H.'s arrest, but instead, a follower. When the veering off toward L.H. occurred, she followed Hays, her former FTO and paramour. She also followed the lead of other senior team members and policemen that converged on L.H., including her team's sergeant, Sgt. Anthony Caruso, who at the time was her FTO, having replaced Hays once the romantic relationship between Colletta and Hays became known to Department superiors.

This is not an excuse for Colletta including her voice to the chorus of officers telling L.H. to get to the ground. Rather, it is a fact – a fact of life. But it does add the needed context to her role and serves to demonstrate that Colletta's role was by comparison that

of a minimal participant and that she is deserving of a §3B1.2 Mitigating Role Adjustment of 4 levels.

A further circumstance supporting a four-level reduction under §3B1.2 is the fact that Colletta did not participate in the assault or any violence directed against L.H. Her conduct against L.H. by comparison to the other officers only consisted of her vocal command directing L.H. to get to the ground.

And that oral command to L.H. is not what brings her before this Court for sentencing. Her culpability stems from her after-the-fact statements made during her unfortunate, and ill-advised appearance before the Grand Jury, which she attended unaccompanied by her previous counsel.

Respectfully submitted,

KILO, FLYNN, BILLINGSLEY,
TRAME & BROWN, P.C.

By: /s/ JOHN A. KILO
JOHN A. KILO, #21674MO

By: /s/ MICHAEL W. FLYNN
MICHAEL W. FLYNN, #23342MO
Attorneys for
 Defendant Bailey Colletta
5840 Oakland Avenue
St. Louis, Missouri 63110
TELE:   314/647-8910
FAX:    314/647-3134
E-MAIL: jkilo@kiloflynn.com
        mflynn@kiloflynn.com

CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of November, 2019, a copy of the foregoing Objection of Defendant Bailey Colletta to Presentence Report was filed electronically with the Clerk of the Court in the United States District Court, Eastern District of Missouri, Eastern Division and to be served by the operation of the Court's electronic filing system upon all attorneys of record.

/s/JOHN A. KILO / MICHAEL W. FLYNN