UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) No.: S1-4:18-cr-00975-ERW |
| | ) |
| DUSTIN BOONE and | ) |
| CHRISTOPHER MYERS, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT DUSTIN BOONE'S MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF ALLEGED PRIOR BAD ACTS AND EVIDENCE OFFERED
UNDER THE FORFEITURE BY WRONGDOING DOCTRINE**

COMES NOW Defendant, Dustin Boone ("Defendant" or "Boone"), by and through undersigned counsel, and respectfully files this motion *in limine* requesting the exclusion from trial in this case evidence of alleged prior bad acts attributed by the Government to the Defendant, as well as evidence the Government seeks to admit under the forfeiture by wrongdoing exception to the hearsay rule. In support of this motion, Defendant states as follows:

**I.   STATEMENT OF FACTS**

**Evidence the Government Seeks to Offer Under the
Forfeiture by Wrongdoing Doctrine**

On September 17, 2017, the arrest of L.H. occurred while a FaceTime communication between Boone and his then-girlfriend, Ashley Ditto,[1] was active. L.H.'s arrest began at approximately 8:53 p.m. During the first 20 to 30 seconds of L.H.'s arrest, a recording made by LH.'s cell phone records multiple SLMPD officers yelling commands to L.H. The words used by these offices were "Get on the ground!", "Hands out! Hands out!" and "Let me see your hands!."

---

[1] For ease of reference and because at certain points referenced in this Motion she was his girlfriend and at other times his wife, she is referenced as "Ashley" in later points of this motion.

Ex. A. No other phrases were captured on the recording being utilized by officers involved in L.H.'s arrest. L.H.'s arrest was completed in a matter of minutes.

After leaving the scene of L.H.'s arrest, officers in the area, including Defendant Boone, proceeded to Washington Avenue. After proceeding to Washington Avenue on the evening of September 17, 2017, officers with the St. Louis Metropolitan Police Department were involved in the mass arrests of more than a hundred persons, in what has been termed by media accounts the "kettling" incident. *See* Ex. B, Rebecca Rivas, *St. Louis City Police Sued Over Kettling Arrests During Stockley Protests, ArchCity Defenders and Khazaeli Wyrsch File 12 Suits*, ST. LOUIS AMERICAN (Sept. 17, 2018).

One of the text messages the Government seeks to admit under the doctrine of forfeiture by wrongdoing was transmitted at 9:52 p.m. on September 17, 2017, approximately one hour after the arrest of L.H. In that text, Ashley texted Defendant Boone:

> "Lol  no! That's so gross. But damn you guys need to practice more. Even I was confused. One guy was sayin HANDS DOWN, HAND DOWN, Next dude saying HANDS UP. Then HANDS DOWN, HANDS DOWN, GET YOUR FUCKIN HANDS UP. 🤣 🤣 🤣 🤣"

*See* Notice at 23, Section V(B)(2).

It appears, both by time and subject matter, that this text, which the Government intends to offer under the theory that it makes reference to L.H.'s arrest, refers instead to officers' conduct during other arrests closer in time to the text, whether captured on Defendant Boone's FaceTime call or other livestreamed coverage of the aftermath of the protests and law enforcement's response. Significantly, no one on the recording L.H. made nearly an hour prior to this comment, capturing the circumstances of his arrest, says either "hands up," "hands down," or "get your fuckin hands up." She is almost certainly referencing the arrest or arrests of other individuals, and the text message is entirely lacking in relevance.

The only other statement the Government seeks to introduce under the forfeiture by wrongdoing hearsay exception is an entirely inconclusive statement. At approximately 3:19 p.m. on September 18, 2017, Boone texted Ashley, "Nothing about that story to anyone please. Not something I am proud of and not entertaining at all at this point. I love you." *Id*. The statement does not indicate what "story" is being referenced, and even if it were possible to draw the inference that the conversation in question had some relation to L.H.'s arrest, it's entirely unclear whether the communication was one regarding his involvement in the arrest in general, his interactions with other officers looking into the arrest, or otherwise. Any probative value to the statement is significantly outweighed by its prejudicial effect, and the prospect of confusion in calling on the jury to speculate as to what bearing, if any, it has on Defendant Boone's innocence or guilt.

## **Prior Bad Acts Evidence**

### A.     Use and Alleged Misuse of Prescription Medications

The Government disclosed its intent to introduce the following prior bad act evidence regarding Boone's and others' use of prescription medications:

- On November 8, 2016, at 10:00 a.m. and on November 10, 2016, at 9:00 a.m., Boone set reminders for himself to pick up his Concerta prescription from Target. (Government's Notice of Intent to Use Additional Inextricably Intertwined Evidence and/or Rule 404(b) Evidence, Rule 804(b)(5) Evidence, and Rule 6(e)(3)(E)(i) Motion ("Notice"), at 27, Section V(D)(1)-(2)).

- On May 15, 2017, at 9:44 a.m., Boone and Ashley exchanged texts regarding Ashley's prescription. (Notice at 28, Section V(D)(3)).

3

- On June 5, 2017, at 7:55 a.m., Boone's wife, Ashley, texted Boone a reminder as to where his prescription for Concerta was located in their shared household. (Notice at 28, Section V(D)(4)).

- On July 31, 2017, at 10:13 a.m., Boone and Ashley exchanged texts regarding the amount of Concerta doses remaining in his prescription, and her having taken some of the remaining doses. (Notice at 28-29, Section V(D)(6)).

- On October 2, 2017, at 7:46 p.m., Kyle Santa and Defendant Boone exchanged texts in which the two discussed the effects of Concerta and Adderall. (Notice at 29-30, Section V(D)(7)).

- On October 26, 2017, at 10:03 p.m., Defendant Boone texted Ashley to describe the effects of his new Adderall prescription versus his old prescription. (Notice at 30, Section V(D)(8)).

- From May 25, 2018, beginning at 4:00 p.m. through May 29, 2018, ending at 1:56 p.m., Marcin Zajac and Boone exchanged texts related to the prescription medication Mydayis and its related effects, duration, and dosage. (Notice at 30-31, Section V(D)(9)).

The Government's Notice does not address why the Government believes use of prescription drugs by Defendant Boone's then-girlfriend has any possible relevance to this case. The evidence relied on in the Government's notice further makes clear that Defendant Boone has prescriptions for Adderall and Concerta, and that individuals with whom Defendant Boone was communicating were considering getting prescriptions for the medications.

      **B.**    **Other Acts of Alleged Unnecessary Use of Force by Boone or Others**

The Government disclosed its intent to introduce the following prior bad act evidence regarding Boone's alleged use of force:

4

- On April 19, 2017, at 12:12 p.m., almost five months prior to the events of September 20, 2017, Boone relayed the details of an incident involving a suspect who was subdued and apprehended by the SLMPD through the use of a TASER to friends, relatives, and coworkers. (Notice at 18-19, Section V(A)(2)).

- On October 12, 2017, at 3:38 pm., almost one month following the events of September 20, 2017, Boone text McInerny a text indicating that Boone open-hand slapped an unidentified individual. (Notice at 20-21, Section V(A)(5)).

- On March 28, 2018, at 9:01 a.m., more than six months after the events of September 20, 2017, Boone exchanged texts with Beau Wethington regarding a minor who was in police custody that suggest that Boone or others with him "beat [his] ass." (Notice at 21-22, Section V(A)(7)).

    **C.**    **Use of Racial Slurs or Epithets in Text Messages Sent and Received by Boone**

The Government disclosed its intent to introduce the following prior bad act evidence regarding Boone's use of racial slurs and racially inappropriate language:

- On March 20, 2017, almost six months prior to the events of September 20, 2017, Boone sent a text message to Tim Strain at 9:07 a.m. that included a racial slur. (Notice at 16, Section V(A)(1)).

- On April 20, 2017, at 9:43 a.m., five months prior to the events of September 20, 2017, Boone received a text message from Brandon Hubbard that included a racial slur in reference to a suspect who was subdued and subsequently apprehended by the SLMPD through the use of a TASER on the prior day. (Notice at 18-19, Section V(A)(2)).

5

- On June 24, 2017, at 11:46 p.m., almost three months prior to the events of September 20, 2017, Boone sent a group text to his then-girlfriend, family, and friends that included a racial slur. (Notice at 19, Section V(A)(3)).

- On July 17, 2017, at 11:49 a.m., almost two months prior to the events of September 20, 2017, Boone sent a group text that included a racial slur. (Notice at 20, Section V(A)(4)).

      **D.**      **Alleged Misconduct Involving Taking of Cash by Boone**

On December 14, 2017, at 1:59 p.m., almost three months following the events of September 20, 2017, Boone texted Christopher Myers that he (Boone) took cash in the form of $20 bills from an unspecified location. (Notice at 21, Section V(A)(6)).

      **E.**      **FaceTime Communications**

The Government has disclosed its intent to offer records of FaceTime communications between Defendant Boone and Ashley, purportedly "to show that [they] were familiar with and frequently communicated with each other using FaceTime." (Notice at 22, Section V(B)(1)). The Government's Notice does not make clear why evidence of their familiarity with Facetime makes any issue more or less likely with respect to the charged allegation of a civil rights violation related to the arrest of L.H., and there does not appear to be any admissible connection.

    **II.**    **PRINCIPLES OF LAW AND ARGUMENT**

      **A.**      **The Text Messages and Other Evidence the Government Seeks to Offer Under the Forfeiture by Wrongdoing Exception Fail to Satisfy Basic Relevance Principles and are Inadmissible**

Forfeiture by wrongdoing is a doctrine that applies to "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Fed. R. Evid. 804(b)(6). "Rule 804(b)(6) requires, first, that [a party] engage in 'wrongdoing.'" *United States v. Scott*, 284 F.3d 758, 763–64 (7th Cir. 2002). "That word is not defined in the text of Rule 804(b)(6), although the advisory committee's notes

6

point out that "wrongdoing" need not consist of a criminal act." *Id*. It is "clear" that "causing a person not to testify at trial cannot be considered the 'wrongdoing' itself, otherwise the word would be redundant." *Id*. The rule "contemplates application against the use of coercion, undue influence, or pressure to silence testimony and impede the truth-finding function of trials." *Id*. "[A]pplying pressure on a potential witness not to testify, including by threats of harm and suggestions of future retribution, is wrongdoing." *Id. See also Steele v. Taylor*, 684 F.2d 1193, 1201 (6th Cir. 1982) (noting that wrongful conduct includes the use of force and threats, and "persuasion and control" by a defendant).

"Hearsay statements that fall under one or more hearsay exceptions are not automatically admitted." *United States v. Carneglia*, 256 F.R.D. 366, 372 (E.D.N.Y. 2009). "[A]fter the district court finds by a preponderance of the evidence that the hearsay statement is admissible under Fed.R.Evid. 804(b)(6), it must still perform the balancing test required under Fed.R.Evid. 403." *United States v. Dhinsa*, 243 F.3d 635, 655 (2d Cir. 2001). Federal Rules of Evidence 401 and 402 provide the following with respect to the relevance and admissibility of evidence:

> Evidence is relevant if:
> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
> (b) the fact is of consequence in determining the action..

*Id*. (Emphasis added.) "Irrelevant evidence is not admissible." Fed.R.Evid. 402. "Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *United States v. Croghan*, 973 F.3d 809, 823–24 (8th Cir. 2020) (quotation omitted).

Even when evidence is relevant, however, the trial court may exclude it "if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues,

7

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. A "court has wide latitude to exclude evidence as irrelevant and speculative." *United States v. Wilkens*, 742 F.3d 354, 364 (8th Cir. 2014); *see also United States v. Maestas*, 554 F.2d 834, 837 n. 2 (8th Cir. 1977) ("[E]vidence which is vague and speculative is not competent proof and should not be admitted into evidence.")

Forfeiture by wrongdoing is a hearsay exception and is only aimed at the admission of statements that would otherwise be inadmissible hearsay. Here, the two sets of statements the Government seeks to admit under the forfeiture by wrongdoing exception are irrelevant and inadmissible for other reasons.

Considering both time frame (approximately an hour after L.H.'s arrest) and subject matter (discussing statements— "hands up" and "hands down"—that were not made during L.H.'s arrest), the September 17 texts between Defendant Boone and his then-girlfriend, Ashley, have no relation to L.H.'s arrest and should be excluded on bedrock admissibility considerations of lack of relevance. Ashley's text appears to refer instead to officers' conduct during other arrests closer in time to the text, and likely to officers' conduct and phrasing in the "kettling" incident that took place after L.H.'s arrest.

With respect to the September 18, 2017 text messages in which Boone texted Ashley, "Nothing about that story to anyone please. Not something I am proud of and not entertaining at all at this point. I love you," any significance is speculative and not based on any sufficient basis. (Notice at 24, Section V(B)(2)). The statement does not indicate what "story" is being referenced, and is entirely unclear as to its subject matter. Any probative value to the statement is significantly outweighed by its prejudicial effect, and the prospect of confusion in calling on the

8

jury to speculate as to what bearing, if any, the statement has on Defendant Boone's innocence or guilt.

Even if the statements were relevant on some basis, the Government's attempt to stretch the forfeiture by wrongdoing doctrine to circumstances where there has been no evidence of coercion, undue influence, or pressure to silence testimony, only a lawful marriage of two individuals who had been together for years before the marriage and have a daughter together, goes far beyond the recognized boundaries of the doctrine identified in *Scott*, 284 F.3d at 763–64, and other federal circuit court authority. In support of this expansion of the meaning of "wrongdoing," the Government cites domestic violence prosecution cases involving unavailability of victims that serve, if anything, as only persuasive authority, that have been criticized as incorrectly expanding the doctrine, and that have no applicability here, where there is a complete absence of evidence of coercion in the parties' decision to marry. *See Massachusetts v. Szerlong*, 933 N.E.2d 633, 638 (Mass. 2010); *Fowler v. Fox*, 2020 WL 605349, at *4 (E.D. Cal. Feb. 7, 2020) (slip copy); 5 Federal Evidence § 8:134 (4th ed.) (criticizing *Szerlong* as possibly "rest[ing] on our common understanding of what is 'really going on' in domestic abuse cases… [and] a larger pattern of victimization that is hard to prosecute). The Government's proffered "forfeiture by wrongdoing" evidence should be excluded here.

### B. The Prior Bad Acts Evidence Offered by the Government is Unduly Prejudicial and is of Limited Probative Value

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). *See also*

9

*United States v. Harry*, 930 F.3d 1000, 1006 (8th Cir. 2019) ("Evidence of prior bad acts is not admissible to show criminal propensity; however, such evidence may be admitted for other purposes, such as proving knowledge or intent." (citing Fed. R. Evid. 404(b)). "By its very language, Rule 404(b) encompasses both prior convictions and other bad acts not resulting in conviction." *Harry*, 930 F.3d at 1006. "[T]he party seeking to admit [such] evidence must show it is '(1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect." *Id.* (alterations in original) (quotations omitted) (quoting *United States v. Turner*, 781 F.3d 374, 389 (8th Cir. 2015)).

"The requirement to balance probative value and prejudice is found in [Federal Rule of Evidence] 403[.]" *United States v. Williams*, 796 F.3d 951, 959 (8th Cir. 2015). Federal Rule of Evidence 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

*Id*. (Emphasis added.) "[C]ertain circumstances call for the exclusion of evidence which is of unquestioned relevance." Fed.R.Evid. 403 advisory committee's note. The district court must "balanc[e] the probative value of and need for the evidence against the harm likely to result from its admission." *Id*. "'Unfair prejudice under Rule 403 means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *United States v. Condon*, 720 F.3d 748, 755 (8th Cir. 2013) (quoting *Firemen's Fund Ins. Co. v. Thien*, 63 F.3d 754, 758 (8th Cir. 1995)). "'Evidence is not unfairly prejudicial because it tends to prove guilt, but because it tends to encourage the jury to find guilt from improper reasoning.'" *Id.* (quoting *United States v. Muhlenbruch*, 634 F.3d 987, 1001 (8th Cir. 2011) (citations omitted). "Confusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of

10

collateral issues." *Firemen's Fund Ins. Co.*, 63 F.3d at 758 (quotations and citations omitted). *See also United States v. White Horse*, 316 F.3d 769, 776 (8th Cir. 2003) ("We have previously held that the trial court retains wide discretion to exclude evidence that would result in a "collateral mini-trial" because both sides characterize the event at issue differently"). Here, the evidence the Government seeks to introduce is inadmissible because the text messages are not relevant to a material issue in this case; are not similar in kind to the crime charged; are not supported by sufficient evidence; and are highly prejudicial in relation to any limited probative value they may have.

### 1. Evidence of Prescription Drug Use is Inadmissible Under Rule 404(b)

The text message evidence about Defendant's prescription drug usage is inadmissible under Rule 404(b). Such evidence is wholly unrelated to any material issue about the alleged use of excessive force during the arrest of L.H. Many of the text messages the Government seeks to admit concern prescription drug use by individuals other than Defendant Boone, including his now-wife, Ashley. Any probative value from evidence of prescription drug use is substantially outweighed by the unfair prejudice that would result to Defendant if this evidence were admitted. The drugs at issue here were prescribed to Defendant Boone by a physician for his use. There is no similarity between prescription drug use, or prescription drug sharing, and the civil rights claim for excessive force at issue in trial of this matter.

The Government seeks to argue that the evidence concerning prescription drug usage is admissible as 404(b) evidence because it demonstrates Defendant's willingness to disregard the standards of conduct for the SLMPD. (Notice at 27, Section V(D)). Accepting the Government's argument that prior violations of department policy are admissible as 404(b) evidence to prove current alleged violations of department policy would negate the purpose and effect of Rule 404(b). A wide range of prior bad act evidence, if committed by a law enforcement officer, is

11

also a violation of their department policy. Admitting all prior bad acts simply because they are also a violation of department policy would create an exception that swallows the rule against propensity evidence for law enforcement officers.

Admission of evidence of text messages about Defendant's prescription drug use will moreover confuse the issues properly before the jury's consideration and call on proof of a collateral legal question as to when and under what circumstances use or sharing of medication is unlawful or contrary to department policy. Such evidence, if admitted, would only encourage the jury to find guilt from the fundamentally improper reasoning that past alleged rule-breaking by Defendant Boone with respect to medication use is somehow indicative of his approach to a situation involving appropriate use of force. There is no proper connection between prescription drug use and sharing and the issues properly before the jury's consideration in this matter, and such evidence should be excluded at trial.

### 2. Evidence of Other Incidents Involving Use of Force by Defendant Boone and Others is Inadmissible

Defendant Boone's text conversations about the use of force, which the Government maintains are indicative of excessive force by Boone, should be excluded under rule 404(b). The text messages at issue all pertain to events that took place several weeks before or after the incident on September 17, 2017, and that involve use of a TASER, a purported slap to the face of one individual in unspecified circumstances, and the arrest of a juvenile and purported injuries suffered by the juvenile. Because the only evidence the Government offers are bare text messages, it is unclear whether the language used is hyperbole, joking, or baseless boasting, whether circumstances required any use of force later referenced in the text messages using a cavalier and inappropriate tone, and whether and which of the incidents at issue actually involved use of force by Defendant Boone, as opposed to one of his fellow officers. The TASER

12

incident, in particular, involved a TASER being deployed by another officer in completing an arrest.

Similar to text messages related to prescription drug use, the text messages about use of force have no factual connection to the September 17, 2017 incident and, by their own terms, do not indicate the extent (or lack) of any similarity to the charged arrest. No TASER was deployed during L.H's arrest, and no evidence suggests he was slapped during the arrest. As with evidence of prescription drug use, admitting this evidence is almost certain to require expending significant judicial resources litigating the facts and appropriateness of the use of force in these unrelated situations. Such "mini trials" will only confuse the issues before the jury's consideration at the same time as they also prejudice Defendant Boone.

Evidence of texts related to use of force would be highly prejudicial because prior incidents of excessive force, if proven, would serve only as improper propensity evidence with respect to the crime charged in the indictment. *See United States v. Asher*, 910 F.3d 854, 863 (6th Cir. 2018) (quoting *United States v. Jenkins*, 593 F.3d 480, 486 (6th Cir. 2010)) ("When jurors hear that a defendant has on earlier occasions committed essentially the same crime as that for which he is on trial, the information unquestionably has a powerful and prejudicial impact.") The text messages about the use of excessive force are not relevant to any material issue in this case; instead, this is improper character evidence that invites the jury to conclude Defendant has a criminal propensity to use excessive force. *See Clark v.* Martinez, 295 F.3d 809, 814 (8th Cir. 2002) (upholding the district's court's exclusion of FRE 404(b) evidence as inadmissible "propensity" evidence in a case alleging that a defendant officer used excessive force during an arrest, where the plaintiff tried to introduce evidence of alleged prior bad acts during previous arrests that the defendant officer participated in); *Watkins v. Schriver*, 52 F.3d 769, 772 (8th Cir.

incident, in particular, involved a TASER being deployed by another officer in completing an arrest.

Similar to text messages related to prescription drug use, the text messages about use of force have no factual connection to the September 17, 2017 incident and, by their own terms, do not indicate the extent (or lack) of any similarity to the charged arrest. No TASER was deployed during L.H's arrest, and no evidence suggests he was slapped during the arrest. As with evidence of prescription drug use, admitting this evidence is almost certain to require expending significant judicial resources litigating the facts and appropriateness of the use of force in these unrelated situations. Such "mini trials" will only confuse the issues before the jury's consideration at the same time as they also prejudice Defendant Boone.

Evidence of texts related to use of force would be highly prejudicial because prior incidents of excessive force, if proven, would serve only as improper propensity evidence with respect to the crime charged in the indictment. *See United States v. Asher*, 910 F.3d 854, 863 (6th Cir. 2018) (quoting *United States v. Jenkins*, 593 F.3d 480, 486 (6th Cir. 2010)) ("When jurors hear that a defendant has on earlier occasions committed essentially the same crime as that for which he is on trial, the information unquestionably has a powerful and prejudicial impact.") The text messages about the use of excessive force are not relevant to any material issue in this case; instead, this is improper character evidence that invites the jury to conclude Defendant has a criminal propensity to use excessive force. *See Clark v.* Martinez, 295 F.3d 809, 814 (8th Cir. 2002) (upholding the district's court's exclusion of FRE 404(b) evidence as inadmissible "propensity" evidence in a case alleging that a defendant officer used excessive force during an arrest, where the plaintiff tried to introduce evidence of alleged prior bad acts during previous arrests that the defendant officer participated in); *Watkins v. Schriver*, 52 F.3d 769, 772 (8th Cir.

1995) (upholding district court's exclusion of evidence in a civil rights action brought against police officer defendants relating to prior incidents of alleged police misconduct); *Asher*, 910 F.3d at 863 (reversing jury verdict in criminal trial of a jail officer defendant accused of depriving an inmate of his civil rights under the color of state law, where the district court admitted prior uncharged conduct of that defendant severely beating another jail inmate). Text message evidence of use of force should be properly excluded in this matter.

### 3. The Evidence of Use of Racial Slurs is Inadmissible Under Rule 404(b)

The evidence of use of racial slurs by Defendant Boone in text messages should properly be excluded under rule 404(b). Evidence of racial biases is of limited material issue on whether Defendant Boone used excessive force, particularly under circumstances where the evidence will show that he arrived at the scene of L.H.'s arrest some period of time after that arrest has already been initiated by other officers. This evidence is highly prejudicial because there is a substantial likelihood that the jury will form a negative opinion about Defendant based on his inappropriate language and expression of racist sentiments. *See Asher*, 910 F.3d at 861-62 (quoting *Old Chief v. United States*, 519 U.S. 172, 181 (1997)) (finding it improper to offer evidence where ". . . the jury may decide that the defendant is a bad person and deserves to be convicted, even if his guilt were unproven in the instant case, 'because a bad person deserves punishment.'").

Admission of inappropriate and racist text messages in this case would encourage the jury to make its decision based on improper and inflammatory reasoning and create a substantial risk of prejudicing the jury against Defendant Boone. *See United States v. Hazelwood*, 979 F.3d 398, 411 (6th Cir. 2020), *reh'g denied* (Dec. 30, 2020) ("[T]he inflammatory nature of Hazelwood's comments created a strong risk that the jury would convict him based on factors other than the charged conduct—in violation of Rule 404(b)(1)'s raison d'être. The district court

14

erred in admitting them under Rule 404(b)."); s*ee also United States v. Tocco*, 200 F.3d 401, 420 (6th Cir. 2000) (holding admission of racist, "denigrating comments were unfairly prejudicial."). Such evidence, moreover, adds little to evidence of text messages by Defendant Boone reflecting animus towards protesters in general. The prejudicial effect of text messages containing racist language far outweighs any probative value they may have and they should be excluded.

### 4. Evidence of Alleged Misconduct in Taking Cash is Not Admissible Under Rule 404(b)

The evidence about Defendant's conduct in taking cash is inadmissible under rule 404(b). This evidence is not relevant to any material issue in this case, and it is not similar in kind to the crime charged here. This evidence stands as impermissible propensity evidence because the Government is "using another act . . . to prove that [Defendant] had a character trait . . ., such that on a particular occasion he acted in accordance with that character trait." *Hazelwood*, 979 F.3d at 411. The only possible purpose for which this text message would be used is as bad character evidence and it should properly be excluded.

### C. CONCLUSION

For all the foregoing reasons, Defendant respectfully requests this Honorable Court grant the instant motion and enter its order excluding from evidence anticipated statements offered under the theory of forfeiture by wrongdoing evidence and the 404(b) evidence discussed above.

Dated: May 18, 2021                                     Respectfully submitted,

By:     */s/ Patrick S. Kilgore*
        PATRICK S. KILGORE, #44150MO
        Attorney for Defendant Boone
        1015 Locust, Suite 1000
        St. Louis, Missouri 63101
        (314) 753-0096
        patrick@patrickkilgorelaw.com

15

## **CERTIFICATE OF SERVICE**

By signature below, I hereby certify that on May 18, 2021, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Assistant United States Attorneys Carrie Constantin and Robert Livergood.

*/s/ Patrick S. Kilgore*