1         **IN THE UNITED STATES DISTRICT COURT**
        **FOR THE EASTERN DISTRICT OF MISSOURI**
2                **EASTERN DIVISION**

3 UNITED STATES OF AMERICA,    )
                        )
4            Plaintiff,    )
                        )
5     vs.               ) No. 4:18-cr-975-ERW
                        )
6 DUSTIN BOONE AND CHRISTOPHER )
MYERS,                  )
7                   ) June 7, 2021
          Defendants.   )
8

9        **JURY TRIAL - DAY #1 - VOIR DIRE**
      **BEFORE THE HONORABLE E. RICHARD WEBBER**
10         **UNITED STATES DISTRICT JUDGE**

11              **APPEARANCES**

12 **FOR PLAINTIFF**          Carrie Costantin, Esq.
                       Robert F. Livergood, Esq.
13                        U.S. Attorney's Office
                       111 S. 10th St., 20th Fl.
14                        St. Louis, MO  63102
                       (314) 539-2200
15

16 **FOR DEFENDANT**         Patrick S. Kilgore, Esq.
Dustin Boone               Attorney at Law
17                        1015 Locust, Suite 914
                       St. Louis, MO  63101
18                        (314) 753-0096

19 **FOR DEFENDANT**         N. Scott Rosenblum, Esq.
Christopher Myers       Adam D. Fein, Esq.
20                        Rosenblum, Schwartz, et al.
                       120 S. Central Ave., Suite 130
21                        Clayton, MO  63105
                       (314) 862-4332

22 **REPORTED BY:**          Laura A. Esposito, RPR, CRR, CRC
                       U.S. District Court
23                        111 South 10th Street
                       St. Louis, MO  63102
24                        (314) 244-7739

25     (PRODUCED BY COMPUTER-AIDED MECHANICAL STENOGRAPHY.)

1          *(Proceedings convened in open court at 8:34 a.m. with*

2           *defendants present.)*

3          *(Jury not present.)*

4          **THE COURT:**  Calling the case, *United States of America*

5     *vs. Mr. Dustin Boone and Mr. Christopher Myers*.  The number

6     is 4:18-cr-00975-ERW.

7          Is the United States ready?

8          **MS. COSTANTIN:**  Yes, Your Honor.

9          **THE COURT:**  Defendant ready?

10         **MR. ROSENBLUM:**  Yes, Your Honor.

11         **THE COURT:**  Good morning.  Go ahead, whenever you're

12    ready.

13         **MS. COSTANTIN:**  Judge, the way we did this last time

14    was, I believe -- correct me if I'm wrong -- was that the

15    Court did its voir dire, and for sort of the hot button

16    questions like publicity or knowledge about -- participation

17    in protests or support of Black Lives Matter or Blue Lives

18    Matter, we just had them raise their hands, and then at the

19    end we sent everybody out and brought those in individually

20    and did individual voir dire.

21         **THE COURT:**  Yeah, I picked that up from --

22         **MS. COSTANTIN:**  Okay.  Is that how we did it?

23         **THE COURT:**  Yeah.  We will -- we'll do it the same way

24    unless there's an objection.

25         **MS. COSTANTIN:**  The sidebar just was hopeless.

1   There's not enough space and everything.  Okay, great.

2   That's all I wanted to say.

3        **DEPUTY CLERK:**  Does everybody have the list that Judge

4   Webber -- questions he's going to ask?

5        **MR. ROSENBLUM:**  We do.

6        **DEPUTY CLERK:**  We've got extra copies if anybody needs

7   one.

8        **MS. COSTANTIN:**  Oh, Judge, the only thing, I think

9   there's a typo on one page where it says do you agree with

10  something as opposed to disagree.

11       **THE COURT:**  Do you know which page?

12       **MS. COSTANTIN:**  Yeah.  I'm trying to find it.

13       **THE COURT:**  That sounds like an important change.

14       **MS. COSTANTIN:**  Page 6, Question D.

15       **THE COURT:**  Okay.  "Is there anyone who does not

16  understand that the burden of proof in a criminal case is

17  different than in a civil case?  In a criminal case the

18  government is required to prove defendant's guilt beyond a

19  reasonable doubt.  Does anyone disagree?"

20       Oh, yeah, yeah, yeah, disagree.  Thank you.

21       Kelley is ready to go down and bring the jurors up for

22  voir dire, the first 30.  If there's anything remaining,

23  we'll take it up before they get here.

24       **MS. COSTANTIN:**  Judge, what we found to be helpful was

25  that they give us the list and give us maybe ten minutes so

1  we can translate what's on the questionnaire to the list

2  before they get brought in, if that's okay.

3        *THE COURT:*  Okay.  That's fine.

4        *(Off the record.)*

5        *(Venire panel enters the courtroom.)*

6        *THE COURT:*  I'm calling the case, *United States of*

7  *America vs. Mr. Dustin Boone and Mr. Christopher Myers*.  The

8  case number is 4:18-cr-00975-ERW.  Is the United States

9  ready?  Is the United States ready?

10       *MS. COSTANTIN:*  Yes, Your Honor.

11       *THE COURT:*  Is Defendant Boone ready?

12       *MR. KILGORE:*  Yes, Your Honor.

13       *THE COURT:*  Is Defendant Myers ready?

14       *MR. ROSENBLUM:*  Yes, Your Honor.

15       *THE COURT:*  All right.  That was a "yes" for

16  Mr. Myers; correct?  I asked if Mr. Myers was ready.

17       *MR. ROSENBLUM:*  Yes, Your Honor.

18       *THE COURT:*  Yes.  Thank you.

19       Ladies and gentlemen of the jury, thank you so very

20  much for your faithful appearance this morning.  I shall now

21  read Jury Instruction Number 0.01:  "Members of the jury, if

22  you have a cell phone, smart phone, iPhone, or any other

23  wireless communication device with you, please take it out

24  now and turn it off."

25       I forgot.  I told you you would have a few minutes to

1   look at the list.

2        **MR. ROSENBLUM:**  Yes.

3        **THE COURT:**  Okay.  Go ahead.

4        **MS. COSTANTIN:**  Judge, I think we're ready to proceed.

5        **THE COURT:**  You think you've had time?

6        **MS. COSTANTIN:**  I don't think we need any more

7   additional time.

8        **MR. ROSENBLUM:**  Oh, yes.

9        **THE COURT:**  Okay.  Thank you.

10       You must leave your cell phones completely powered off

11  whenever you are in the courtroom.  You may use them during

12  breaks, of course, but whenever you come back into the

13  courtroom, please be sure they are completely powered off.

14  If you are selected as a juror you must continue to leave

15  your cell phones powered off whenever you are in the

16  courtroom.  After you -- also, you will not be allowed to

17  have your phones in the jury room during deliberations.  You

18  may give them to the court clerk for safekeeping.

19       I understand you may want to tell your family, close

20  friends, and others, other people about your participation

21  in this trial so you can explain when you are required to be

22  in court, and you should warn them not to ask you about the

23  case.  You must not tell anyone and no one should know about

24  it or discuss the case in any -- in your presence.

25       You must not post any information on a social network

1     or communicate with anyone about the parties, witnesses,

2     participants, charges, evidence, or anything else related to

3     the case or tell anyone anything about the jury's

4     deliberations in this case until after I accept your verdict

5     or until I give you specific permission to do so.

6          If you discuss the case with someone other than the

7     other jurors during deliberations, you may be -- it may

8     be -- you may be influenced in your verdict by their

9     opinions.  That would be unfair to the parties and it would

10    result in a verdict that is not based on the evidence and

11    the law.

12         While you are in the courtroom and until you are

13    discharged as jurors in this case, do not provide any

14    information to anyone by any means about the case.  Thus,

15    for example, do not talk face-to-face or use any electronic

16    device or media such as telephone or cell phone, smart

17    phone, camera, recording device, computer, the internet, any

18    internet service, any text or instant messaging service, any

19    social media, including services or apps such as Facebook,

20    Instagram, Snapchat, or Twitter, or in any other way to

21    communicate to anyone any information about this case until

22    I accept your verdict or until you have been excused as a

23    juror.

24         Do not do any research on the internet, in libraries,

25    in the newspapers or in any other way, or make any

1    investigation about the case on your own.  Do not visit or

2    view any place discussed in this case and do not use

3    internet programs or other devices to search for or to view

4    any place discussed in the testimony.

5         Also, do not research any information about this case,

6    the law or the people involved, including the parties, the

7    witnesses, the lawyers or the judge until you have been

8    excused as jurors.

9         The parties have a right to have this case decided

10   only on the evidence they know about and that has been

11   presented here in court.  If you do some research or

12   investigation or experiment that we don't know about, then

13   your verdict may be influenced by inaccurate, misleading

14   information that has not been tested by the trial process,

15   including the oath to tell the truth and by

16   cross-examination.

17        Each of the parties is entitled to a fair trial

18   rendered by an impartial jury and you must conduct yourself

19   so as to maintain the integrity of the trial process.

20        If you decide a case based on information not

21   presented in court you will have denied the parties a fair

22   trial in accordance with the rules of this country and you

23   will have done an injustice.  It is very important that you

24   abide by these rules, follow the instructions; otherwise, it

25   could result in the case having to be retried.

1          Is there anyone any one of you who cannot or will not

2     abide by these rules concerning communications with others

3     and outside research in any way, shape, or form during the

4     trial?  I see no hands.

5          Just one second.

6          Okay.  The purpose of voir dire is to select a jury

7     that will be fair to both sides and to make sure no

8     preconceived notions generally and any ideas about this case

9     might influence your decisions.  "Fair to both sides" means

10    a jury that will be -- that will decide the case based only

11    on the evidence presented here in court and the law as I

12    give it in my instructions.

13         Thank you for answering the questionnaires.  That will

14    shorten things considerably.  I'll be making some -- asking

15    some questions today, as will the lawyers.  We're not

16    intending to be rude or pry into your personal affairs, but

17    some questions may do that.  If there is a question that is

18    so personal to you, you're not comfortable in answering in

19    front of your fellow jurors, you always have the option of

20    raising your hand and taking -- and talking to -- and taking

21    an opportunity to come up here to sidebar so that lawyers

22    and I can hear your answers.

23         Would you all please rise and raise your right hand to

24    take an oath at this time.

25         *(The oath is administered to the venire panel.)*

1    **THE COURT:**  I will be asking some questions and then

2    respective counsel will be asking some questions of the

3    panel.  If you would prefer to keep your answer private, as

4    I mentioned, please ask to give it privately up here at the

5    bench.  When you give an answer, even if you do so more than

6    one time, please state your number for the court reporter.

7         Now, Ms. Esposito, if you view her you would think

8    she's a relatively reasonable person.  However, I must warn

9    you, if the record isn't entirely complete and accurate --

10   we don't want to go there.  So if I ask you over and over

11   and over to give your number, please do so because it's

12   really important that she gets the record accurately.

13        Counsel for the United States will introduce herself

14   and introduce any other persons at counsel table.

15   **MS. COSTANTIN:**  My name is Carrie Costantin.  I'm an

16   Assistant United States Attorney in this office.

17   Robert Livergood is also an Assistant United States

18   Attorney, and Darren Boehlje is an agent with -- special

19   agent with the FBI.

20   **THE COURT:**  Is there any member of the panel who knows

21   or believes you may know any of the individuals just

22   introduced at the United States Attorney's table?  I see no

23   hands.

24        Counsel for defendants will introduce themselves and

25   introduce their clients and other persons at the table.

 1   First, Mr. Kilgore.

 2        **MR. KILGORE:**  Good morning.  My name is

 3   Patrick Kilgore, and I represent Dustin Boone.

 4        **THE COURT:**  Mr. Rosenblum?

 5        **MR. ROSENBLUM:**  Thank you, Your Honor.  My name is

 6   Scott Rosenblum.  Along with Adam Fein and Brad Bilyeu, we

 7   represent Christopher Myers.  Good morning.

 8        **THE COURT:**  Thank you.  Is there anyone just

 9   introduced from counsel table that you know or think you may

10   know?  I see no hands.

11        Is there anyone on the panel who does not understand

12   that a charge is not evidence, and simply because a person

13   has been charged is no indication of guilt?  Is there anyone

14   who does not understand that?  Okay.

15        In a criminal case the defendant is presumed innocent

16   until proved guilty beyond a reasonable doubt.  This

17   presumption remains with the defendant until found guilty by

18   a jury.  The obligation's always on the government, or

19   United States, to prove the defendant's guilt and there is

20   no obligation on the defendant to prove his innocence.  Is

21   there anyone on the panel who disagrees with these

22   principles?

23        Would any of you find the defendant not guilty even if

24   convinced of his guilt, either defendant, beyond a

25   reasonable doubt -- if convinced of the guilt of either

1  defendant beyond a reasonable doubt solely because you felt

2  sympathy for the defendant?  I see no hands.

3       Is there anyone who does not understand that the

4  burden of proof in a criminal case is different than in a

5  civil case?  In a criminal case the government, or

6  United States, is required to prove the defendant's guilt

7  beyond a reasonable doubt.  Does anyone disagree with this

8  principle?

9       Is there anyone who does not understand that the

10  defendant has an absolute right not to testify?  Will any of

11  you be more likely to believe he is guilty if the defendant

12  does not testify?  I see no hands.

13       Is there anyone who does not understand that if a

14  defendant does not testify you may not discuss that in your

15  deliberations?  I see no hands.

16       This case is alleged to have happened during the

17  highly publicized protests that began the afternoon of

18  September 15th, 2017, after the acquittal of former

19  St. Louis City Police Officer Jason Stockley.  Did anyone

20  here participate in those protests that began on

21  September 15, 2017 and continued for several days?  If so,

22  would you raise your hand and be identified at this time.  I

23  see no hands.

24       The defendants in this case were police officers.  One

25  of the defendants is charged with violating the civil rights

```
1    of another police officer, Luther Hall, who was working

2    undercover during the protests posing as a protester.  The

3    other defendant is --

4         MR. ROSENBLUM:  Can we approach?

5         THE COURT:  Sure.

6                        *   *   *   *

7         (Discussion held at sidebar between the Court and

8          counsel as follows:)

9         MR. ROSENBLUM:  Sorry to interrupt.  You said the

10   defendants are charged with violating the civil rights.

11   There's only one defendant who's charged with violating

12   civil --

13        MS. COSTANTIN:  No.  He said one defendant is charged.

14   He changed it.

15        THE COURT:  Just make sure.

16        MR. ROSENBLUM:  I know he changed it but he said the

17   defendants are charged.

18        MS. COSTANTIN:  One defendant.  I thought he said one

19   defendant.

20        DEPUTY CLERK:  Laura just read back, Judge, you said

21   one.

22        MS. COSTANTIN:  You said one.

23        THE COURT:  (Inaudible.)

24        DEPUTY CLERK:  That's what Laura just read back.

25        MR. ROSENBLUM:  Okay.  I'm sorry.  I misunderstood
```

1    you.

2        **MS. COSTANTIN:**  As long as we're up here, I think

3    either you skipped a page or you're going to come back to

4    it.

5        **DEPUTY CLERK:**  The page was 6.  It starts with 6,

6    Judge.

7        **MS. COSTANTIN:**  Seven.

8        **DEPUTY CLERK:**  Page 7.  That's what Sara just said.

9    Did we skip 6 or 7?

10       **MS. COSTANTIN:**  Seven.  Skipped page 7.  I mean we can

11   always come back to it after you do this.

12       **THE COURT:**  (Inaudible.)

13       **MS. COSTANTIN:**  No; 7, page 7.  Have you participated

14   in protests, all that stuff.

15       **THE COURT:**  Okay.  I'll start at the top of page 7.

16       **MS. COSTANTIN:**  And the only other thing -- I'm sorry.

17   As long as we're up here, do you want to make an

18   announcement about masks or -- I don't know what you wanted

19   the rule to be on masks.

20       **THE COURT:**  They've been told they all have to wear

21   masks.

22           **(End of discussion at sidebar.)**

23                       *   *   *   *

24       **THE COURT:**  I appreciate when counsel or anyone

25   corrects one of my mistakes.  I skipped -- I started reading

1    from page 8, and so I need to go back to page 7.

2         There are two defendants in this case, and the

3    United States government has the burden of proof and that

4    extends to each one separately.  Each defendant is entitled

5    to be treated separately and you must consider the evidence

6    as to each one separately.

7         The jury has no role in sentencing.  If you find a

8    defendant guilty, that is a matter to be decided by the

9    judge, not the jury.

10        Has any juror here today participated in a protest in

11   any matter in the past eight years?  I see no hands.

12        **(Inaudible.)**

13        **THE COURT:**  Oh, okay.  Could I have the numbers,

14   please.

15        **DEPUTY CLERK:**  Thirty-two.

16        **THE COURT:**  Thirty-two?  Okay.  Was there someone

17   else?  Okay.  We'll come back to that later.  Thank you.

18        Does anyone have a family member or close friend who

19   participated in a public protest in the last eight years,

20   other than 32?  Okay.

21        Now, I have already read part of this but I'm going to

22   reread it.  This case is alleged to have happened during a

23   highly publicized protest that began the afternoon of

24   September 15th, 2017, after the acquittal of former

25   St. Louis City Police Officer Jason Stockley.

1          Did anyone here participate in those protests on

2   September 15, 2017?  And that continued for several days.  I

3   think I saw no hands when I asked the first time.

4          The defendants in this case were police officers.  One

5   of the defendants is charged with violating the civil rights

6   of another police officer, Luther Hall, who was working

7   undercover during the protest posing as a protester.  The

8   other defendant is charged with destruction of evidence in

9   contemplation of an investigation.  Does anyone here know

10  Mr. Luther Hall?  I see no hands.

11         Is there anyone here who has personal knowledge about

12  this incident?  I see no hands.

13         Is there one?  Yes.  Number?

14      *JUROR NO. 18:*  Eighteen.

15      *THE COURT:*  Eighteen.  Thank you.  Yes?

16      *JUROR NO. 25:*  News coverage.

17      *THE COURT:*  Pardon me?

18      *JUROR NO. 25:*  News coverage.

19      *THE COURT:*  News coverage.  Okay.  Number 4?

20      *JUROR NO. 4:*  News coverage and on Facebook.

21      *JUROR NO. 6:*  News coverage.

22      *JUROR NO. 14:*  News coverage.

23      *THE COURT:*  Anyone else?

24      *JUROR NO. 31:*  News coverage.

25      *THE COURT:*  Anyone else?  Okay.  Thank you.

```
1         Has anyone here read or heard -- I got ahead of
2    myself.
3         Has anyone here read or heard any news reports or
4    other stories about this case or been told about it by
5    someone or otherwise think they know something about the
6    case?  And I have 23, maybe 25.  Was it number 25?
7         JUROR NO. 25:  Twenty-five.
8         THE COURT:  Yeah, 25, 4, 6, 13, 41.  Anyone else that
9    could answer that question about news coverage?  Yes?
10        JUROR NO. 18:  Eighteen.
11        THE COURT:  Eighteen.  Thank you.  We'll come back to
12   you later.  Yes?
13        JUROR NO. 27:  Twenty-seven.
14        THE COURT:  Thank you.  Okay.  Whether personal
15   knowledge or news reports, would this -- I'll come back and
16   talk to you about this later.
17        I'm sure everyone has been watching the news this past
18   year and heard of the incident of George Floyd.  Is there
19   anyone here that, as they are viewing the evidence in this
20   case, thinks that they will not be able to keep that
21   incident or other related incidents, such as the one with
22   Breonna Taylor or Michael Brown, out of their minds?  Yes.
23   Number?
24        JUROR NO. 32:  Thirty-two.
25        THE COURT:  Thirty-two.
```

```
 1          JUROR NO. 18:  Eighteen.

 2          THE COURT:  Pardon me?

 3          JUROR NO. 18:  Eighteen.

 4          THE COURT:  Anyone else?  Okay.

 5          There may also be news reports about this case while

 6     the trial is ongoing.  If you are selected to serve on the

 7     jury you will be obliged to not view or read any news

 8     coverage about the case.  Is there -- if there should be

 9     any.  Is there anyone who believes that they could not or

10     would be unwilling to follow this rule?  I see no hands.

11          Does anyone have opinions that would affect your

12     ability to serve as a fair and impartial juror in this case

13     about the movements known as Black Lives Matter, Defund the

14     Police, or Blue Lives Matter?  Let me read them again:

15     Black Lives Matter, Defund the Police, or Blue Lives Matter.

16     I see no hands.

17          Is there anyone who -- I'm going to talk a little bit

18     more about publicity.  Is there anyone who does not

19     understand that it is the duty of a juror selected in this

20     case to try the case, to reach a verdict based only from the

21     evidence heard in court and the instructions of the court?

22     Is there anyone who does not understand that?

23          Is there anyone on the panel who could not for any

24     reason set aside what you have heard or believe you have

25     heard and decide this case only from the evidence and the
```

1    instructions of the Court?

2        I think there were two hands I saw a while ago.

3    Number 32 and 18.  Am I correct?

4        Let me read it again:  Is there anyone on this panel

5    who could not for any reason set aside what you have heard

6    or believe you have heard and decide the case only from the

7    evidence and the instructions of the Court?  And I thought

8    18 and 32 raised your hands.  Am I correct?  Yes, 18.  Okay.

9    Thank you.

10       Have any of you read any material about -- well, I

11   asked that already -- from any source, whether television,

12   newspaper, radio, or any source?  Is there anyone who has

13   not already responded who has received any information about

14   this case?  Okay.

15       Could I see counsel for just a moment, please.

16                          *   *   *   *

17       *(Discussion held at sidebar between the Court and*

18        *counsel as follows:)*

19       **THE COURT:**  I don't have the United States witness

20   list.  I have defendants' witness list.

21       **MS. COSTANTIN:**  I'm sorry, we didn't bring a copy.

22       **MR. KILGORE:**  I have one copy.

23       **DEPUTY CLERK:**  What do you need, Judge?

24       **THE COURT:**  Government's witness list.

25       **DEPUTY CLERK:**  Here's defendants'.

1    *(Simultaneous crosstalk; indiscernible.)*

2    **THE COURT:**  I'm going to be jumping around on this

3    list, so I --

4    **MR. ROSENBLUM:**  But you're not going to refer to this

5    as the defendants'?

6    **THE COURT:**  No.  Just names of witnesses.

7    *(End of discussion at sidebar.)*

8                         *   *   *   *

9    **THE COURT:**  Sorry.  One other question.

10                        *   *   *   *

11   *(Discussion held at sidebar between the Court and*

12    *counsel as follows:)*

13   **THE COURT:**  I don't have Defendant Boone's witness

14   list.

15   **MS. COSTANTIN:**  It's the same as Myers.

16   **MR. ROSENBLUM:**  It's the same.

17   **THE COURT:**  Okay, great.  Thanks.

18   *(End of discussion at sidebar.)*

19                        *   *   *   *

20   **THE COURT:**  The attorneys in this case have supplied

21   me with the names of individuals that may be called as

22   witnesses.  I'm going to read from a list, and if -- I'll

23   read a name, and if any one you recognizes a name, please

24   raise your hand.

25        Darren B-O-E-H-L-J-E.  Boehlje, I guess.  Boehlje.

```
 1   Anyone, Darren Boehlje?
 2        Kim Allen.  Lawrence Bryant.  Dr. Jacob Buchowski.
 3   Anthony Caruso.  Marcus Burzota, B-U-R-Z-O-T-A.
 4   Paul Chester.  Anthony Caruso.  I asked that already.
 5   Justin Davis.  Joseph Crews, C-R-E-W-S.
 6        Yes.  Number?
 7        JUROR NO. 21:  I do know Joe Crews.  Officer Joe
 8   Crews?
 9        THE COURT:  Okay.  And number, please?
10        JUROR NO. 21:  Number 21.
11        THE COURT:  Could you explain the general nature of
12   your relationship with Mr. Crews.
13        JUROR NO. 21:  If it's Officer Joe Crews, we're in the
14   same parrish, same church.
15        THE COURT:  Okay.  Is that relationship such, if
16   you're selected as a juror, that would influence -- unduly
17   influence your ability to sit as a juror in this case?
18        JUROR NO. 21:  No.  I haven't talked to him in quite a
19   few years.
20        THE COURT:  Okay.  Thank you.
21        Michael Deeba, D-E-E-B-A.  Matthew Drake.  Zach Foltz,
22   F-O-L-T-Z.  Christopher Gwaltney, G-W-A-L-T-N-E-Y.
23   John Green.  Luther Hall.
24        MR. ROSENBLUM:  Had a hand.
25        THE COURT:  Hand?  Sorry.  Okay.  Yes?
```

1          *JUROR NO. 18:*  I didn't know him.

2          *THE COURT:*  Could I have your number, please.

3          *JUROR NO. 18:*  Eighteen.

4          *THE COURT:*  Eighteen.  And what was your response?

5          *JUROR NO. 18:*  I said I don't know him but I recognize

6      the name.

7          *THE COURT:*  Okay.  All right.  Thank you.

8          Patrick Haug, H-A-U-G.  Patrick H-A-U-G.  Randy Hays.

9      John Hayden.  Randy Jemerson, J-E-M-E-R-S-O-N.

10     Taylor Hosna, H-O-S-N-A.  Lindsey Kellis, K-E-L-L-I-S.

11     Justin Johnson.  Jerry Leyshock, L-E-Y-S-H-O-C-K.

12     Andrew Kleffner, K-L-E-F-F-N-E-R.  Kyle Mack, M-A-C-K.

13     Matthew Manley.  Joseph Marcantano, M-A-R-C-A-N-T-A-N-O.

14     M-A-R-C-A-N-T-A-N-O.  Michael Mayo.  Richard Melts -- Metz,

15     M-E-T-Z.  Lawrence O'Toole.  Ryan Rossomanno,

16     R-O-S-S-O-M-A-N-N-O.  Lieu Naes, N-A-E-S.  Trevor Russell.

17     Dan Ogden.  Jeff Schaffer.  Nathan Strickland.  Marcos

18     Silva.  Heather Taylor.  Marty Walls III.  Matthew Tesserau,

19     T-E-S-S-E-R-A-U.  Matthew T-E-S-S-E-R-A-U.

20         All right.  That's all the witnesses.  These are "may

21     call" witnesses.  They may be called.

22         I shall not indicate my opinion about the facts of

23     this case.  It is the jury's duty to decide the facts and

24     the judge's duty to rule on questions of law.

25         Is there anyone on the panel who does not understand

1    that it is your duty, if you are selected as a juror, to

2    follow the law as the Court gives it to you even though you

3    may disagree with the law or find the law repugnant or

4    unpleasant to apply as the Court applies it and gives it to

5    you?  Okay.

6         Is there anyone who has not already answered who can

7    think of any matter or experience in their lives which would

8    prevent them from being a completely fair and impartial

9    juror in this case?  Yes, sir.  What's your number?

10             **JUROR NO. 6:**  Six.

11             **THE COURT:**  And what is the reason?

12             **JUROR NO. 6:**  I watch a lot of First Amendment audit

13   videos and so it may have colored my opinion of law

14   enforcement.

15             **THE COURT:**  Okay.  Thank you.  Anyone else?

16        Does each of you realize that objections will be made?

17   And if there are objections, will you hold against the side

18   that makes the objection?  This is just -- sometimes lots of

19   objections follow and sometimes it gets annoying but it's

20   important and the lawyers are trying to do their best to

21   protect the interests of their clients.  So is there anyone

22   who would hold it against the party if lots of objections

23   are made?  Okay.

24        From time to time attorneys, as you already have

25   observed, will require and request a bench conference.  Is

 1   there anyone who would object to that process?  These
 2   lawyers will try to keep that to a minimum but it has to
 3   happen from time to time.
 4         Is there any member of the panel who has not already
 5   answered who could not for any reason listen carefully --
 6   other than those who have answered -- listen carefully to
 7   all the evidence and not make up her or his mind prematurely
 8   about the case until all the evidence has been seen and
 9   heard and the instructions of the Court have been given?
10         Is there any member of the panel who, for any reason,
11   whether I've asked the question or not, feels that he or she
12   would not want a person listening to his or her case with
13   the same feelings about the case that that particular member
14   has at this time?
15         Is there any member on the panel who, for any reason,
16   whether I've asked the question or not, believes that he or
17   she could not, for any reason, listen to the evidence,
18   decide the facts in a fair, unbiased, and impartial manner,
19   listen to the instructions of the Court, and return a fair
20   verdict?
21         Ms. Costantin, whenever you're ready.
22         **MR. ROSENBLUM:**  Your Honor, may we approach?
23         **MS. COSTANTIN:**  Judge, I believe we were going to --
24         **THE COURT:**  Sure.
25                        *   *   *   *

1          *(Discussion held at sidebar between the Court and*

2           *counsel as follows:)*

3          **MR. ROSENBLUM:**  I think it was the parties'

4    understanding that number of the jurors, or the numbers --

5    the jurors that answered the question with respect to

6    publicity or protests, that we were going clear the

7    courtroom and take them individually.

8          **THE COURT:**  I was going to do those individually after

9    the voir dire, but we can do it first.

10         **MS. COSTANTIN:**  Yeah, if we could do it first because

11   then they kind of won't talk about it during our individual

12   voir dire.  I don't feel the need to otherwise.

13         **MR. ROSENBLUM:**  We could just skip over them.

14         **THE COURT:**  Let's bring your list up.

15         **MR. ROSENBLUM:**  One more issue.  And maybe the Court's

16   advised us.  Was there a decision as to the number of

17   strikes on each side?

18         **THE COURT:**  Well, we have to have 40.  We have to get

19   this number down to 40, and that means the usual 31, if you

20   have one alternate.  So, since we have three more, each

21   lawyer has the right to object to each one of those plus --

22   counts for one.  So we have to have 40.  And then once we

23   get to 40, then you'll make your final strikes.

24         **MS. COSTANTIN:**  So we're going to have -- so the

25   government gets six out of the first 24, and the -- I mean

1   six out of the first 30, and then defense shares ten?

2       **THE COURT:**  Okay.  We can do it that way.

3       **MS. COSTANTIN:**  And then for the alternates, are you

4   saying it's one each?

5       **THE COURT:**  Yeah.

6       **MS. COSTANTIN:**  Okay.

7       **THE COURT:**  Now, just so everybody understands.  You

8   had a little pause on your face.

9       **MR. ROSENBLUM:**  I'm sorry.

10      **THE COURT:**  So it's -- after we finish with the panel,

11  you say you're going to have six and ten?

12      **MR. ROSENBLUM:**  Six and ten's fine.

13      **MS. COSTANTIN:**  But not with this panel; with all the

14  panels.

15      **MR. ROSENBLUM:**  With all the panels.  All panels.

16      **THE COURT:**  All right.  Thank you.  Would you bring me

17  up your list, please.

18      **(Attorneys talking off the record.)**

19      **MS. COSTANTIN:**  Okay, Judge.  I think we agree that

20  it's 4, 6, 14, 18, 25.

21      **THE COURT:**  Wait a minute.  Okay.

22      **MS. COSTANTIN:**  Twenty-five.

23      **THE COURT:**  Twenty-five.

24      **MS. COSTANTIN:**  Twenty-seven.

25      **THE COURT:**  Twenty-seven.

1       **MS. COSTANTIN:**  Thirty-one and 32.

2       **THE COURT:**  What about -- you have 18 twice.

3       **MS. COSTANTIN:**  Yeah.  And 32 as well.  Right.  Yeah,

4  I think we're all on the same page.

5       **(End of discussion at sidebar.)**

6                        *  *  *  *

7       **THE COURT:**  There are going to be some individual

8  questions for the following jurors, so I'm going to be

9  asking that -- and I'll read the numbers twice.  I'll ask

10 these members to remain seated.  That will be 4, 6, 14, 18,

11 27, 31, 32.  Did I cover the list?

12      **MS. COSTANTIN:**  Judge, I believe 25.

13      **THE COURT:**  And 25.  Yeah, 25.

14      So, those jurors please remain seated, and the other

15 jurors will be escorted out into the rotund area while

16 there's a session where questions will be specifically asked

17 of these members.  Now, actually everyone goes out and then

18 we'll call those numbers back in; right?  Okay.  I'm sorry.

19 Everyone will go out into the rotunda and then we'll call

20 them back.

21      Would jurors -- Juror No. 4 remain in the seat and the

22 rest of the jurors follow Ms. Shirley out into the rotunda.

23      **(Jury exits courtroom; Juror No. 4 remains.)**

24      **THE COURT:**  All right.  You may inquire.

25      **MS. COSTANTIN:**  You indicated that you had heard about

1   the case through news coverage as well as Facebook; is that

2   correct?

3        **JUROR NO. 4:**  Yes, ma'am.

4        **MS. COSTANTIN:**  And is there anything -- what

5   specifically do you remember about it?

6        **JUROR NO. 4:**  The articles and the videos.

7        **MR. ROSENBLUM:**  Your Honor, would it be okay if the

8   juror removes their mask?

9        **THE COURT:**  I'm sorry?

10       **MS. COSTANTIN:**  Can the juror remove his mask while

11  he's speaking?

12       **THE COURT:**  Oh, sure, sure, sure.

13       **MS. COSTANTIN:**  Do you remember the content of what

14  you read?

15       **JUROR NO. 4:**  Yeah.  They were saying that he was --

16  didn't get his rights under the law was one of the charges.

17  The other one was destroying evidence.  And I saw, watched

18  videos that they showed of him -- I guess Officer Hall

19  videoing when he was walking with the protest and all of a

20  sudden his arm went down.  And then the other video I saw

21  they were showing one of the officers who was sitting in the

22  car and someone is saying something to him and he covered up

23  and said, "Get the F out of here."

24       **MS. COSTANTIN:**  So how long ago was it that you saw

25  this coverage?  Relatively recently?

1     **JUROR NO. 4:**  Yeah.  It's probably been a week ago.

2     **MS. COSTANTIN:**  Do you understand that, as a juror,

3  you'd only be able to judge this case on the evidence as it

4  came into court, not what you saw previously?

5     **JUROR NO. 4:**  Right.

6     **MS. COSTANTIN:**  Is it going to be difficult or

7  impossible for you to like cut that out of your brain and

8  say, *oh, I never saw that*, if some of the stuff that you saw

9  on TV does not actually come into evidence in court?

10     **JUROR NO. 4:**  Yeah.

11     **MS. COSTANTIN:**  That's fair.  I'm not -- I'm just

12  asking what realistically what you can do.

13     **JUROR NO. 4:**  I would -- I don't know if I could,

14  honestly.  I'm being honest.  I don't know if I could.

15     **MS. COSTANTIN:**  Okay.  Judge, I don't have anything

16  more.

17     **THE COURT:**  Okay.

18     **MR. ROSENBLUM:**  So the information that you took in,

19  do you recall forming an opinion one way or the other as you

20  listened to it?

21     **JUROR NO. 4:**  Yeah.  I didn't know who was doing what,

22  but when his camera went dead, I assumed he was getting

23  beaten up or something.

24     **MR. ROSENBLUM:**  So you formed some --

25     **JUROR NO. 4:**  Right.

1        **MR. ROSENBLUM:**  Okay.  And as Ms. Costantin said, like

2    all of us, it may be difficult to unring the bell?

3        **JUROR NO. 4:**  Right.

4        **MR. ROSENBLUM:**  So that may affect your ability to be

5    fair and impartial as you hear this case?

6        **JUROR NO. 4:**  I think it's always going to be back

7    there, unfortunately.

8        **MR. ROSENBLUM:**  You do not have to apologize.  That's

9    what this process is about.  Thank you.

10       **THE COURT:**  All right.  Thank you, sir.

11       Could I see counsel, please.

12                              *   *   *   *

13       **(Discussion held at sidebar between the Court and**

14         **counsel as follows:)**

15       **THE COURT:**  As these jurors are excused I think I will

16   tell them that they can -- actually, Kelley will just send

17   them out the back way down the stairs.  Is that okay?

18       **MS. COSTANTIN:**  That's fine.  No, I have no objection.

19   I mean I think he -- I would move to exclude him; right?

20       **MR. ROSENBLUM:**  I would agree.

21       **THE COURT:**  We're not going to exclude him now.

22       **MR. ROSENBLUM:**  I don't think it's necessary to sit

23   through the general voir dire, which will just make it

24   cumbersome.

25       **(End of discussion at sidebar.)**

1                          *   *   *   *

2         **THE COURT:**  Thank you, sir, for your service today.

3    We really appreciate it very much.

4         **(Juror No. 4 exits the courtroom; Juror No. 6 enters**

5          **the courtroom.)**

6         **THE COURT:**  You can sit right there in the first row.

7    Thank you.

8         **MS. COSTANTIN:**  Sir, I believe the Court would like

9    you to take your mask off just while you're speaking because

10   it's easier for the court reporter.

11        You indicated that you watched a lot of, you called it

12   First Amendment audit videos.  I'm sorry, but I'm not

13   familiar with what those are, what that would be.

14        **JUROR NO. 6:**  Those are auditors who go and videotape

15   and record mostly public buildings to see how government

16   will respond to it.  Frequently police officers respond.

17        **MS. COSTANTIN:**  Okay.  So they're videotaping a

18   building and then they see if the police respond to it?

19        **JUROR NO. 6:**  That's right.  They stay in a public

20   place where it's legal to video but then they want us to

21   test how government agency responds.

22        **MS. COSTANTIN:**  Responds to it.  And I'm -- don't

23   recall exactly what your words are, but you said that you

24   felt that would prevent you from being fair or -- explain to

25   me what --

*USA vs. Boone and Myers, Case #18-975*         6/7/21 - Pg. 30
*Voir dire*

1      **JUROR NO. 6:**  I'm familiar with this case from the

2   news, and so given that I've seen these videos and I see

3   police officers behave badly, I thought that should be

4   known.  I can try to be unbiased but it may influence me.

5      **MS. COSTANTIN:**  I understand.  You also indicated that

6   you had seen news coverage of it.  Do you recall what news

7   coverage you've seen of the case?

8      **JUROR NO. 6:**  Source or what I've seen?

9      **MS. COSTANTIN:**  What you've -- well, source as well as

10  what you've seen.

11     **JUROR NO. 6:**  I know this is the retrial.  I believe

12  some of the officers pled guilty that were part of it.  Does

13  that help?

14     **MS. COSTANTIN:**  Yeah.  Do you remember any other

15  coverage, besides that, that you saw?  We're just trying to

16  understand how much you remember about the case or know

17  about the case.

18     **JUROR NO. 6:**  I know that Mr. Hall was undercover at

19  the protest and that he was assaulted by some police

20  officers.  He was -- I think he was video recording, much

21  like a First Amendment auditor would do.

22     **MS. COSTANTIN:**  The information that you've seen about

23  the case, would you be able to set that aside and judge the

24  case only as the evidence that comes in or do you think you

25  would always know that what you had already heard?

1          **JUROR NO. 6:**  I might find it difficult to set it

2     aside.

3          **MS. COSTANTIN:**  Okay.  Judge, that's all I've got.

4          **THE COURT:**  Mr. Rosenblum?

5          **MR. ROSENBLUM:**  Because of that, obviously, that could

6     make you a less fair and impartial juror in this case?

7          **JUROR NO. 6:**  Yeah.  I wanted that to be known.

8          **MR. ROSENBLUM:**  Thank you for being candid.  Nothing

9     further.

10          **THE COURT:**  Okay.  Ms. -- where is Ms. Shirley?  She's

11    not here.

12          **MR. KILGORE:**  I don't have any -- based on the

13    previous questions, Judge, I don't have any questions for

14    him.

15          **THE COURT:**  All right.  I'm going to excuse you, sir.

16    Thank you so much, Mr. Bredbenner.  Thank you for your

17    service.  I really appreciate you being here.  And it's

18    not -- there's no -- there's nothing bad about saying I'm

19    excusing you.  It's just part of the process.  It's just

20    difficult to erase some of those things, and I understand.

21    Thank you.

22          ***(Juror No. 6 exits courtroom.)***

23          **THE COURT:**  For the record, Juror No. 4, Meder, and

24    No. 6, Bredbenner, have been excused.

25          ***(Juror No. 14 enters the courtroom.)***

1      **THE COURT:**  You may -- that chair's fine.  Yes, right

2    there.  You may remove your mask, if you care to, so that

3    you can be heard more.  Thank you for coming back in.

4      **MS. COSTANTIN:**  Hi.  We just had some questions for

5    you about your knowledge of the news coverage on the case.

6    What do you remember -- or, first of all, where was the news

7    coverage?  What were you watching, or -- was it TV, radio,

8    do you remember?  Newspaper?

9      **JUROR NO. 14:**  I was watching it on the news or one of

10   my kids was saying something about it and --

11     **MR. ROSENBLUM:**  So you said your kids?

12     **MS. COSTANTIN:**  One of her kids was saying something.

13     **JUROR NO. 14:**  My kids were saying something.

14     **MS. COSTANTIN:**  Okay.  And what is it that you recall

15   about the case?

16     **JUROR NO. 14:**  Just that things got out of hand, I

17   guess, and one of the police officers -- I don't know if he

18   detained him or what, but made the other guy -- there was

19   some kind of confrontation is what I want to say,

20   confrontation that -- on the scene.  I don't know.

21     **MS. COSTANTIN:**  Do you remember when it was that you

22   heard this news coverage?  Was it, you know, recently, like

23   within the last week or month or years ago?

24     **JUROR NO. 14:**  No, it's been --

25     **COURT REPORTER:**  I can't hear you.  I'm sorry.

1    **JUROR NO. 14:**  It was just a confrontation that got

2    out of hand as far as I understood from the news.  It just

3    looked like it was -- people just everywhere and -- I don't

4    know.

5        **MS. COSTANTIN:**  And you said it's been sometime since

6    you heard that; correct, since you heard the information,

7    so --

8        **JUROR NO. 14:**  That's correct, yes.

9        **MS. COSTANTIN:**  Judge, if I may, just there's a couple

10   other questions unrelated to this I can ask this juror just

11   to move through it quickly, other issues.

12       **THE COURT:**  Sure.

13       **MS. COSTANTIN:**  You indicated in your questionnaire

14   that your ex-husband had been arrested for theft or drugs

15   and that your soon-to-be ex-son-in-law had been arrested for

16   theft or forgery; is that right?

17       **JUROR NO. 14:**  Yes.

18       **MS. COSTANTIN:**  Is there anything about that that

19   would prevent you from being fair as a juror, fair and

20   impartial as a juror?

21       **JUROR NO. 14:**  I don't really know.  I mean, what do

22   you mean by that?  I mean, seriously, it happened.  They did

23   wrong.

24       **MS. COSTANTIN:**  And that's my question.  I'm not

25   saying you should be unfair.  What I'm just saying is, if

1    you had a particularly bad experience or they had a

2    particularly bad experience and you would hold that against

3    police officers, for example?

4        **JUROR NO. 14:**  I don't hold anything against them.  It

5    wasn't their fault.

6        **MS. COSTANTIN:**  Okay.  So basically what you're saying

7    is that they -- we were talking about your ex-husband as

8    well as the son-in-law, that they did the crime, you feel

9    that justice was done; is that fair?  Or am I putting words

10    in your mouth?

11        **JUROR NO. 14:**  They goofed up.  I mean I know heroin,

12    it is an addiction and it is something he couldn't help, and

13    I know he was arrested for it many different times on that

14    while he was doing it, but I don't blame the police for it.

15        **MS. COSTANTIN:**  Okay.  That's another thing.  Would

16    you bring any of your knowledge of that for some reason into

17    this case?  You wouldn't be thinking for some reason when

18    you're listening to evidence in this case that had anything

19    at all to do with what involved your relatives?

20        **JUROR NO. 14:**  With them?  No.  Truthfully, I don't

21    think that I can be objective.

22        **MS. COSTANTIN:**  And why do you say that?

23        **JUROR NO. 14:**  Well, if you're in a crowd of people

24    and somebody's coming at you, aren't you going to take

25    action to defend yourself?

1      **MS. COSTANTIN:**  Okay.  So the way you remember this

2    case, the coverage, you remember this case involved an

3    officer being assaulted and --

4      **JUROR NO. 14:**  No.  They were trying to -- as far as I

5    remember, they were trying to keep order; right?

6      **MS. COSTANTIN:**  Okay.

7      **JUROR NO. 14:**  No?

8      **MS. COSTANTIN:**  Well, I can't talk about the evidence.

9    I'm not permitted to talk about the evidence, so --

10     **JUROR NO. 14:**  I don't know either.  I mean from what

11   I remember, in any kind of situation the police are trying

12   to keep order and so the citizens stay back, don't get hurt,

13   nothing else.  And so, to be honest, if somebody is not

14   acting the way they should be, shouldn't -- they should

15   react.

16     **MS. COSTANTIN:**  Okay.  So what you remember is that

17   this involved the police trying to keep order and someone

18   not complying, and then basically what you're saying is

19   there's consequences for not complying?

20     **JUROR NO. 14:**  I guess.

21     **MS. COSTANTIN:**  Okay.  And is that an opinion that you

22   feel pretty strongly about?

23     **JUROR NO. 14:**  You have to obey the law.

24     **MS. COSTANTIN:**  Okay.  And is that -- your feelings

25   about that and what you know about this case, would you be

1  able to set that aside and say, *No, never mind about that.*
2  *I'm just going to listen to the evidence as it comes in*
3  *court*, or are you going to be able -- you're still going to
4  have those feelings?

5        **JUROR NO. 14:**  I'm probably still going to.

6        **THE COURT:**  I didn't hear.  What was the answer?

7        **JUROR NO. 14:**  I'm sorry.  I think I would probably
8  be -- there's laws for a reason.

9      **MS. COSTANTIN:**  So you're still going to have those
10  feelings about what your information was about the case
11  irregardless of what the evidence -- what you hear?

12        **JUROR NO. 14:**  Yeah, just like my husband and
13  son-in-law.

14      **MS. COSTANTIN:**  Judge, I don't have anything else.

15      **THE COURT:**  You may inquire, Mr. Rosenblum.

16      **MR. ROSENBLUM:**  Good morning, Ms. Whitworth.

17      **JUROR NO. 14:**  Good morning.

18      **MR. ROSENBLUM:**  I just have a few questions.  My
19  understanding is, whatever you heard or think you heard
20  about this case through whatever source was quite a while
21  ago?

22        **JUROR NO. 14:**  Uh-huh.

23      **MR. ROSENBLUM:**  I think you said you heard from the --
24  was it the TV news or the newspaper, Facebook?

25        **JUROR NO. 14:**  I'm thinking it was on the TV.

1    **MR. ROSENBLUM:**  Okay.  Well, would you agree with me

2    that not everything you hear in the news is accurate?

3         **JUROR NO. 14:**  Of course.

4         **MR. ROSENBLUM:**  Okay.  And the judge has already

5    informed you that you're only to decide this case based on

6    the evidence that you actually hear in this courtroom and

7    the law that His Honor will read to you at the close of the

8    case.  Does that make sense?

9         **JUROR NO. 14:**  [No audible answer.]

10        **MR. ROSENBLUM:**  If the evidence you hear in this

11   courtroom is different than what you believe you recall from

12   the news, would you be able to set that aside and decide

13   this case just on what you hear in the courtroom?

14        **JUROR NO. 14:**  Truthfully, I don't know.  I don't know

15   if I can actually say that -- which way I would say it.

16        **MR. ROSENBLUM:**  Which way?

17        **JUROR NO. 14:**  I don't know.

18        **MR. ROSENBLUM:**  Let me ask you this:  When you heard

19   it, through whatever source -- and I think you said you

20   spoke with your kids -- you recall having an opinion about

21   it one way or the other?  Did you form an opinion?  Did you

22   share an opinion?

23        **JUROR NO. 14:**  I don't remember.

24        **MR. ROSENBLUM:**  Difficult to remember?  Okay.  And --

25   I'm sorry?

1        **JUROR NO. 14:**  I usually don't get into confrontations

2   of right and wrong and yes and no.  It's just whatever.

3        **MR. ROSENBLUM:**  All right.  I guess at the end of the

4   day can you listen to this evidence with an open mind, just

5   hear what everybody has to say?

6        **JUROR NO. 14:**  I can try but I don't know if I'm --

7        **MR. ROSENBLUM:**  I mean you haven't heard any evidence;

8   right?

9        **JUROR NO. 14:**  I have not heard any evidence, but then

10  again --

11       **MR. ROSENBLUM:**  You can agree with me that whatever

12  evidence you hear in this courtroom may have nothing to do

13  with what you believe you've heard several years ago; would

14  that be fair?

15       **JUROR NO. 14:**  True, but you just -- I don't know.  I

16  just don't feel that I can say yes.

17       **THE COURT:**  I can't hear you.  "I don't feel" what?

18       **JUROR NO. 14:**  I just don't feel like I'm able to say

19  yes or no to any of the -- if it's right or if it's wrong.

20  I wasn't in the situation for what was going on, so how can

21  you judge something that --

22       **MR. ROSENBLUM:**  I mean that's fair, but --

23       **JUROR NO. 14:**  I don't think I'm able to do that.

24       **MR. ROSENBLUM:**  But, understand, we're not just going

25  to throw you in in the abstract.  You're going to hear the

```
1  evidence, the witnesses are going to testify, and then the
2  Court's going to instruct you how to weigh that evidence,
3  okay?  Do you think you could do that?
4          JUROR NO. 14:  Truthfully, I don't know.
5          MR. ROSENBLUM:  Okay.
6          JUROR NO. 14:  I don't know if I can give you an
7  honest answer on which way I would go with that.
8          MR. ROSENBLUM:  Okay.  Thank you.
9          JUROR NO. 14:  I'm sorry.
10         THE COURT:  Thank you.  Counsel, come up, please.
11                         *   *   *   *
12         (Discussion held at sidebar between the Court and
13          counsel as follows:)
14         THE COURT:  She seemed very evasive.  She didn't
15  answer Scott's last question whether she could do it or not.
16  She just didn't know.  I'm inclined to excuse her.  I was
17  not going to until that.  Okay.
18         (End of discussion at sidebar.)
19                         *   *   *   *
20         THE COURT:  Thank you so much for your participation
21  in this case so far, your truthfulness.  I really appreciate
22  it.  So the clerk will help you go out this way.  Thank you.
23         (Juror No. 14 exits the courtroom; Juror No. 18 enters
24          the courtroom.)
25         THE COURT:  You may remove your mask for the -- during
```

1    this questioning if you care to, or you're not required to,

2    but it's up to you.  Thank you.  You may inquire.

3        **MS. COSTANTIN:**  We just have questions for you about

4    what you saw on the news.  You said you've seen this case on

5    the news.  Do you recall when it was you saw it, what you

6    saw, what news source you saw?

7        **JUROR NO. 18:**  Well, it was just on like the evening

8    news that I saw it.  When I came in I recognized one of the

9    gentlemen in the courtroom and it got my brain clicking.

10       **MS. COSTANTIN:**  Okay.  And what specifically do you

11   remember about the stories that you saw on the news?

12       **JUROR NO. 18:**  Well, I know it's -- they were accused

13   of hurting an undercover police officer and they had already

14   gone to trial before and it's being retried.

15       **MS. COSTANTIN:**  Okay.  And do you remember any of the

16   details of the evidence?

17       **JUROR NO. 18:**  I just remember seeing Mr. Hall sitting

18   on the curb, beaten up pretty badly.

19       **MS. COSTANTIN:**  So that's things that you remember

20   about the case.  In order to be a juror on this case you

21   would have to be able to set aside what you already know and

22   only judge the case based on the evidence that you heard

23   here in the courtroom.

24       **JUROR NO. 18:**  Right.

25       **MS. COSTANTIN:**  Are you going to be able to do that or

1    are you always going to know other things outside of --

2        **JUROR NO. 18:**  That's my conflict.  I'm not sure that

3    I can do that.

4        **MS. COSTANTIN:**  Okay.

5        **JUROR NO. 18:**  To be perfectly honest.

6        **MS. COSTANTIN:**  And that's what we ask is just your

7    honesty.  Okay.

8        **JUROR NO. 18:**  I'm just being honest.

9        **MS. COSTANTIN:**  Let me go to another -- maybe I have

10   this wrong, but I also had a notation that you could not

11   keep the Floyd case out of your mind.

12       **JUROR NO. 18:**  Correct.

13       **MS. COSTANTIN:**  Okay.  What does that mean?

14       **JUROR NO. 18:**  Well, it's me, as an older person,

15   having a lot of conflict at the way things are going in our

16   society with law enforcement and people.  I have never

17   participated in any kind of, you know, protest or any of

18   that kind, would never do that.  But I do feel like there is

19   some disparity that needs to be looked at, and I just have a

20   lot of conflicts with what I've already known all these

21   years and what I'm seeing on TV.  It's made me start

22   thinking about things and it's causing a conflict.

23       **MS. COSTANTIN:**  Okay.  And your thoughts about those

24   things, how you're perceiving law -- it sounds to me like

25   you're perceiving law enforcement differently now than you

1  traditionally have; is that fair or am I --

2      **JUROR NO. 18:**  Correct.  Not necessarily in a bad way.

3  You know, I respect the police.  I have -- you know, I know

4  they're needed, but I do believe that they're not always in

5  the right in the things that they do.

6      **MS. COSTANTIN:**  Your feelings about that and your

7  talking about keeping -- not being able to keep the Floyd

8  case out of your head, is that going to prevent you -- do

9  you believe that would prevent you from being a fair and

10  impartial juror on this case?

11      **JUROR NO. 18:**  It's possible, yes.  It's just -- it's

12  just something that I -- it's hard to get out of your mind.

13      **MS. COSTANTIN:**  I understand.  Okay.  Judge, that's

14  all I've got.

15      **JUROR NO. 18:**  It was very disturbing.

16      **MR. ROSENBLUM:**  No questions.

17      **THE COURT:**  All right.  Thank you.

18      Thank you so much for your service in this case.  It's

19  You're going to be excused, and it's not a bad thing.  It's

20  just, you know, you're subjected to this evidence, and so

21  you answered truthfully, and we all appreciate it.  Thank

22  you.

23      **JUROR NO. 18:**  Well, that's fine.  I just want to make

24  sure that, you know, everybody gets a fair chance.

25      **(Juror No. 18 exits the courtroom.)**

1      **THE COURT:**  Before we take a brief recess for the

2      benefit of counsel and others in the courtroom, can we get

3      through these next few?  Okay.

4          **(Juror No. 25 enters the courtroom.)**

5      **THE COURT:**  Thank you, sir.  All right.  You may

6      inquire.

7      **MS. COSTANTIN:**  You had indicated that you had seen

8      some news coverage about the case; is that right?

9      **JUROR NO. 25:**  Correct.

10     **MS. COSTANTIN:**  Can you tell us where that news

11     coverage was from, first of all?  Do you recall?

12     **JUROR NO. 25:**  Local NBC.

13     **MS. COSTANTIN:**  Okay.  TV?

14     **JUROR NO. 25:**  Yes.

15     **MS. COSTANTIN:**  And how recent was that?

16     **JUROR NO. 25:**  This morning.

17     **MS. COSTANTIN:**  Okay.  I didn't know there was

18     anything this morning.  What do you recall about what you

19     saw this morning?

20     **JUROR NO. 25:**  It was basically they're bringing up

21     that the officers are being brought back to trial for --

22     being retried, and the media -- what bothered me was that

23     they made it a point that it was two white officers

24     attacking a black officer.

25     **MS. COSTANTIN:**  And why did that bother you?

1    **JUROR NO. 25:**  Just the tensions that have -- in the

2    environment these days.

3        **MS. COSTANTIN:**  That that would cause more tension by

4    talking about that or just that it bothered you that that's

5    what had happened?

6        **JUROR NO. 25:**  Both.  Both.

7        **MS. COSTANTIN:**  Okay.  Was there any -- other than

8    what you've told us, do you recall any other details about

9    the coverage, any information about the case itself, what

10   actually occurred?

11       **JUROR NO. 25:**  No.

12       **MS. COSTANTIN:**  Other than this morning, the coverage

13   this morning, do you recall seeing any other news coverage?

14       **JUROR NO. 25:**  I knew of it when it happened.

15       **MS. COSTANTIN:**  And what is it that you recall about

16   it when it happened?

17       **JUROR NO. 25:**  Just that an undercover police officer

18   was assaulted, beaten.

19       **MS. COSTANTIN:**  And either with this news coverage or

20   the more recent news coverage, would you be able to set that

21   aside as you listen to the evidence as you hear it in court

22   or would you always have that information in your mind?

23       **JUROR NO. 25:**  It's hard for it to escape my mind but

24   I would do my best to --

25       **MS. COSTANTIN:**  Okay.  Judge, I don't have anything

1    more.

2         **THE COURT:**  Thank you.  You may inquire,

3    Mr. Rosenblum.

4         **MR. ROSENBLUM:**  So the recent news coverage was this

5    morning; correct?

6         **JUROR NO. 25:**  [Nodding head.]

7         **MR. ROSENBLUM:**  And that was on television news?

8         **JUROR NO. 25:**  Yes.

9         **MR. ROSENBLUM:**  And you mentioned something that the

10   officers are being retried?

11        **JUROR NO. 25:**  Yes.

12        **MR. ROSENBLUM:**  And it seemed to have a racial

13   component; correct?

14        **JUROR NO. 25:**  Correct.

15        **MR. ROSENBLUM:**  Now, when you heard that, did you

16   personally form any opinions about it?

17        **JUROR NO. 25:**  No.  I just thought, this is why I'm

18   going to be called in.

19        **MR. ROSENBLUM:**  Have you had any discussions about

20   what you heard this morning or in the past what you heard

21   with anybody?

22        **JUROR NO. 25:**  No.

23        **MR. ROSENBLUM:**  Prior to this morning's news coverage

24   do you recall forming any opinions about what you had heard

25   in the past?

1        **JUROR NO. 25:**  No.

2        **MR. ROSENBLUM:**  So, a couple things.  You mentioned a

3    retrial, okay?

4        **JUROR NO. 25:**  Yes.

5        **MR. ROSENBLUM:**  I would anticipate that the Court is

6    going to instruct the lawyers not to mention that this case

7    had been tried, and no verdicts -- or whatever verdicts had

8    been reached in the past.  You have that knowledge that

9    other jurors may not.  Does that cause -- did you form any

10   opinions about the fact that this is a second trial or

11   retrial?

12       **JUROR NO. 25:**  No.

13       **MR. ROSENBLUM:**  Did you hold any -- would you hold

14   that against Mr. Myers or the other officer on trial?

15       **JUROR NO. 25:**  [No audible answer.]

16       **MR. ROSENBLUM:**  Do you have any opinion about retrials

17   generally?

18       **JUROR NO. 25:**  I do not.

19       **MR. ROSENBLUM:**  Okay.  And with respect to what you

20   heard with respect to the racial component, I think you said

21   that bothered you specifically and generally?

22       **JUROR NO. 25:**  Yeah.  I -- I don't know.  I don't

23   see --

24       **MR. ROSENBLUM:**  I'm sorry?

25       **JUROR NO. 25:**  I'm trying to express what I'm

1     thinking.  There are race issues out there but I think

2     it's -- I think it's being, in some instances,

3     hyperexaggerated in some instances.

4          **MR. ROSENBLUM:**  Okay.  Did you form any opinion --

5     when you heard what you considered racial underpinnings in

6     this case, did you form any opinions about how you would

7     feel about sitting on this case?

8          **JUROR NO. 25:**  No.

9          **MR. ROSENBLUM:**  And I guess ultimately what we look

10    for is whether or not a juror can unring the bell what they

11    heard, okay?

12         **JUROR NO. 25:**  Uh-huh.

13         **MR. ROSENBLUM:**  Because, as the Court has instructed

14    you, if you're selected as a juror in this case you're going

15    to be asked to set aside anything that you may have heard,

16    recognizing that what you may have heard may be completely

17    wrong in the media, and decide this case just on the

18    evidence that you hear and the law that His Honor will give

19    to you at the close of the case, and decide that completely

20    impartially for both sides.  Can you do that?

21         **JUROR NO. 25:**  I believe I can.

22         **MR. ROSENBLUM:**  You mention the environment out there.

23         **JUROR NO. 25:**  Yes.

24         **MR. ROSENBLUM:**  And it would be naive of any of us to

25    not recognize a shift in the environment, that some may be,

1    obviously, rightfully so.  But my question to you, sir,

2    Mr. -- is it Gierer?

3            **JUROR NO. 25:**  Yes.

4        **MR. ROSENBLUM:**  As you sit here, if you're selected as

5    a juror, and you listen to the evidence specifically against

6    Christopher Myers, my client, and you determine that the

7    government has failed to make its burden of proof and you

8    determine the appropriate verdict with respect to Mr. Myers

9    would be not guilty, do you think you would be free in your

10   mind to enter that verdict without regard to how you feel

11   you may have to answer to other individuals, society?

12           **JUROR NO. 25:**  Yes.

13       **MR. ROSENBLUM:**  Even if you feel it may be an

14   unpopular verdict?

15           **JUROR NO. 25:**  Yes.

16       **MR. ROSENBLUM:**  You would do what your conscience

17   dictates you to do?

18           **JUROR NO. 25:**  I would hope so, yes.

19       **MR. ROSENBLUM:**  Lawyers are in a precarious position,

20   "I would hope so."  We're not supposed to ask for

21   commitment, but understand a couple of things, sir.  This is

22   the only time as lawyers we have a chance to talk to you

23   about what's going on with you, okay?  We can't stop you in

24   the elevator and ask if you reconsidered this.  So although

25   we're not supposed to ask for commitment, you have -- I'm

1   asking you whether or not you can assure His Honor that you

2   would decide this case just on the evidence that you hear

3   and the instructions that His Honor will give to you at the

4   close of the case and do what your conscience tells you to

5   do, regardless of any outside influences?

6       **JUROR NO. 25:**  Yes.

7      **MR. ROSENBLUM:**  And regardless of what you may or may

8   not think you heard on the outside?

9       **JUROR NO. 25:**  Yes.

10     **MR. ROSENBLUM:**  And if you determine, for instance,

11   that race had nothing to do with it, would you feel free to

12   form that opinion despite what the news media may have said?

13     **JUROR NO. 25:**  Yes.

14     **MR. ROSENBLUM:**  Thank you.

15     **THE COURT:**  Could I see counsel, please.

16                *  *  *  *

17     *(Discussion held at sidebar between the Court and*

18      *counsel as follows:)*

19     **THE COURT:**  First, Carrie.

20     **MS. COSTANTIN:**  Judge, honestly, I'm kind of split on

21   this.  With me he had said that he would do his best to set

22   aside the information but it would be hard.  The biggest

23   problem I have is that he knows it's a retrial.  That's the

24   biggest problem I have, frankly, and I think that's a bad

25   idea to have somebody who knows it's a retrial.

1        **MR. ROSENBLUM:**  You know, my initial impression was

2   the same as Ms. Costantin, but after questioning him I think

3   we could count on him to put that aside and also not mention

4   it to other jurors.  You may want to follow up if you decide

5   to keep him with respect to -- if he's selected, with

6   respect to the information about a retrial, to please not

7   share it with any other prospective jurors.

8        **THE COURT:**  Okay.  I think that's what I'll do.  My

9   inclination was not to excuse him at this time.

10       **(End of discussion at sidebar.)**

11                        *   *   *   *

12   **THE COURT:**  I want to instruct you, sir, that at no

13   time are you permitted to talk to any other jurors about

14   what happened here while you were being questioned.  Are you

15   able to absolutely not discuss that with anyone if you

16   remain on this panel?

17       **JUROR NO. 25:**  Yes.

18       **THE COURT:**  All right.

19       **(Juror No. 25 exits the courtroom.)**

20       **THE COURT:**  I can't send this juror -- the remainder

21   of the jury back to the jury room because the other jurors

22   are down there for the next panel.  I'm going to send

23   them -- I'm going to -- Kelley, I want you to keep 27 --

24       **DEPUTY CLERK:**  Thirty-one, 32.

25       **THE COURT:**  -- 31, 32, and someone said 30.  I don't

1    know where that came from, but keep them, but take the rest

2    of them up to 16.  That's where they will be.  And then --

3    because we're going to have to excuse everyone here for a

4    break and I don't want the jurors standing out there while

5    we're taking a break, okay?  Thanks.

6         *DEPUTY CLERK:*  Send 27 in, Judge?

7         *THE COURT:*  Twenty-seven.

8         *(Juror No. 27 enters the courtroom.)*

9         *DEPUTY CLERK:*  Judge, this is 27.

10        *THE COURT:*  Thank you for your patience.  You may

11   remove your mask for this purpose if you care to.

12        *MS. COSTANTIN:*  Sir, we asked you to come back here

13   just because you had indicated you saw news coverage on the

14   case.

15        *JUROR NO. 27:*  Yes.

16        *MS. COSTANTIN:*  What was that?  Was that TV, internet?

17        *JUROR NO. 27:*  Local news, some on the internet, and

18   whatever else that was on.

19        *MS. COSTANTIN:*  Okay.  And was that -- how recently

20   was that?

21        *JUROR NO. 27:*  Probably right when it happened.

22        *MS. COSTANTIN:*  Okay.  All right.  What do you recall

23   about the case or what news coverage that you saw about the

24   case?

25        *JUROR NO. 27:*  Just they showed video of it.

1        **MS. COSTANTIN:**  They showed video of what?  I'm sorry.

2        **JUROR NO. 27:**  Just the video of it from what they had

3   on the news.

4        **MR. ROSENBLUM:**  I'm sorry.  What did you say?

5        **MS. COSTANTIN:**  Video of it, what they had on the

6   news.

7        Do you recall what the video showed or anything like

8   that?

9        **JUROR NO. 27:**  Not really.

10       **MS. COSTANTIN:**  Okay.  Did you -- what at all do you

11  remember about the case?

12       **JUROR NO. 27:**  Just that they said that there was an

13  undercover cop and the other ones didn't know it.  They beat

14  him a little bit.

15       **MS. COSTANTIN:**  Okay.  All right.  And you haven't

16  heard anything about it since back when it happened, back --

17       **JUROR NO. 27:**  Right.

18       **MS. COSTANTIN:**  Okay.  All right.  Would you be able

19  to set aside what you've heard and base your verdict -- or

20  listen to the evidence in court and base your verdict only

21  on what you hear in court?

22       **JUROR NO. 27:**  I believe I could.

23       **MS. COSTANTIN:**  Okay.  At the time that it happened

24  what did you think about it?  When you heard the coverage

25  what were you thinking about it?

1        *JUROR NO. 27:*  That all the riots are stupid.

2        *MS. COSTANTIN:*  That all the riots are stupid?

3        *JUROR NO. 27:* Yep.

4        *MS. COSTANTIN:*  Okay.  All right.  And in what way?

5   Like that happened and --

6        *JUROR NO. 27:*  Just what they were doing, just the

7   violence, the looting, burning.  You're tearing up your own

8   neighborhood just so you can tell everybody that you tore it

9   up, and it doesn't make sense to me.

10       *MS. COSTANTIN:*  And what did you think about it as far

11  as the -- what happened with the undercover cop?

12       *JUROR NO. 27:*  Thought it was kind of stupid.

13       *MS. COSTANTIN:*  What was stupid?  What part was

14  stupid?

15       *JUROR NO. 27:*  Just the video I seen of it was like

16  they were holding him down and whatever else was going on

17  with it.  Didn't look like they needed to.

18       *MS. COSTANTIN:*  So the stupid part was that they were

19  holding him down and they didn't need to?

20       *JUROR NO. 27:*  Right.  That's kind of what I gathered

21  out of it anyway.

22       *MS. COSTANTIN:*  At the time when this all was

23  happening were you -- did you talk to folks about what your

24  thoughts were about all of that?

25       *JUROR NO. 27:*  It was all just kind of stupid stuff.

1    **MS. COSTANTIN:**  Okay.  But what I'm saying is, did you

2    talk to other people about that, that you thought it was

3    stupid?  And did they share your opinion?

4    **JUROR NO. 27:**  Yeah, a lot of them did.  A lot of them

5    are friends.

6    **MS. COSTANTIN:**  Okay.  And in regards to what happened

7    with the undercover police officer, did you talk to them

8    about that, too?

9    **JUROR NO. 27:**  I don't remember if we talked about

10   that one or not.  It was mainly just the riots in general.

11   **MS. COSTANTIN:**  Okay.  And your thoughts about what

12   happened back at that time, is that always going to be in

13   your head about the news coverage you saw about what was

14   going on when you're listening to the evidence as it comes

15   in here?

16   **JUROR NO. 27:**  It would probably -- I can't really say

17   what I would do because it would be one thing -- or be

18   thinking about everything I seen, which was all the riots

19   and all the burning and everything else, and then listening

20   to the evidence would be another section of it to where I

21   would listen to it to see what was going on.

22   **MS. COSTANTIN:**  Okay.  And you'd listen to it and see

23   what was going on, but while you're listening to the

24   evidence in here would you also be thinking about, yeah,

25   well, I know -- I remember all that other stuff that they're

1  not talking about, all these other things that were

2  happening during that time?

3      **JUROR NO. 27:**  It might be in the back of my mind but

4  not real vivid, let's put it that way.

5      **MS. COSTANTIN:**  I'm sorry.  I missed the last part of

6  what you said.

7      **JUROR NO. 27:**  It wouldn't be real vivid.  It would

8  just be in the back of my mind.

9      **MS. COSTANTIN:**  Okay.  Judge, I don't have anything

10 more.

11     **THE COURT:**  All right.  Mr. Rosenblum?

12     **MR. ROSENBLUM:**  I'm sorry, Mr. Owens.  I missed that

13 last part.  It wouldn't be real what?

14     **JUROR NO. 27:**  It wouldn't be real vivid in my mind.

15     **MR. ROSENBLUM:**  So, as I understand, you remember some

16 news coverage some time ago; right?

17     **JUROR NO. 27:**  Right.

18     **MR. ROSENBLUM:**  I think what generally what you had

19 referred to is riots; right?

20     **JUROR NO. 27:**  Yes.

21     **MR. ROSENBLUM:**  And I think you indicated that you

22 generally have an opinion about riots, and I think that's

23 fair.  Would you also agree that riots sometimes can be

24 different than peaceful protesting?

25     **JUROR NO. 27:**  Right.

1      **MR. ROSENBLUM:**  So the key to this case is whether or

2   not you can set aside what you've heard, basically leave it

3   outside the door, and decide this case just on the evidence

4   that you hear from the witness stand and the law that His

5   Honor will give to you at the end of the case on how to

6   consider that evidence.  Do you believe you can do that?

7      **JUROR NO. 27:**  I think I can.

8      **MR. ROSENBLUM:**  And I think all of us certainly want

9   to be fair, and it's important, you would agree, for the

10  government to get a fair trial and decide this case just

11  based on the evidence they present, and equally important

12  for Mr. Myers and the other officer to get a fair trial as

13  well; correct?

14     **JUROR NO. 27:**  Yes.

15     **MR. ROSENBLUM:**  Would you agree with me that the only

16  way that's possible is to decide this case just on the

17  evidence that you hear from the courtroom?

18     **JUROR NO. 27:**  Yes.

19     **MR. ROSENBLUM:**  You would also agree -- do you also

20  agree that what you hear in the news media may not be

21  accurate?

22     **JUROR NO. 27:**  Most definitely.

23     **MR. ROSENBLUM:**  Most definitely.  So the only fair way

24  would be to decide this case just on what you hear in the

25  courtroom; right?

1        *JUROR NO. 27:*  Yes.

2        *MR. ROSENBLUM:*  And how His Honor will instruct you on

3   how to consider that evidence?

4        *JUROR NO. 27:*  Yes.

5        *MR. ROSENBLUM:*  And do you believe -- as you sit here

6   now can you commit to the Court that you will decide this

7   case fairly and impartially for both sides just on what you

8   hear in this courtroom?

9        *JUROR NO. 27:*  Yes.

10       *MR. ROSENBLUM:*  And you can say that without

11  hesitation?

12       *JUROR NO. 27:*  Yes.

13       *MR. ROSENBLUM:*  Thank you, sir.

14       *THE COURT:*  Does counsel want to be heard?

15       *MS. COSTANTIN:*  Judge, we can approach.

16                          *    *    *    *

17       *(Discussion held at sidebar between the Court and*

18        *counsel as follows:)*

19       *MS. COSTANTIN:*  I don't think there's a basis to

20  strike him for cause.

21       *THE COURT:*  Yeah, I agree.  Thank you.

22       *(End of discussion at sidebar.)*

23                          *    *    *    *

24       *THE COURT:*  When you return, you'll be going up --

25  escorted upstairs to the ninth floor with the other jurors.

1    Will you promise me that you will not talk to the jurors

2    about anything that happened here, anything -- any views

3    that were expressed by you?

4           **JUROR NO. 27:**  Yes.

5           **THE COURT:**  All right.  Thank you, sir.

6           **(Juror No. 27 exits the courtroom; Juror No. 31 enters**

7            **the courtroom.)**

8           **MS. COSTANTIN:**  We asked you to come back in just to

9    ask about news coverage, okay?  What is it that you recall

10   about the -- first of all, where did you hear it, when did

11   you hear it, what did you hear?

12          **JUROR NO. 31:**  Well, unfortunately, I read it this

13   morning on the front page of the Post-Dispatch.

14          **MS. COSTANTIN:**  Okay.  And what is it that was -- I

15   did not see the paper this morning.  What is it that you

16   recall about the coverage?

17          **JUROR NO. 31:**  Well, I recall that there was

18   discussion about --

19          **THE COURT:**  Would you hold that microphone right up

20   there.

21          **JUROR NO. 31:**  I'm sorry.  There was discussion about

22   what the jury vote had been in the previous trial.  One was

23   6/6 and one was 10/2.  There was also some discussion that

24   there was going to be new -- I believe I'm correct in saying

25   this -- new evidence that was going to be allowed in this

```
 1   jury -- in this -- this time around that wasn't involved the
 2   last time.  There was also some information that one of the
 3   defendants in this may have made some statements that could
 4   be pretty prejudicial, I would think.  So, I mean that's --
 5        MS. COSTANTIN:  That's what you recall?
 6        JUROR NO. 31:  This is what I recall.  I was actually
 7   just skipping the thing just -- and then I saw that they
 8   were going to impanel a jury today, and I went, oh, God.
 9        MS. COSTANTIN:  Can you hold on one second, sir.
10        (Attorneys conferring off the record.)
11        MS. COSTANTIN:  Judge, could we approach?
12        THE COURT:  Sure.
13                         *   *   *   *
14        (Discussion held at sidebar between the Court and
15         counsel as follows:)
16        MS. COSTANTIN:  We're just going to cut to the chase
17   and agree that he should be gone.  He knows the votes and
18   everything.
19        MR. ROSENBLUM:  Yeah.
20        THE COURT:  Excused.
21        (End of discussion at sidebar.)
22                         *   *   *   *
23        THE COURT:  I want to make sure you understand how
24   much we appreciate you being here.  The process is designed
25   to just -- you know, when someone has the information you
```

```
1    have -- it's not like you did anything wrong, you just read
2    the paper, but that could complicate things.  So you'll be
3    excused, but not because of anything you did improperly.
4    You understand?
5         JUROR NO. 31:  Yes, I understand.  I'm sorry.  If I
6    had noticed -- you know, I didn't notice it until it was too
7    late and I'd already read it.  And I went, oh, not good.
8    But, anyway, so I'm -- am I done?
9         DEPUTY CLERK:  Yeah.  I'll take you down to the jury
10   room.
11        (Juror No. 31 exits the courtroom; Juror No. 32 enters
12         the courtroom.)
13        THE COURT:  You may remove your mask.  And would you
14   please use the microphone so we can hear clearly.  Thank you
15   very much.
16        MS. COSTANTIN:  Ma'am, we're -- you were asked to come
17   in because you indicated that you participated in a protest;
18   is that correct?
19        JUROR NO. 32:  Yes.
20        MS. COSTANTIN:  Could you tell us what that protest
21   was about and when it was?
22        JUROR NO. 32:  It was the Black Lives Matter protest
23   that was last summer here in St. Louis, downtown.
24        MS. COSTANTIN:  Okay.  Now, you know the bare minimum
25   about this case right now.  Well, let me ask you this:  Had
```

1   you heard any news coverage of this case based on what the

2   judge told you about this case?

3       **JUROR NO. 32:**  I'm really bad with dates so I'm not

4   sure.

5       **MS. COSTANTIN:**  Okay.  Let me just ask you this:  The

6   fact that you were involved in a Black Lives Matter protest,

7   would that prevent you from being a fair and impartial juror

8   in this case?

9       **JUROR NO. 32:**  I do not believe so.  I will look at

10  the evidence and --

11      **MS. COSTANTIN:**  Would you be able to base your

12  decision solely on the evidence, which is what the witnesses

13  say and the physical evidence that comes in?

14      **JUROR NO. 32:**  Yes.

15      **MS. COSTANTIN:**  Okay.  You indicated also, I

16  believe -- I'm not sure -- that you might have raised your

17  hand on the question of not being able to keep the Floyd

18  case out of your mind?

19      **JUROR NO. 32:**  Yes.

20      **MS. COSTANTIN:**  Do you understand that, to belabor the

21  obvious, that the Floyd case has nothing to do with this

22  case?

23      **JUROR NO. 32:**  Yes, right.

24      **MS. COSTANTIN:**  Would you be able to decide this case

25  only on the evidence that you see in this case?

1          **JUROR NO. 32:**  Yes, correct.

2          **MS. COSTANTIN:**  So the fact that you know about the

3     Floyd case and you're always going to know about the Floyd

4     case, is that going to prevent you from being fair in this

5     case?

6          **JUROR NO. 32:**  No.

7          **MS. COSTANTIN:**  Judge, I don't have anything more.

8          **MR. ROSENBLUM:**  Good morning, Ms. Green.

9          **JUROR NO. 32:**  Good morning.

10         **MR. ROSENBLUM:**  So this last summer, was that the only

11    protest that you engaged in?

12         **JUROR NO. 32:**  Yes.

13         **MR. ROSENBLUM:**  That was the Black Lives Matter

14    protest?

15         **JUROR NO. 32:**  Yes.

16         **MR. ROSENBLUM:**  Can I ask, if I may:  Was it on one

17    occasion or multiple occasions?

18         **JUROR NO. 32:**  It was just the one.

19         **MR. ROSENBLUM:**  You said with respect to this case --

20    do you recall any details about this case at all?

21         **JUROR NO. 32:**  No.

22         **MR. ROSENBLUM:**  And you said that you can't keep the

23    Floyd -- you may not be able to keep the Floyd case out of

24    your mind.  Can you explain, if you could, what do you mean

25    by that?

1      **JUROR NO. 32:**  Just the fact that a cop killed an

2   innocent man.  That's always in the back of my mind.

3      **MR. ROSENBLUM:**  And, obviously, I think it was

4   disturbing for all of us, and it was particularly disturbing

5   for you, which caused you to protest for the first time in

6   your life?

7      **JUROR NO. 32:**  Yes.

8      **MR. ROSENBLUM:**  So you've had these strong feelings

9   about the Floyd case, I would assume for quite a while, as

10   you sit here now; right?

11      **JUROR NO. 32:**  Yes.

12      **MR. ROSENBLUM:**  We can tell you what the evidence is

13   going to be, but if you hear evidence as we go through this

14   case and it causes you to reflect on the Floyd case, do you

15   have any concern that it may spill over?

16      **JUROR NO. 32:**  I do not believe so.

17      **MR. ROSENBLUM:**  And we hear the words, "I don't

18   believe."  Okay?  And, again, this is the only opportunity

19   we can speak to you.

20      And, Ms. Green, there's a reason why we basically have

21   90 prospective jurors and we're going to wind up with 12 and

22   some alternates, because we all recognize and the Court

23   recognizes that we all have different life experiences, and

24   some of us can set them aside and some of us can't.  It's

25   fair either way.  This is the only opportunity I have or the

1  lawyers have to question as to whether or not you can.

2       So, again, the only thing that you know in this case

3  so far is that there are two officers that are charged with

4  different offenses.  It's obvious that they're Caucasian

5  officers and I think it's fair to say that the victim in

6  this case is an African-American.  With that additional fact

7  and with how you feel about the Floyd case, do you have any

8  concerns now that it may spill over?

9       **JUROR NO. 32:**  I do.

10      **MR. ROSENBLUM:**  You do have some concerns?

11      **JUROR NO. 32:**  Yes.

12      **MR. ROSENBLUM:**  Okay.  Because it's -- as you would

13  agree, it's difficult to unring the bell of what you hear,

14  right, and how you feel?

15      **JUROR NO. 32:**  Yes.

16      **MR. ROSENBLUM:**  Especially if you felt that way for a

17  while.  And you would agree if that does spill over with

18  those additional facts, that could keep you or probably

19  would keep you from being a completely fair and impartial

20  juror to hear this case?

21      **JUROR NO. 32:**  Yes.

22      **MR. ROSENBLUM:**  Thank you, ma'am, and thank you for

23  your candor.

24      **MS. COSTANTIN:**  Judge, I don't have any other

25  questions.  I'm sorry.

1        **THE COURT:**  I get to, as a judge, do a lot of things,

2    and one of the things I get to do is to see where people

3    really search their soul, and, you know, you've done that,

4    and we really appreciate everything you said today.  And

5    you're going to be excused, not because of anything you did

6    wrong or anything like that, but the process is through --

7    try to get to a point where there can be no doubt about

8    being able to set something aside.

9        So, thank you so much for your answers, and appreciate

10   your service.

11       *(Juror No. 32 exits courtroom.)*

12       **THE COURT:**  Somehow there was information that

13   filtered in that 30 may have heard something.  I don't know

14   where that came from, how that information came about, but

15   30's detained and 30 will be asked some questions.

16       *(Juror No. 30 enters the courtroom.)*

17       **MS. COSTANTIN:**  If you could remove your mask.

18       **THE COURT:**  Thank you.

19       **JUROR NO. 30:**  Hi.

20       **THE COURT:**  You may inquire.

21       **MS. COSTANTIN:**  We had information that you thought

22   you knew somebody?

23       **JUROR NO. 30:**  Yeah, Kyle Mack.  Don't know if it's

24   probably the same person but I had gone to grade school and

25   know some friends who know him.

1    **MS. COSTANTIN:** He's now a police officer.  Did you

2    know that?  The Kyle Mack you know, did you know --

3       **JUROR NO. 30:** No.  I don't know what he's up to.

4       **MS. COSTANTIN:** All right.  So the fact that you knew

5    him in grade school, would that prevent you from being fair

6    and impartial?

7       **JUROR NO. 30:** No.

8       **MS. COSTANTIN:** If you heard him as a witness would

9    that have any impact on whether you believed or disbelieved

10   him?

11      **JUROR NO. 30:** No.

12      **MS. COSTANTIN:** Judge, I don't have anything.

13      **THE COURT:** Any questions?

14      **MR. ROSENBLUM:** No, Your Honor.

15      **THE COURT:** All right.  Thank you.  That's all.  Thank

16   you.

17      **MS. COSTANTIN:** I'm sorry.  I'm just looking --

18   Mr. Livergood pointed out something to me.

19      You indicated that you might have child care issues,

20   or what was -- on this questionnaire.  I'm sorry.

21      **JUROR NO. 30:** No.  I just have a three-year-old who I

22   just kind of take to daycare and pick up and everything, so

23   I wasn't too sure on how to answer that question, but, no, I

24   just have a three-year-old that I care for.

25      **MS. COSTANTIN:** But you do have child care for the

1  three-year-old?

2       **JUROR NO. 30:**  Correct, he does.  He goes to school.

3       **THE COURT:**  Thank you very much.

4       **JUROR NO. 30:**  All right.  Thank you.

5       **(Juror No. 30 exits the courtroom.)**

6       **THE COURT:**  Our current situation is that we have this

7  panel for individual questioning and the other panel is

8  ready, and so, obviously, everyone here needs a recess.  I'm

9  interested in how long and what your expectations are about

10 bringing the first group back for further questioning.

11      **MS. COSTANTIN:**  Judge, generally I would say that my

12 voir dire isn't going to be more than 40 minutes, and it

13 might be less because they did the questionnaires.  I don't

14 recall what it was last time.

15      **THE COURT:**  Okay.  But generally just so -- if we take

16 a 15-minute break now and we bring the first panel back for

17 voir dire, is that -- that's the expectation; correct?

18      **MS. COSTANTIN:**  Right.

19      **MR. ROSENBLUM:**  Yeah, I would agree.  I would

20 anticipate I would be 40 or 45 minutes at the most.

21      **THE COURT:**  Yeah, okay.  That's fine.  And then just

22 the first panel is just going to cool their heels down in

23 the jury assembly room and they can be excused for lunch,

24 but not -- the second panel I'm talking about.

25      The first panel on the ninth floor, would you tell

1  them we're taking a 15-minute break and then we'll bring

2  them back here, okay?

3      **DEPUTY CLERK:**  And then the jurors -- second group --

4      **THE COURT:**  Second jury can go to lunch and come back

5  later.

6      Okay.  Now we're on the same page.  I just want to

7  make sure.  We're taking a 15-minute break.  We're coming

8  back and voir dire the first panel of 30.

9      **MS. COSTANTIN:**  Yes, Judge.

10      **MR. ROSENBLUM:**  Ms. Costantin and I will go straight

11  through?

12      **THE COURT:**  I'm sorry?

13      **MR. ROSENBLUM:**  Do you anticipate that Ms. Costantin

14  will do her 40 minutes or so and then I'll follow with my 40

15  minutes or so and then we'll break for lunch?

16      **THE COURT:**  Yes.  Is that okay?

17      **MR. ROSENBLUM:**  That's fine.  Whatever the Court

18  wants.

19      **MS. COSTANTIN:**  That's fine, Judge.  I don't know that

20  I'll be any longer -- all we want to do is make sure that

21  we're not sending the jurors to lunch at 2 o'clock in the

22  afternoon, that's all.

23      **THE COURT:**  You'll get whatever time you need.  All

24  right.  Thank you.  We're in recess for 15 minutes.

25      **(Court recessed from 11:10 a.m. to 11:35 a.m.)**

1      *(Reconvened with the defendants and the jury present.)*

2      **THE COURT:**  Ladies and gentlemen, thank you so much

3  for your patience.  We do understand how shuffling you

4  around is difficult.  I'm sorry we have to do it but it's

5  just a lot of moving parts and want to get it right.  Thank

6  you for your patience.

7        One thing I forgot to mention:  If you see attorneys

8  in the hall, they're really nice folks and I know you'd like

9  to visit, but the rule is, they have to, to avoid being rude

10  to you, say, *I can't talk to you.  I can't be close to you.*

11  So please understand that they're not being unfriendly.

12  It's just, again, part of what we're going through to try to

13  get to a point where both sides in this case have the

14  absolutel best chance for a fair and impartial jury.

15        So, Ms. Costantin?

16      **MS. COSTANTIN:**  Thank you.  As I said, my name is

17  Carrie Costantin.  I'm an Assistant United States Attorney.

18  I represent the United States in this case.

19        We've had some time, you've had some time to think

20  about some of the questions the judge already asked you, so

21  I'm just going to ask it one more time.  Is there anyone

22  here who's heard any press coverage of this case, about this

23  case, and they've thought about it now, who we haven't

24  already talked to.  If so, please raise your hand.

25        Thanks.

1          As citizens we have three contacts with the criminal

2     justice system:  As you sit here today as a juror, as a

3     victim of a crime, or as a defendant or someone who's

4     charged with a crime.  You've provided us with

5     questionnaires so this should go a lot faster than normally

6     it does.

7          There were several jurors who had served previously on

8     a jury.  Is there anyone who's previously served on a jury

9     for whom it would -- that that was such a bad experience or

10    difficult experience for them that they feel they could be

11    unable to serve on another jury, to serve on this jury?  If

12    so, please raise your hand.

13         Okay.  The judge talked about certain important

14    concepts; for example, that I, the government, must show,

15    beyond a reasonable doubt, that the defendants are guilty of

16    this crime.  And that's higher than a preponderance.  It's

17    not beyond all doubt.  The Court will define what

18    "reasonable doubt" is.

19         Is there anyone who's going to be unable to follow

20    that instruction?  They have -- in their own mind they have

21    their idea, here's what reasonable doubt means, and that's

22    what it's going to be.  If so, please raise your hand.

23         As I said, the second way that we as citizens have

24    contact with the criminal justice system is if we or someone

25    close to us is a victim of a crime.  I'm just going to jump

1   around a little bit because we've had some answers to some

2   of these questions.  Number 13, Ms. Miller, hiding behind

3   there.  You indicated that you had been the victim of a

4   crime; is that correct?

5        **JUROR NO. 13:**  Yes.

6        **MS. COSTANTIN:**  And that the perpetrator was not

7   caught; is that right?

8        **JUROR NO. 13:**  Correct.

9        **MS. COSTANTIN:**  First of all, I'm sure you're not

10  satisfied that the victim -- or I assume you were not

11  satisfied that the perpetrator was not caught.

12       **JUROR NO. 13:**  A long time has passed [indiscernible].

13       **COURT REPORTER:**  I'm sorry, I couldn't hear you.

14       **JUROR NO. 13:**  I said a long time has passed.  That

15  happened when I was 18, so not that long.

16       **MS. COSTANTIN:**  An intermediate time has passed since

17  that time, right?

18       **JUROR NO. 13:**  Yes.

19       **MS. COSTANTIN:**  Is there anything about that

20  experience that would prevent you from being fair to both

21  sides, both the United States as well at the defendants?

22       **JUROR NO. 13:**  No.

23       **MS. COSTANTIN:**  Okay.  Mr. Liscombe, you indicated

24  that your brother was killed by a drunk driver; is that

25  correct?

1      **JUROR NO. 19:**  Yes.

2      **MS. COSTANTIN:**  And that you were not satisfied with

3      how that was resolved; is that correct?

4      **JUROR NO. 19:**  [Inaudible response.]

5      **MS. COSTANTIN:**  What part of it were you not satisfied

6      with?  What happened with the courts, what happened with the

7      police?  What part of it was the --

8      **JUROR NO. 19:**  More with the court.

9      **MS. COSTANTIN:**  I think what we're going to do,, so

10     that we can hear everybody is, when you're answering if you

11     can take your mask off and use the microphone.  I think --

12     is that --

13     **THE COURT:**  What's his number?

14     **MS. COSTANTIN:**  Number 19.

15     What was it about the court?  What happened with the

16     court that you're not satisfied with?

17     **JUROR NO. 19:**  The other driver pretty much got away

18     and they got nothing out of it.

19     **MS. COSTANTIN:**  Okay.  So you feel, obviously, in that

20     case that justice was not done; is that fair to say?

21     **JUROR NO. 19:**  Yes.

22     **MS. COSTANTIN:**  Is there anything about that

23     experience, the fact that you felt that in that case with

24     your brother that justice wasn't done, that would prevent

25     you from being fair and impartial in this case?

1      ***JUROR NO. 19:***  I don't believe so.  That was 16 years

2      ago.  At that time it was a lot harder than what it is right

3      now.

4          ***MS. COSTANTIN:***  All right.  Thank you, sir.

5          The last way that we or someone close to us has

6      contact with the criminal justice system is if we're accused

7      or arrested for a crime.  And a number of people have

8      indicated that they or someone close to them was arrested or

9      charged with a crime.  Ms. Smith, you had indicated --

10         ***THE COURT:***  What number?

11         ***MS. COSTANTIN:***  Number 3.  I'm sorry.  I'll do

12     numbers, Judge.  I'm sorry.

13         Number 3, you'd indicated that you had a family member

14     who had a possession of a controlled substance arrest

15     sometime ago; is that correct?

16         ***JUROR NO. 3:***  Yeah.  It was before I met him.  It was

17     my husband.

18         ***MS. COSTANTIN:***  Okay.  All right.  Do you have an

19     opinion -- so it was before you even had met him?  Before

20     you had met him is when this happened?

21         ***JUROR NO. 3:***  Correct.

22         ***MS. COSTANTIN:***  Do you have an opinion in that case as

23     to whether the outcome was fair in that case or you don't

24     have an opinion one way or the other?

25         ***JUROR NO. 3:***  I don't have an opinion because I wasn't

1   there, so --

2       **MS. COSTANTIN:**  Is there anything about the fact that

3   that happened with him that would prevent you from being

4   fair and impartial in this case?

5       **JUROR NO. 3:**  No.

6       **MS. COSTANTIN:**  Okay.  Thank you, ma'am.

7       Number 11, you had indicated that you had a family

8   member who had a DUI.

9       **JUROR NO. 11:**  Yes; my brother.

10      **MS. COSTANTIN:**  Is there anything about -- do you

11  feel -- first of all, do you feel like the outcome was fair,

12  what happened in that situation, or do you have an opinion?

13      **JUROR NO. 11:**  I really don't have an opinion.  It was

14  kind of -- my parents didn't really tell us a lot about what

15  happened.  I just know he was arrested.

16      **MS. COSTANTIN:**  Okay.  So that sounds to me like

17  there's nothing about that that would prevent you from being

18  fair to both sides in this case?

19      **JUROR NO. 11:**  No.

20      **MS. COSTANTIN:**  Number 13, I'm back to you.  I'm

21  sorry.  You had indicated there's a DWI.  Was there anything

22  about that experience that would -- first of all, do you

23  feel that that was an appropriate outcome, what happened

24  there?  Was that fair?

25      **JUROR NO. 13:**  Yes.

1      **MS. COSTANTIN:**  Anything about that case that would

2  prevent you from being fair and impartial to either side?

3      **JUROR NO. 13:**  No.

4      **MS. COSTANTIN:**  Okay.  Thank you.

5      Mr. Kolb, Number 16.  I'm sorry.  I'm trying to do

6  numbers.  Number 16 indicated there's some old arrests for

7  minor in possession as well as controlled substance; is that

8  correct?

9      **JUROR NO. 16:**  Yes, ma'am.  Long time ago.  Long time

10  ago.  Different world, different time.

11      **MS. COSTANTIN:**  So you said it was fair, the outcome

12  was fair?

13      **JUROR NO. 16:**  Absolutely.

14      **MS. COSTANTIN:**  Anything about that that would affect

15  you in your decision regarding this case?

16      **JUROR NO. 16:**  Absolutely not.

17      **MS. COSTANTIN:**  All right.  Thank you, sir.

18      Number 20, you had indicated there was an arrest but

19  it ended up getting dropped.

20      **JUROR NO. 20:**  Yes, that's correct.

21      **MS. COSTANTIN:**  Anything about -- well, first of all,

22  do you feel that the result was -- the outcome was fair?

23      **JUROR NO. 20:**  I do.

24      **MS. COSTANTIN:**  Do you feel you were treated fairly

25  before the outcome?

1        **JUROR NO. 20:**  Yes.

2        **MS. COSTANTIN:**  All right.  And is there anything

3    about that experience that would prevent you from being fair

4    to both sides?

5        **JUROR NO. 20:**  No, there's not.

6        **MS. COSTANTIN:**  Okay.  Thank you.

7        Number 21, you indicated there was a family member who

8    had been convicted of DUI manslaughter; is that fair?

9        **JUROR NO. 21:**  That's correct.

10       **MS. COSTANTIN:**  Do you believe that the outcome of

11    that case was fair?

12       **JUROR NO. 21:**  I do.

13       **MS. COSTANTIN:**  Is there anything about that case or

14    the outcome of that case that would prevent you from being

15    fair to both parties in this case?

16       **JUROR NO. 21:**  No.

17       **MS. COSTANTIN:**  Okay.  Thank you, ma'am.

18       Number 22, you indicated you had a family member with

19    a prior conviction; is that correct?

20       **JUROR NO. 22:**  Yes, ma'am.

21       **MS. COSTANTIN:**  Is there anything about that -- well,

22    first of all, do you feel that the outcome was fair in that

23    case or not?

24       **JUROR NO. 22:**  For the most part.

25       **MS. COSTANTIN:**  Is there anything in particular that

1    you felt was unfair about it?

2         *JUROR NO. 22:*  It was just -- it was a very long

3    process.  It lasted for years and I didn't feel like -- I

4    just felt like it didn't -- the right questions weren't

5    being asked about certain people, and I feel like my family

6    member was treated unjustly in certain areas.

7         *MS. COSTANTIN:*  Okay.  All right.  Is the fact that

8    you feel that your family member was treated unjustly in

9    certain areas, would that have an impact on you as you

10   listen to this case?

11        *JUROR NO. 22:*  I can't say that 100 percent.

12        *MS. COSTANTIN:*  Okay.  So you can't say it wouldn't

13   have -- you can't say it would not have an impact?  It might

14   have an impact, is that the easiest way to say it?

15        *JUROR NO. 22:*  Yes, ma'am.

16        *MS. COSTANTIN:*  One of the things that we have to do

17   as attorneys is try and get people to sort of fill that out

18   and go from "might" to "yes" or "no."  So I guess I just

19   have to ask you again:  Do you believe that it would have an

20   impact on you?

21        *JUROR NO. 22:*  Yes, ma'am.

22        *MS. COSTANTIN:*  Okay.  Do you feel that you'd be

23   better suited to be an another jury, another type of case,

24   like a civil case, not a criminal case?

25        *JUROR NO. 22:*  Or no case.

1        **MS. COSTANTIN:** Or no case. Fair enough. I don't get

2   to make that decision. Number -- thank you, ma'am.

3        Number 24, please. I believe you indicated that you

4   had a family member a cousin who was in jail for DWI; is

5   that right?

6        **JUROR NO. 24:** A family member, yes.

7        **MS. COSTANTIN:** Is there anything -- I'm sorry?

8        **JUROR NO. 24:** My mother.

9        **MS. COSTANTIN:** Oh, I'm sorry. I didn't have that.

10  I'm sorry. And on these questions if there's anything that

11  you don't feel like sharing with like 30 people you don't

12  know, we can certainly go up to sidebar. So I don't know if

13  you feel comfortable answering or if you want to go up to --

14       **JUROR NO. 24:** I'm fine.

15       **MS. COSTANTIN:** What was that charge?

16       **JUROR NO. 24:** DWI.

17       **MS. COSTANTIN:** Okay. All right. Do you feel he was

18  treated fairly?

19       **JUROR NO. 24:** I do.

20       **MS. COSTANTIN:** Is there anything about that case or

21  that outcome in that case that would prevent you from being

22  fair and impartial in this case?

23       **JUROR NO. 24:** Absolutely not.

24       **MS. COSTANTIN:** Okay. Number 26, you indicated that

25  you had a family member who was in prison; is that correct?

```
 1            JUROR NO. 26:  Correct.

 2            MS. COSTANTIN:  Do you believe the outcome in that

 3      case was fair?

 4            JUROR NO. 26:  One hundred percent.

 5            MS. COSTANTIN:  Okay.  Is there anything about that

 6      outcome or that case or how it was handled that would

 7      prevent you from being fair and impartial to both sides in

 8      this case?

 9            JUROR NO. 26:  No, ma'am.

10            MS. COSTANTIN:  Okay.  And then, I believe, Number 27.

11      Talking about years ago there was a DWI; is that correct?

12            JUROR NO. 27:  Pardon?

13            MS. COSTANTIN:  Years ago there was a DWI; is that

14      right?

15            JUROR NO. 27:  Yes.

16            MS. COSTANTIN:  Do you believe that the outcome in

17      that case was fair or not?

18            JUROR NO. 27:  Yes.

19            MS. COSTANTIN:  Is there anything about that case that

20      would prevent you from being fair in this case?

21            JUROR NO. 27:  No.

22            MS. COSTANTIN:  All right.  Thank you.

23            Is there anyone here who has been a witness in a case?

24      And I don't mean like you saw something; I mean actually

25      came into court and had to testify.  If so, please raise
```

1    your hand.

2         Now, I anticipate that you're going to hear testimony

3    from police officers as well as FBI agents, and the Court is

4    going to give you an instruction on credibility of

5    witnesses.  And you understand that this is the same rule

6    that you use to judge all witnesses, whether someone's a

7    police officer or not.  Does everybody understand that?

8    There's a number of folks here who have friends or

9    themselves are in -- friends, family, or themselves are in

10   law enforcement.  I'm just going to go through that real

11   quickly and ask you about that information.

12         Number 5, Mr. Degonia.  I wasn't sure.  Were you a

13   correctional officer yourself?

14         *JUROR NO. 5:*  Yes.

15         *MS. COSTANTIN:*  You're also an MP in the reserves; is

16   that right?

17         *JUROR NO. 5:*  Yes.

18         *MS. COSTANTIN:*  Okay.

19         *JUROR NO. 5:*  And a federal officer at NGA.

20         *MS. COSTANTIN:*  I'm sorry, I didn't have that.

21         *JUROR NO. 5:*  Federal officer at NGA.

22         *MS. COSTANTIN:*  I didn't realize that.  The fact that

23   you are in law enforcement yourself, is that going to make

24   it difficult for you to sit on a case in which law

25   enforcement officers are charged with crimes?

1       **JUROR NO. 5:**  I would say yes.

2       **MS. COSTANTIN:**  Okay.  Are you going to be in a

3    position where, as you listen to the evidence, you're going

4    to be thinking, *what would I have done*, or, *what if I was in*

5    *that situation*, or --

6       **JUROR NO. 5:**  Yes.

7       **MS. COSTANTIN:**  Okay.  Similarly, the victim in this

8    case is an undercover police officer.  I'm assuming you did

9    not have occasion to work undercover, but I could be wrong.

10      **JUROR NO. 5:**  No.

11      **MS. COSTANTIN:**  Do you think that your experience,

12   your current experience as a law enforcement officer would

13   prevent you from being able to judge this case solely on the

14   evidence that you heard because you have this other

15   experience?

16      **JUROR NO. 5:**  No.

17      **MS. COSTANTIN:**  Okay.  You think you'd be able to set

18   aside all your other experience and just judge the case on

19   what comes into evidence?

20      **JUROR NO. 5:**  Yes.

21      **MS. COSTANTIN:**  Okay.  When you sit there and you

22   think, *that could have been me*, or that -- or, *what would I*

23   *have done in that situation*, how are you going stop that

24   from happening and that affecting --

25      **JUROR NO. 5:**  You have to wipe it out of your head,

1    use your best judgment.

2         **MS. COSTANTIN:**  And can you do that?

3         **JUROR NO. 5:**  Innocent until proven guilty.

4         **MS. COSTANTIN:**  Okay.  And would you be able to do

5    that?

6         **JUROR NO. 5:**  Yes.

7         **MS. COSTANTIN:**  Thank you, sir.

8         Number 8.  And your brother is in the military police;

9    is that correct?

10        **JUROR NO. 8:**  Yeah.  He's an officer and he's also the

11   police officer for the post office.

12        **MS. COSTANTIN:**  At the post office.  Okay.  Does he

13   talk about his work in any great detail?

14        **JUROR NO. 8:**  No.  We're not close.

15        **MS. COSTANTIN:**  Okay.  Is there anything about that

16   relationship that would prevent you from being fair and

17   impartial in this case?

18        **JUROR NO. 8:**  No.

19        **MS. COSTANTIN:**  Okay.  Thank you.

20        Number 10.  Pass that way.  Ms. Bain, your brother, is

21   he the warden at Potosi?

22        **JUROR NO. 10:**  He is.

23        **MS. COSTANTIN:**  Were you yourself a correctional

24   officer?

25        **JUROR NO. 10:**  I was.

1      **MS. COSTANTIN:**  Okay.  And is the fact that you --

2    that your brother is a -- I'm sorry.  Your brother is the

3    warden and you yourself were a correctional officer.  Is

4    that going to have an effect on you as you listen to the

5    evidence --

6      **JUROR NO. 10:**  No, ma'am.

7      **MS. COSTANTIN:**  -- in this case?  Would you be able to

8    set that aside and be fair to both sides?

9      **JUROR NO. 10:**  Yes, I would.

10     **MS. COSTANTIN:**  Thank you, ma'am.

11     Number 15.  Ma'am, you're a TSA officer; is that

12   correct?

13     **JUROR NO. 15:**  Correct.

14     **MS. COSTANTIN:**  And so is your husband?

15     **JUROR NO. 15:**  Correct.

16     **MS. COSTANTIN:**  All right.  As a law enforcement

17   officer, as you sit there and listening to the evidence are

18   you going to have a tendency to put yourself in place of the

19   officers and what they're doing?

20     **JUROR NO. 15:**  No.

21     **MS. COSTANTIN:**  Would you be able to set aside your

22   experiences as a law enforcement officer and judge this case

23   solely on the evidence as it comes in?

24     **JUROR NO. 15:**  Yes.

25     **MS. COSTANTIN:**  Would you be able to be fair to both

1    sides in this case?

2         *JUROR NO. 15:*  Yes.

3         *MS. COSTANTIN:*  All right.  Thank you, ma'am.

4         Number 16.  Yes, you are 16.  And your brother-in-law

5    is a sergeant in Crestwood; is that correct?

6         *JUROR NO. 16:*  Yes, ma'am.

7         *MS. COSTANTIN:*  Do you have much contact with him?  Do

8    you talk about -- does he talk about his cases or anything

9    much?

10        *JUROR NO. 16:*  No.  We never -- have never discussed

11   his work.  We see each other a couple times a month.  Never

12   discuss his work.

13        *MS. COSTANTIN:*  I assume there's nothing about that

14   relationship that would prevent you from being fair and

15   impartial to both parties in this case?

16        *JUROR NO. 16:*  No.

17        *MS. COSTANTIN:*  All right.  Thanks, sir.

18        And, 22.  Ma'am, your husband is a Missouri Highway

19   Patrolman; is that correct?

20        *JUROR NO. 22:*  Yes, ma'am.

21        *MS. COSTANTIN:*  And -- well, I don't know.  Does he

22   bring his work home?  Does he talk to you about his work?

23        *JUROR NO. 22:*  Sometimes.  Sometimes he just doesn't

24   want to.

25        *MS. COSTANTIN:*  Is there any -- let me ask you this:

```
 1   Has your husband ever had to work undercover?

 2           JUROR NO. 22:  No, ma'am.

 3       MS. COSTANTIN:  Okay.  Is the fact that the defendants

 4   in this case are police officers, is that going to make it

 5   difficult for you to be fair and impartial?

 6           JUROR NO. 22:  No, ma'am.

 7       MS. COSTANTIN:  Would you be able to set aside the

 8   fact that your husband is a highway patrolman, is a law

 9   enforcement officer, and listen to the evidence as it comes

10   into court?

11           JUROR NO. 22:  Yes, ma'am.

12       MS. COSTANTIN:  Okay.  You'll be able to set aside the

13   fact that you have your relationship with him?  You're not

14   going to be tempted to go home and talk to him about it or

15   anything like that?

16           JUROR NO. 22:  Right.

17       MS. COSTANTIN:  I didn't think so.  Okay.

18       The judge has made reference to this -- I have nothing

19   more for Number 22.

20       The judge referenced this before but I want to make

21   sure.  This trial is expected to last up to two weeks.  I

22   believe that jurors -- if anyone here has an absolute

23   conflict that would cause them to be unable to serve, if you

24   could please raise your hand.

25       All right.  Mr. Degonia, Number 5.  I think we're
```

1  supposed to be using numbers.  I'm sorry.

2      **JUROR NO. 5:**  No problem.

3    **MS. COSTANTIN:**  Number 5, what's that conflict?

4      **JUROR NO. 5:**  Conflict would be my work, not getting

5  paid to be here, and I have payments.  I'm the only sole

6  provider in my household.

7      **MS. COSTANTIN:**  All right.  Thank you, sir.

8      **JUROR NO. 25:**  Again, work.  Heavy workload and short

9  staff.

10      **MS. COSTANTIN:**  You said you have a heavy workload and

11  you're short-staffed?

12      **JUROR NO. 25:**  Correct.

13      **THE COURT:**  What number?

14      **MS. COSTANTIN:**  Number 25.

15      I'm sorry, I should have asked you both.  I should

16  have asked you this question, too:  Is the fact that you

17  have a heavy workload and short-staffed, is that going to

18  prevent you from being able to concentrate on the evidence

19  as it comes in?  Are you going to be thinking, I've got this

20  other stuff to do when I get home or something like that?

21      **JUROR NO. 25:**  I always have that going on in my mind

22  but I will wipe it clear.

23      **MS. COSTANTIN:**  Fair enough.  Thank you, sir.

24      Number 5, is the fact that there's work issues, would

25  that prevent you from being able to listen to the evidence

1   as it comes in?

2       **JUROR NO. 5:**  Work issues would only be that my work

3   does not compensate me for being here like most companies

4   do.  I'm the sole provider of my household but it

5   wouldn't -- if I was selected, I would be --

6       **MS. COSTANTIN:**  You'd be listening to the evidence,

7   okay.

8       **JUROR NO. 5:**  Yes, I'd be listening to the evidence.

9       **MS. COSTANTIN:**  Thank you, sir.

10      We also had questions -- there were questions in the

11  questionnaire about vision or hearing difficulty.  And just

12  going to Juror No. 1, I think you had indicated that

13  sometimes you have problems with -- when people mumble,

14  which I think we all have trouble when people mumble.  How

15  has it been in the courtroom so far today?

16      **JUROR NO. 1:**  It's been fine.

17      **MS. COSTANTIN:**  All right.  That's all I need to know.

18      Is there anyone here who's been assaulted by a law

19  enforcement officer or had a close friend or relative who

20  was assaulted by a law enforcement officer?  If so, please

21  raise your hand.

22      Now, as the judge said, defendant, former police

23  officer Dustin Boone, is charged with deprivation of civil

24  rights, and defendant former police officer Myers is charged

25  with destruction of evidence.  Is there anything about the

1   nature of the charges -- just what I just said, the nature

2   of those charges -- that would make any member of this panel

3   be unable to be fair?  Is there someone just listening to

4   the charges says, *I can't be fair about that*?  If so, please

5   raise your hand.

6        Anyone who thinks that deprivation of civil rights

7   should not be a crime?  If so, please raise your hand.

8        Is there anyone who thinks that destruction of

9   evidence should not be a crime?  If so, please raise your

10  hand.

11       Now, Defendant Boone is charged with aiding and

12  abetting the deprivation of the civil rights of Luther Hall,

13  and one of the things that you're going to be instructed on

14  is the concept of aiding and abetting, what aiding and

15  abetting means.  I'm going to use an example to illustrate

16  this concept.  Now, this is not the facts of the case, even

17  close to the facts of the case.

18       Under aiding and abetting, if I go into a bank with a

19  gun and I rob the bank, and Mr. Livergood sits outside in

20  the getaway car and drives me away from the robbery, he is

21  guilty, under aiding and abetting, of bank robbery even

22  though he never went in the bank.  Okay?  Does anybody think

23  that should not be the law?  If so, please raise your hand.

24       Is there anybody who couldn't follow the law on aiding

25  abetting if they were instructed that that was the law?

1          Okay.  Let me give you another example.  Under aiding

2     and abetting, if I go into that bank and I have a gun and I

3     rob the bank and Mr. Livergood stays outside and is the

4     lookout to see if the police are coming, he is also guilty

5     of bank robbery under aiding and abetting.  Does anyone

6     think that that should not be the law?  If so, please raise

7     your hand.

8          If instructed, is there anyone here who's instructed

9     if that's the law -- what aiding and abetting means, that

10    you're guilty of the offense if you aided and abetted --

11    would not follow the law?  If so, please raise your hand.

12         Now, the judge mentioned some high-profile cases that

13    were in the news recently and in some of those cases there's

14    a video of the entire incident.  In this case there is no

15    video of the entire incident.  Is there anyone here who's

16    sitting here right now believes that they're going need

17    video evidence of the crime in order to find a person guilty

18    beyond a reasonable doubt?  If so, please raise your hand.

19         Is there anyone here, sitting here right now believes

20    that they're going to need video evidence of the crime in

21    order to find a police officer guilty beyond a reasonable

22    doubt?  If so, please raise your hand.

23         Does anyone here believe that, in order to convict a

24    police officer, there must be a higher standard of proof

25    than beyond a reasonable doubt?  If so, please raise your

1     hand.

2          Now, you may hear testimony from a witness who pled

3     guilty and is cooperating with the investigation in the hope

4     of receiving a lesser sentence.  Now, the use of testimony

5     from such cooperating witnesses is lawful, it's permitted.

6     And the Court will instruct you concerning the rule that you

7     use for judging the credibility of such a witness.  Now, is

8     there anyone here who's going to automatically disregard

9     testimony from such a witness just right now, automatically

10    just -- they know right now, *I don't even want to hear*

11    *anything more.  I don't want to hear anything from that*

12    *person if that's what I know that they did.*  If so, please

13    raise your hand.

14         Does anyone have any personal feelings about the

15    government, about our -- about me or Mr. Livergood or what

16    we're doing's use of a cooperating witness that's going to

17    influence your evaluation of the evidence?  In other words,

18    not just consider what that person said but think it taints

19    somehow the whole rest of the case.  If so, please raise

20    your hand.

21         Would anyone have a bias against the government or for

22    the government because of the use of a cooperating witness?

23    If so, please raise your hand.

24         Would any of you be less likely to believe a witness

25    merely because he or she has entered into such an agreement

1    with the government?

2         Now, the judge is going to give you the law.  The law

3    is not what I or defense counsel says it is.  And you may

4    have some ideas about what certain things mean like

5    "unreasonable force" or "bodily injury."  But you must

6    follow the definitions, the law, that the Court gives you.

7    Is there anyone here who think they're going to be unable to

8    do that, unable to follow what the Court says the law is?

9    If so, please raise your hand.

10        Is there anyone, for personal or religious reasons,

11   feels that they cannot sit in judgment of another person?

12   Because that's, in effect, what happens when you're on a

13   jury.  Is there anyone who feels that they cannot do that?

14   Please raise your hand.

15        And, finally, I ask the same question pretty much that

16   the judge asked:  Is there anyone who, sitting here right

17   now, has their own reason that they know they can't be fair

18   and impartial and we just haven't asked the right questions?

19   Is there anyone here who believes they can't be fair and

20   impartial?  If so, please raise your hand.

21        Thank you.  Thanks, Judge.

22        **MR. ROSENBLUM:**  Your Honor, may I approach?

23        **THE COURT:**  Yes.

24                         *   *   *   *

25        **(Discussion held at sidebar between the Court and**

1              *counsel as follows:)*

2         **THE COURT:**  Okay.

3         **MR. ROSENBLUM:**  Thank you, Judge.  I just wanted

4    clarification.  So I can't use names?

5         **THE COURT:**  The thing is, the court reporter needs the

6    numbers.

7         **MR. ROSENBLUM:**  So if I use the name and add the

8    number, I'm fine?

9         **THE COURT:**  Yeah.  Use the number first.

10        **(End of discussion at sidebar.)**

11                        *  *  *  *

12        **MR. ROSENBLUM:**  May it please the Court.

13        Good afternoon or -- good afternoon, everybody.  I'm

14   Scott Rosenblum, as I introduced myself previously, along

15   with Mr. Fein and Mr. Bilyeu, and we represent Chris Myers,

16   only Chris Myers.

17        So you're going to be asked to compartmentalize

18   evidence with respect to the two individuals charged with

19   offenses, and as you've already heard, they're charged with

20   different offenses.  So as a general concept, do you all

21   believe that you can compartmentalize not only the charge

22   but the evidence and view the evidence that comes in with

23   respect to Mr. Myers separately and distinctly from evidence

24   that comes in against Mr. Boone?  Do you all feel like you

25   can do that?  Can I see your hands?  Okay.

1        Do any of you feel like that's an unusual concept,

2    hard to grasp, this idea of compartmentalizing the evidence?

3    But you would all agree it's the fair thing to do, right?

4    Because these two individuals are charged with separate

5    offenses, different offenses, and there'll be different

6    evidence, and at times you'll be instructed only to consider

7    certain evidence with respect to Mr. Myers, only consider

8    certain evidence with respect to Mr. Boone, and disregard it

9    as opposed to each other and any other way.  May not have

10   anything to do with each other.  Anybody feel like they'd

11   have a difficult time doing that?  Anybody feel like some

12   evidence may spill over to the other person even though

13   you're instructed it shouldn't be the case?

14       Now, having said that, because they're each -- and

15   certainly Mr. Myers is entitled to have his case decided

16   just on the evidence presented against him.  Do you all feel

17   that, in the event that the evidence doesn't satisfy, the

18   government's case doesn't satisfy beyond a reasonable doubt

19   with Mr. Myers, do any of you feel like you would have any

20   problem returning a verdict of not guilty with respect to

21   Mr. Myers, regardless of the other evidence in the case?

22   Does anybody feel like that?

23       Ms. Emge, Number 8, I can look -- I can't see your

24   face but I can still see your eyes and you appear to be

25   thinking.  Okay.  Thank you.

1          Now, I'm just going to circle back to some questions

2     that Ms. Costantin asked of some of the jurors.

3          Ms. McBride, where are you?  Number 22.  So you talked

4     a little bit about a family member that had an issue with

5     the criminal justice system and you were wondering whether

6     or not -- or you pondered whether or not it would spill

7     over, have some effect on your ability to be fair and

8     impartial in this case.  Is that a fair characterization?

9          *JUROR NO. 22:*  I would be fair as I can.  I just would

10    really struggle just being there in general.

11         *MR. ROSENBLUM:*  So nobody's going to say jury duty's a

12    walk in the park and I know a number have mentioned being

13    inconvenienced, and I don't know what they pay but I'm sure

14    it's not very good.  But the question is:  If you're

15    selected as a juror, do you think you could at least

16    temporarily set aside whatever feelings you may or may not

17    have had with respect to the treatment of your family member

18    and decide this case just on the evidence that you hear in

19    this courtroom and the law that His Honor will give to you

20    at the end of the case?

21         *JUROR NO. 22:*  Yes.

22         *MR. ROSENBLUM:*  You can do that?

23         *JUROR NO. 22:*  Yes.

24         *MR. ROSENBLUM:*  You can assure this Court and

25    Judge Webber that you can do it fairly and impartially?

```
 1          JUROR NO. 22:  Yes, sir.

 2          MR. ROSENBLUM:  Thank you, ma'am.

 3          Mr. Degonia, Number 5.

 4          JUROR NO. 5:  Yes.

 5          MR. ROSENBLUM:  You indicated a couple things.  I

 6   think you said that you're the sole provider, which would be

 7   a hardship, obviously.

 8          JUROR NO. 5:  Yes.

 9          MR. ROSENBLUM:  In the event that you're selected, you

10   said that that would not affect your ability to concentrate

11   on the evidence and do your job as a juror.

12          JUROR NO. 5:  That's correct.

13          MR. ROSENBLUM:  Okay.  Thank you.  And with respect to

14   your ties and the fact that you personally are in law

15   enforcement, I think the word you used -- and don't let me

16   put words in your mouth -- is that it may be difficult, but

17   whatever feelings you have with respect to that, you

18   understand the importance of deciding this case just on the

19   evidence; correct?

20          JUROR NO. 5:  Correct.

21          MR. ROSENBLUM:  And the law that His Honor will

22   provide you at the end of the case?

23          JUROR NO. 5:  Correct.

24          MR. ROSENBLUM:  And you would do so fairly and

25   impartially for both sides?
```

1       **JUROR NO. 5:**  Yes.

2       **MR. ROSENBLUM:**  Which is the way it should be; right?

3       **JUROR NO. 5:**  Correct.

4       **MR. ROSENBLUM:**  Thank you.

5       Mr. Gierer, Number 25.  Again, you had a work-related

6  issue, and I think Ms. Costantin touched on it, but to be

7  certain, you said it would be an inconvenience, and in the

8  event that you're selected you would set those issues aside

9  and decide this case fairly just on the evidence that you

10 hear and the law at the end of the case?

11      **JUROR NO. 25:**  Correct.

12      **MR. ROSENBLUM:**  Of course, you -- obviously, you

13 understand the importance for the government but you also

14 understand the importance for Mr. Myers; correct?

15      **JUROR NO. 25:**  Yes.

16      **MR. ROSENBLUM:**  Thank you.

17      As we've seen, even in the short time that we've been

18 talking, all of us have life experiences.  If it were such

19 that life experiences didn't affect some of us to be fair

20 and impartial jurors in this case, we would just call 12

21 people down, but obviously we don't do that.  In this

22 particular case we're going to question potentially up to 90

23 people, and this is our only opportunity as lawyers to

24 discuss with you exactly if any of those -- discuss with you

25 if any of those life experiences are such that you couldn't

1    set them aside temporarily outside the door and decide this

2    case just on the evidence.  If you can, you're a fair and

3    impartial juror, but if you can't, this is our only

4    opportunity to know about it.

5         As Ms. Costantin has said and as the Court has

6    informed you, Mr. Myers has been undated by the federal

7    government and he has been indicted with -- essentially with

8    the destruction of evidence, mutilating evidence in

9    contemplation of an investigation.

10         So, as a starting point, does everybody understand,

11   just like any of us, an indictment is the formal way the

12   United States government informs a citizen of the charges

13   against him or her?  Does that make sense, Ms. Bain?  Okay,

14   Number 10.  So it's a piece of paperwork.  That's all it is.

15   It's not self-proving.  Ms. Costantin can't lay it on the

16   witness stand and be done with her case.  She has to give

17   that indictment life, and she can choose to do it in

18   whichever way the government wants to, by exhibits, by

19   documentary evidence, by witnesses which you'll hear, to

20   give life, to see whether or not the government can make its

21   case beyond a reasonable doubt.  Does that make sense to

22   everybody?

23         We can also understand, I think, that, obviously,

24   Mr. Myers has been charged with a crime.  He's been indicted

25   by the federal government.  Do any of you believe, because

```
 1   he's been indicted, that he must be guilty with what he's
 2   charged with or anything else?  Let me see your hands if you
 3   believe that.
 4        Ms. Martin, you shook your head.  Number 1.
 5   Obviously, that wouldn't be fair; right?
 6        JUROR NO. 1:  Right.
 7        MR. ROSENBLUM:  An indictment is not proof of any
 8   fact.
 9        JUROR NO. 1:  Correct.
10        MR. ROSENBLUM:  There has not been any evidence.  That
11   make sense to everybody?  Okay.
12        And are you comfortable -- is everybody comfortable,
13   the fact that Mr. Myers has been indicted with a crime, that
14   you are to raise no inference of guilt that he's guilty of
15   what he's charged with or anything else?
16        Ms. Cook, Number 23, are you good with that?
17        JUROR NO. 23:  Yeah.
18        MR. ROSENBLUM:  Now, do you believe -- well, first of
19   all, can we all agree that whenever -- to be sitting in that
20   chair and to be charged with a crime by the federal
21   government, a crime of destruction of evidence, that's an
22   awful thing.  That's not a good thing.  Can we agree with
23   that?  Can we also agree that it's equally not a good thing
24   to be charged with such an offense and not be guilty of it?
25   Does that make sense?  Let me see your hands if you can
```

 1   agree with that.  All right.  Thank you.

 2        And, lastly, do you all believe that in this country,

 3   in June of 2021, that a completely innocent person can be

 4   charged by the United States government of something they're

 5   not guilty of?  Do you all believe that can happen?

 6        Nineteen, Mr. Liscombe, do you think that can happen?

 7        **JUROR NO. 19:**  [Nodded head].

 8        **MR. ROSENBLUM:**  Thank you.

 9        Have any of you had any negative experiences

10   specifically with the St. Louis City Police Department?  Any

11   negative experiences?  Anybody at all?  A number of you have

12   talked about individuals or family members that have been

13   arrested or charged with offenses.  I'm not going to go

14   through that again, as Ms. Costantin covered it thoroughly.

15        I just want to ask a general question:  Have any of

16   those individual or cases or matters, were any that -- were

17   St. Louis City police officers involved?  And generally -- I

18   don't know whether Ms. Costantin answered the question.

19   Have any of you had family members or friends had any

20   negative experiences at all with police officers that you

21   can recall?

22        Now, as it's been pointed out, Chris Myers, who we are

23   representing, was a St. Louis City police officer at the

24   time that he was charged indicted with this offense.

25   Because of that, do any of you give that charge more weight,

1    more credence than if it were any of us, any other citizen?

2    In other words, do you feel like if the government,

3    United States government, charged a police officer there

4    must be something more to it than having just been a citizen

5    that was not a police officer?  Does anybody feel like that?

6    Do any of you feel like there must be more significant

7    evidence because, in fact, Chris was a police officer when

8    he was charged?  Does anybody feel like that?

9          Now, as Ms. Costantin mentioned, this case was

10   investigated at some point by the FBI, the Federal Bureau of

11   Investigation.  Do any of you believe, because the FBI

12   investigated this case, that it must be -- that there must

13   be something to it?  Does anybody think that, that the FBI

14   can never get it wrong?

15         So the other side of the coin:  Do you all believe

16   that the FBI can get it wrong like any other police agency?

17   Let me see your hands.  You're willing to listen to the

18   evidence and see what the evidence is with respect to

19   Chris Myers to determine whether or not they did.  Does that

20   sound fair?  Okay.

21         You've been talked -- there's been discussion about

22   the burden of proof, and the Court's touched on it,

23   Ms. Costantin's touched on it.  Like any of us accused of a

24   crime, the burden on the United States is to prove each and

25   every element of its charge beyond a reasonable doubt.

1    That's the charge.  You'll be instructed on it by the Court.

2    As Ms. Costantin correctly pointed out, that doesn't mean

3    proof beyond all possible doubt, but, on the other hand,

4    what it does mean is, that's the standard.

5         So at the end of the day, if you listen to the

6    government's case and you're thinking about the government's

7    case and you say, *You know what, this case sounds*

8    *suspicious.  In fact, I think that Chris may have done it,*

9    *but they didn't prove it beyond a reasonable doubt*, do any

10   of you have a verdict -- a problem returning a verdict of

11   not guilty because they failed -- the government failed to

12   meet its burden with respect to Chris Myers?  Any of you at

13   all?  If you do so, if they failed to meet their burden

14   beyond a reasonable doubt, let me see your hands.

15        The Court -- so nobody has a quarrel with upholding

16   the burden of proof.  And, you know, you'll see how it plays

17   out during the course of this trial because the way it's

18   going to play out is, because the government has the burden,

19   His Honor is going to look at the government and say,

20   "Ms. Costantin or Mr. Livergood, you now must give an

21   opening statement."  And he'll look at me and he'll say,

22   "Mr. Rosenblum, you may if you choose but you don't have any

23   obligation to do so."  "Ms. Costantin, you must present

24   evidence."  "Mr. Rosenblum has no -- you don't have an

25   obligation to do so."  And, lastly, "You must give a closing

1    argument."  And, again, the defense has no obligation to do

2    so because the burden will always be, throughout the time of

3    your deliberations, on the government.

4         Now, I promise you I anticipate not just sitting here

5    because if I did, I would assume that Chris would be giving

6    me some elbows in my side.  But I don't have to, that's the

7    point.  I don't have to do anything other than let the

8    government try to make its burden.  Does everybody

9    understand that concept?  Does everybody think that's the

10   way it should be?  Any anybody have any objection with it at

11   all?

12        The other concept that you're going to hear is the

13   concept of the presumption of innocence.  And just like any

14   one of us, any one of our family members, this week for sure

15   Chris Myers enjoys that presumption of innocence, and the

16   presumption of innocence, it has been said, is alone enough

17   to return a verdict of not guilty.  Does that make sense to

18   everybody?

19        So another way to look at it is, you haven't heard any

20   evidence.  The Court's told you, Ms. Costantin has told you,

21   and I've told you what the law is in this country.  We all

22   are entitled to that presumption of innocence.  So if you

23   had to vote right now, what's your verdict?  What would your

24   verdict be?

25        **JUROR:**  Innocent.

1          **MR. ROSENBLUM:**  I'm sorry?  Not guilty?  Would

2     everybody vote not guilty?  Of course, because you haven't

3     heard any evidence.  So the presumption alone is enough to

4     return a verdict of not guilty.  Because of that and because

5     Chris Myers, as all of us are afforded this presumption, and

6     he is this week, and as I mentioned, we don't have to

7     present any evidence.  We can establish reasonable doubt

8     through this concept of cross-examination.  Has everybody

9     heard of cross-examination?

10         So does it make sense that when the government may

11    call witnesses and either myself or Mr. Fein or Mr. Bilyeu

12    cross-examine those witnesses, that you will be able to

13    consider after that whether or not we've established this

14    concept of reasonable doubt just through cross-examination?

15    Ms. Smith, does that make sense to you?

16         **JUROR NO. 3:**  Yes.

17         **MR. ROSENBLUM:**  I can still read your face even with

18    that mask.  All right?

19         Now, also because of the presumption of innocence,

20    Mr. Chris Myers, Mr. Myers, has an absolute right not to

21    testify.  Absolute.  All of us enjoy that right.

22         So, first of all, sometimes we draw on experiences of

23    talking to juries before.  So I believe that often times

24    people, jurors, try to put themselves in the shoes of the

25    person accused, and what they would say is, *You know, gee,*

1    *if I was sitting there at that table I certainly would want*
2    *to get up and talk and start screaming from the loudest*
3    *mountain exactly what happened, exactly what I did.*  But
4    that's not the law.  But you can't help how you feel.

5          So as you sit here now do any of you feel that you
6    would want to hear from Chris or you would want him to
7    testify, and if he chose not to after talking to us, that
8    you would somehow hold it against him regardless of what the
9    Court's instructions are?  These are just your personal
10   feelings.  Do any of you feel like that may be a negative,
11   that may be a strike against him, that may be something that
12   you would consider?  Anybody feel that way?  It's fine if
13   you do.

14         How many of you are sitting here and saying, *You know*
15   *what?  If I were in that situation I would certainly want to*
16   *testify or I would want to him testify.*  Does anybody come
17   down like that?

18         Okay.  So you all have no problem following that law
19   and you wouldn't hold it against him whatsoever.

20         Mr. Brokaw, you good with -- Number 9?

21         **JUROR NO. 9:**  Yes.

22         **MR. ROSENBLUM:**  Everybody on this side in the jury
23   box?  On the right side?  All right.  How about in the
24   middle?

25         Now, on the other hand, Ms. Costantin told you that

1    the Court's going to give you a credibility instruction and

2    I anticipate it will.  So if Chris chooses to testify, which

3    is also his absolute right, then he should be treated just

4    like everybody else and follow that same credibility

5    instruction.  Does that make sense to everybody?  Everybody

6    agrees to do that?

7        Chris Myers was a police officer and sometimes we hold

8    police officers to different standards.  The fact that he

9    was a police officer, would that cause you any -- would that

10   cause you to think, *well, treat him differently*; say, *you*

11   *know, Mr. Rosenblum, I understand what you're saying about*

12   *the presumption of innocence.  I understand that he doesn't*

13   *have to like any one of us as citizens, but you know if he's*

14   *a cop, he should testify?*  Does anybody think that?

15       So along those same lines, has everybody heard of the

16   expression that you can't prove a negative?  Does that make

17   sense?  I see you shake your head.  Ms. King, I see you're

18   shaking your head back there.  I can't read your number.

19   29.  Ms. Ford, is it?  Yeah.  Ms. King is over there, 21.

20       So does that concept make sense, you can't sometimes

21   prove a negative?  And you all understand that Mr. Myers has

22   already said he's not guilty.  He pled not guilty.  That's

23   why we're here.  And that's what you all are here to

24   determine, what the evidence is and whether this side of the

25   table can prove it beyond a reasonable doubt.

1          So as you sit here now, nobody's going to insist or

2     require that he testifies before you can consider a verdict

3     of not guilty, nor are you going to insist or require that

4     we present any evidence at all, other than

5     cross-examination, before you would consider a verdict of

6     not guilty.  Does everybody agree with that concept?  Over

7     here?  Over here?  All right.

8          Does everybody understand the difference of

9     speculation and guessing versus objective evidence?  So take

10    a moment and think about it.  And does everybody understand

11    there's a difference between speculation and guessing and

12    objective evidence?  Mr. Tang, do you understand the

13    difference?

14         *JUROR NO. 2:*  Yes.

15         *MR. ROSENBLUM:*  Okay.  Now, I'll try my own example.

16    For instance, that gentleman over there with the beard, if I

17    asked everybody in this room to guess his age, other than

18    maybe insulting him -- but there's about 26 of you now in

19    the room.  We may get 26 different guesses; fair to say?

20    And is it fair to say that those guesses compared against a

21    birth certificate, one may be objective evidence, the other

22    may be a guess.  Make sense?

23         And, clearly, when you're deciding something as

24    important as Chris's rights, Chris's life and liberty,

25    objective evidence is how we should come down.  You all

1  agree with that concept?  I'm talking about speculation

2  along those same lines.  When we walked into the -- when we

3  walked into the courtroom, you may have looked at him,

4  Mr. Bilyeu -- sorry I keep picking on him -- and you may

5  have speculated, because he's sitting at that table, that he

6  must be a lawyer.  But that may not be correct.  Could have

7  been a paralegal.  Could have been a tech.  Does that make

8  sense?

9       Again, when you're making a decision, does everybody

10 understand it has to be on evidence?  You'll be instructed

11 what that is, but we don't -- you're not going to make a

12 decision -- speculation isn't evidence.  Guessing isn't

13 evidence.  That would not be fair.  Does everybody agree

14 with that?  Does everybody agree to follow that concept?

15      In talking about that these types of issues, has

16 anybody in this courtroom, any of the jurors either been

17 taken out of context or have been taken out of context?  I

18 know we all have; right?  Ms. King, I see you shaking your

19 head.  So would you agree that if you don't understand the

20 context of what you're talking about or what somebody's

21 talking about or what you're trying to communicate, you can

22 reach the wrong conclusion?  Does that make sense?  And it

23 happens to us all; right?

24      Another way to look at it is -- Ms. King, I'm just

25 guessing.  Have you seen a movie recently?

1      **JUROR NO. 21:**  Have I?  Yes.

2      **MR. ROSENBLUM:**  Did it have a plot?

3      **JUROR NO. 21:**  Of course.

4      **MR. ROSENBLUM:**  Always have to ask that question.  I

5   try to ask that question of jurors that don't have young

6   children because the movie may not have had a plot.  Without

7   knowing what the movie is or how -- or the title, but did

8   you watch the entire movie?

9      **JUROR NO. 21:**  Yes.

10      **MR. ROSENBLUM:**  Had you walked in and watched two

11   minutes in the middle of that movie, do you think you could

12   have figured out what it is?

13      **JUROR NO. 21:**  No.

14      **MR. ROSENBLUM:**  Again, out of context.  And do you all

15   agree, before you decide any important issue, that you

16   should understand the context?  Does that make sense?  And

17   do you all agree that before you decide the case against

18   Christopher Myers, you understand the entire contents?  Does

19   that seem fair, Mr. Schaefer, Number 12?

20      **JUROR NO. 12:**  Yeah.

21      **MR. ROSENBLUM:**  Thank you.

22      Ms. Costantin touched on credibility of witnesses.

23   And as jurors in this case, that's your job, okay?  That's

24   your sole province.  You have to sit and decide credibility

25   of witnesses whether or not they're criminal, whether or not

1    these witnesses are believable, whether or not they're

2    testifying by way of motive or agenda, whether or not

3    they're lying, innocently mistaken, or just get it wrong.

4         First of all, do you all feel that in this context

5    that you can -- you feel capable and you feel -- you have

6    the ability to judge the credibility of the witnesses that

7    come before you?  You all agree you can do that?

8         Ms. Creely, I see you shaking your head.  Okay.

9    Ms. McBride, are you good with that concept, Number 22?

10        **JUROR NO. 22:**  [Nodding head.]

11        **MR. ROSENBLUM:**  All right.  Because you're going to

12   hear from witnesses from different walks of life.  To be

13   sure, you're going to hear from police officers and you're

14   going to hear possibly from medical personnel, you may hear

15   from FBI, you may hear from technicians.  You're going to

16   hear from all sorts of people.  And the first issue is,

17   because I anticipate the Court will instruct you, that as

18   those witnesses walk through that door, take the witness

19   stand, swear an oath, that they're all to be treated

20   equally; right?  You're not to just either believe or not

21   believe someone because of what they do or what they are.

22   Does that make sense?  You all feel you can do that?

23        Ms. Bain, number 10?

24        **JUROR NO. 10:**  Yes.

25        **MR. ROSENBLUM:**  Good.  Now, also we know that some

1    people have difficulty doing that.  For some people -- I

2    know you all said you haven't had a negative experience with

3    a police officer, but if at some point during the course of

4    the trial you say, *Gosh, you know what?  I had a speeding*

5    *ticket 20 years ago and that guy gave it to me and I didn't*

6    *deserve it and I'm still holding grudges*, that wouldn't be

7    fair to treat a police officer differently, just like it

8    wouldn't be fair to give police officers -- and you're not

9    supposed to give police officers more credibility by virtue

10   of the fact that they're a police officer.  But we know

11   sometimes, just from human nature and by how we have thought

12   about law enforcement, either positively or negatively, we

13   don't do that.

14        So as you sit here now, either because of how you grew

15   up or your connections, do any of you feel like you would

16   give more credibility to a police officer that testifies

17   than anyone else?  Nobody?  Treat them all the same.  Fair

18   enough.

19        And the opposite side of the question:  Do any of you

20   believe you would give less credibility to a police officer

21   just by virtue of the fact they're a police officer?  That

22   wouldn't be fair either, would it?

23        So you will be instructed on how to view credibility.

24   And as I said, that's your sole province.  You guys decide

25   the facts.  You guys decide whether or not witnesses that

1  come before you, whether they're credible beyond a

2  reasonable doubt, and His Honor will tell you what the law

3  is and how to apply it.

4       There is an exception though to witnesses that are not

5  to be treated the same, and that exception are witnesses

6  that are cooperating witnesses.  And you're going to hear

7  that one of the government's witnesses, a gentleman by the

8  name of Randy Hays, you're going to hear a couple things.

9  You're going to hear that he has previously pled guilty to

10 his conduct arising out of this case and that he was charged

11 with a civil rights violation -- that's not what Chris is

12 charged with -- but he was charged with a civil rights

13 violation.  You can consider the fact that he has pled

14 guilty as to the weight that his testimony that you give it.

15 You can consider that, the law says that you can, and give

16 it such weight as you believe and only you believe.  Does

17 that make sense to everybody?  Will everybody agree to

18 follow that portion of the instruction?

19      And the other thing that you can consider is that when

20 he is testifying you are free to consider that he is

21 testifying and that he's cooperating and that he's looking

22 for leniency, he's looking to get a break, he's looking --

23 he's hopeful that his testimony will result in a lighter

24 sentence, and you can consider that and give it what weight

25 you think it deserves.

1          First of all, as a general concept, is that something

2     you all something you think you should be able to consider?

3     Let me see your hands.  Mrs. Martin?

4          **JUROR NO. 1:**  I'm processing.

5          **MR. ROSENBLUM:**  I could tell.  I'll give you time to

6     process.  Do you think that's something that you should be

7     able to consider, that he's cooperating and hopeful of

8     getting -- he's cooperating and that, as he's cooperating,

9     he's hopeful that he's going to get leniency from the

10    government?  When judging his credibility, is that something

11    you think you should be able to consider?

12         **MS. COSTANTIN:**  Judge, I would object.  The question's

13    whether the juror can follow the law as instructed, not what

14    she thinks what she should be able to consider or not be

15    able to consider.

16         **MR. ROSENBLUM:**  I am phrasing it on what the law is so

17    I'm asking if she can give that consideration.

18         **THE COURT:**  Ask if she -- well, I don't want to tell

19    you how to ask the question, but the real question is:  Can

20    she follow the law as the Court gives it to her?

21         **MR. ROSENBLUM:**  Okay.  Given that the law tells you

22    that you can consider it in weighing his testimony, first of

23    all, do you think you could follow the law in that regard?

24         **JUROR NO. 1:**  I could follow the law.

25         **MR. ROSENBLUM:**  Do you think that's fair?

1        **JUROR NO. 1:**  [Indiscernible.]

2        **MR. ROSENBLUM:**  Pardon me?

3        **JUROR NO. 1:**  I said if that's the law.

4        **MR. ROSENBLUM:**  Do you have -- I mean I guess my

5    question is:  Some of us know what the law is and feel that,

6    *I don't agree with it so I don't want to follow the law.*  Is

7    that what you're saying?

8        **JUROR NO. 1:**  No.  I was just trying to understand

9    what you were saying the law was.

10        **MR. ROSENBLUM:**  Okay.  Are we on the same page now?

11        **JUROR NO. 1:**  Yes.  I understand what you were asking.

12        **MR. ROSENBLUM:**  Okay.  And do you think that that's

13   something that you should be able to consider, given that's

14   the law, the fact that he's cooperating in hopes of a better

15   deal?

16        **JUROR NO. 1:**  Now I'm confused on the question.

17        **MR. ROSENBLUM:**  I'm sorry.  I'm not trying -- the law

18   basically says that there are exceptions of treating every

19   witness the same.  You can consider whether or not Mr. Hays

20   is testifying and cooperating with the government in hopes

21   of leniency.  You can consider that in weighing his

22   testimony.

23        **JUROR NO. 1:**  Yes.

24        **MR. ROSENBLUM:**  That's law.  Can you do that?

25        **JUROR NO. 1:**  Yes.

1          **MR. ROSENBLUM:**   Okay.  How about over here?  Does

2     everybody feel they can do that?  Everybody feels that's the

3     way it should be?  Let me see your hands.  And in the middle

4     of the room, are we all on the same page over there?  Okay.

5     Thank you.

6          Does anybody feel that the fact that Mr. Hays has pled

7     guilty, even though it's to a different offense than

8     Mr. Myers is charged with, but arising out of the same set

9     of facts, that that should have any influence on how you

10    treat Mr. Myers?  Does anybody feel that?  No?  Okay.  If

11    you don't feel that way, let me see your hands.  Over here

12    and over here?  All right.  Thank you.

13         I don't know whether this has been asked.

14    Ms. Costantin and Mr. Livergood, they work for the United

15    States Attorney's Office.  Sayler Fleming is our current

16    United States Attorney.  Do any of you feel that you may

17    know anybody at all associated with the United States

18    Attorney's Office of the Eastern District of Missouri?

19         And the other question is:  Mr. Fein and myself and

20    Mr. Bilyeu, we work for my law firm in Clayton:  Rosenblum,

21    Schwartz, and Rogers.  Have any of you had any experience

22    with the law firm or think you know anybody associated with

23    the law firm, have any experience with me or anyone

24    associated with me?

25         Mr. Myers, as you know, Chris Myers, is -- was a

```
 1    police officer since 2015 in the Fifth District.  I don't
 2    believe anybody raised their hand to see whether -- to
 3    believe that you know Mr. Myers or his family, anything of
 4    that nature.
 5        Okay.  We talked -- I know on your jury questionnaires
 6    some of you filled out that you had prior jury service.  I'm
 7    just -- I'm specifically interested in whether you had prior
 8    jury service involving a criminal case.  So, in the jury
 9    box, have any of you previously sat as a juror on a criminal
10    case?  And that's Mr. Brokaw, Number 9.  Yes, sir?
11        JUROR NO. 9:  I have.
12        MR. ROSENBLUM:  I think you can take your --
13        JUROR NO. 9:  I'm sorry.  I believe three out of the
14    four jury cases I've sat on.
15        MR. ROSENBLUM:  Three of four?
16        JUROR NO. 9:  Yes, sir.
17        MR. ROSENBLUM:  Have been criminal?
18        JUROR NO. 9:  Yes, sir.
19        MR. ROSENBLUM:  If you don't mind, can we start with
20    the first that you can remember.
21        JUROR NO. 9:  First one I remember was probably back
22    around '73, was a murder.
23        MR. ROSENBLUM:  Okay.  Now, without telling me the
24    verdict, can you tell me where that case was?
25        JUROR NO. 9:  Wentzville, Missouri.
```

1          **MR. ROSENBLUM:**  So would that be St. Charles County?

2          **JUROR NO. 9:**  Yes, sir.

3          **MR. ROSENBLUM:**  Okay.  Thank you.  And did the jury

4    reach a verdict?

5          **JUROR NO. 9:**  I think so, yes.

6          **MR. ROSENBLUM:**  And do you recall whether you were the

7    foreman?

8          **JUROR NO. 9:**  No, sir.

9          **MR. ROSENBLUM:**  Thank you.  And what was the next one

10   you can recall?

11         **JUROR NO. 9:**  Well, they've been a while, some of

12   them.  The one I can remember right now was two teenagers

13   were kind of getting into a fight, a fistfight, and one was

14   charged with assault with a vehicle.

15         **MR. ROSENBLUM:**  Assault?

16         **JUROR NO. 9:**  With a vehicle.

17         **MR. ROSENBLUM:**  Okay.  And can you tell me whether or

18   not that jury reached a verdict?

19         **JUROR NO. 9:**  It did.

20         **MR. ROSENBLUM:**  And where was that?  Again in

21   St. Charles?

22         **JUROR NO. 9:**  No, sir.  It was in Lincoln County.

23         **MR. ROSENBLUM:**  Okay.  And were you the foreman of

24   that jury?

25         **JUROR NO. 9:**  No, sir.

 1         **MR. ROSENBLUM:**  And how about the last one, if you can

 2    recall.

 3         **JUROR NO. 9:**  That one happened also in Lincoln

 4    County.  It was a criminal trespass and I believe failure to

 5    stop in a police chase.

 6         **MR. ROSENBLUM:**  Do you recall where that jury was?

 7         **JUROR NO. 9:**  In Lincoln County.

 8         **MR. ROSENBLUM:**  And did it reach a verdict?

 9         **JUROR NO. 9:**  Yes, sir.

10         **MR. ROSENBLUM:**  Were you the foreman?

11         **JUROR NO. 9:**  No, sir.

12         **MR. ROSENBLUM:**  Thank you, Mr. Brokaw.

13         Anybody else in the jury box have a response to that

14    question?  Anybody on the right side of the room ever sat

15    previously on a criminal jury?  Ms. King.  Yes, ma'am.

16    Number 21.

17         **JUROR NO. 21:**  It was less than ten years ago.  It was

18    the City of St. Louis.  Do you want to know about the case?

19         **MR. ROSENBLUM:**  I'm sorry?

20         **JUROR NO. 21:**  Did you want to know about the case?

21         **MR. ROSENBLUM:**  I just want to know if you recall what

22    type of case it was.

23         **JUROR NO. 21:**  It was a criminal case.

24         **MR. ROSENBLUM:**  Do you remember the charge?  I don't

25    want to know the verdict.

1        *JUROR NO. 21:*  It was a shooting.

2        *MR. ROSENBLUM:*  Okay.  And did the jury reach a

3    verdict?

4        *JUROR NO. 21:*  Yes.

5        *MR. ROSENBLUM:*  Were you the foreman?

6        *JUROR NO. 21:*  No.

7        *MR. ROSENBLUM:*  Thank you.  Anybody else on the right

8    side of the room?  And in the middle of the room?  Yes, sir,

9    Mr. Gierer.  Am I saying your name right Number 25?

10       *JUROR NO. 25:*  Yes, sir.  Franklin County about 20

11   years ago.  It was a theft.

12       *MR. ROSENBLUM:*  A theft case?

13       *JUROR NO. 25:*  Theft case.

14       *MR. ROSENBLUM:*  Did that jury reach a verdict?

15       *JUROR:*  Yes.

16       *MR. ROSENBLUM:*  Were you the foreman?

17       *JUROR NO. 25:*  No.

18       *MR. ROSENBLUM:*  Anybody else in the middle of the

19   room?  As long as I'm glancing over at you, Ms. Cook,

20   Juror No. 23, if I recall from your questionnaire, you

21   worked at -- for Victim Services in the Circuit Attorney's

22   office.

23       *JUROR NO. 23:*  Yes, sir.

24       *MR. ROSENBLUM:*  Did I get that right?

25       *JUROR NO. 23:*  Yes, sir.  I was an intern.

1          **MR. ROSENBLUM:**  You were an intern?

2          **JUROR NO. 23:**  Yes.

3          **MR. ROSENBLUM:**  So you weren't actually in the

4     position?

5          **JUROR NO. 23:**  No.  I was just an intern working with

6     the domestic violence advocates.

7          **MR. ROSENBLUM:**  And let me follow up with a couple

8     questions.  So can you tell me when you had that position?

9          **JUROR NO. 23:**  January through June of 2020.

10         **MR. ROSENBLUM:**  Okay.  So you worked for the Circuit

11    Attorney, Ms. Gardner?

12         **JUROR NO. 23:**  I -- yes, technically, yes.

13         **MR. ROSENBLUM:**  Okay.

14         **JUROR NO. 23:**  I never met her because she's high up,

15    but yes.

16         **MR. ROSENBLUM:**  Did you have any contact with the

17    warrant office?

18         **JUROR NO. 23:**  No, sir.

19         **MR. ROSENBLUM:**  Did you have any contact with police

20    officers in your role as an advocate?

21         **JUROR NO. 23:**  Yes, sir.

22         **MR. ROSENBLUM:**  Would they primarily be St. Louis City

23    police officers?

24         **JUROR NO. 23:**  Yes, sir.

25         **MR. ROSENBLUM:**  Of course, in the domestic violence

```
 1  arena I would assume you had a lot of contact with the
 2  victims of domestic violence?
 3        JUROR NO. 23:  Yes, sir.
 4      MR. ROSENBLUM:  Let's sort of unpack that a little if
 5  we can.  What are you doing now?  Are you a social worker?
 6        JUROR NO. 23:  Yeah.  I just graduated from Wash U.
 7      MR. ROSENBLUM:  Washington U.  Congratulations.  Where
 8  are you working now?
 9        JUROR NO. 23:  I currently am unemployed.
10      MR. ROSENBLUM:  Looking for a job.  Good luck.  Do you
11  plan on going into the same field, victim advocacy?
12        JUROR NO. 23:  Kind -- yes-ish.
13      MR. ROSENBLUM:  So your experience working in the --
14  even as an intern --
15      THE COURT:  Can I see counsel here, please.
16                          *   *   *   *
17      (Discussion held at sidebar between the Court and
18       counsel as follows:)
19      THE COURT:  You've used your 45 minutes, and I'm not
20  really worried about that, but what in the world does that
21  have to do with this case?
22      MR. ROSENBLUM:  I was just going to ask her if she had
23  any negative experiences with the police department.  I'll
24  wrap it up.
25        THE COURT:  Well, you know, you've used your time, so
```

```
 1    please --

 2          MR. ROSENBLUM:  Okay.

 3          THE COURT:  -- wind it up.

 4          (End of discussion at sidebar.)

 5                         *   *   *   *

 6       MR. ROSENBLUM:  So, briefly, Ms. Cook, anything about

 7    that role -- did you have any negative experiences that

 8    would affect you to sit in this case?

 9          JUROR NO. 23:  No, sir.

10       MR. ROSENBLUM:  Okay.  Thank you.

11          With respect to -- I mentioned cross-examination.  The

12    United States Constitution provides any one of us charged

13    with a crime can confront the witnesses against us by virtue

14    of cross-examination.  I anticipate that I'll be

15    cross-examining the witnesses the government presents,

16    including the complaining witness, Luther Hall.

17          As a general rule, does anybody have any problem or

18    issue with the concept of cross-examination?  Everybody

19    understand that's part of the process?  All right.

20          How many of you all engage in text messaging?  Just

21    about everybody; right?  And as you engage in text messaging

22    have there been circumstances where the communication

23    sometimes goes misunderstood and that you have to follow up,

24    What are you talking about; right?  Does everybody agree

25    with that concept?  And do you agree that sometimes text
```

1    messaging can lead people to the wrong conclusion, things of

2    that nature; right?  Does that make sense?  All right.

3         And in considering text messaging generally, getting

4    back to context, when you're involved in text messaging have

5    any of you on the other receiving end or have been on the

6    receiving end where ultimately you have to pick up the phone

7    and say, *What do you mean?  What are you talking about?*  Has

8    everybody experienced that situation?  So would you agree

9    that sometimes when you're involved in text messaging

10   sometimes the meaning gets lost in translation?  Does that

11   make sense?  Okay.

12        With respect to a concept of the difference between

13   being a hundred percent certain of a fact -- of a situation

14   versus accurate.  Does that make sense?

15        **MS. COSTANTIN:**  Judge, I'd object to this line.  I

16   don't even know what that has to do -- this is improper

17   voir dire.

18        **MR. ROSENBLUM:**  I'll move on.

19        **THE COURT:**  All right.

20        **MR. ROSENBLUM:**  I just have two more areas.

21        Just by quick show of hands, how many of you all have

22   had military service?  Mr. Degonia.  What branch?

23        **JUROR NO. 5:**  Marine Corps and Army Reserves.

24        **MR. ROSENBLUM:**  Mr. Kolb?

25        **JUROR NO. 16:**  United States Navy.

1       **MR. ROSENBLUM:**  Anybody else on the right side of the

2    room?  Mr. -- 27.

3       **JUROR NO. 27:**  Navy.

4       **MR. ROSENBLUM:**  Middle of the room?

5       I guess my last general question is, before I sit

6    down, and just take a moment to reflect on the comments of

7    the Court with respect to the instructions, my comments, the

8    government's comments, and as you sit here now, do any of

9    you presume anything at all about Chris Myers' guilt or

10   innocence?  After listening to everything we said, do you

11   presume anything at all about his guilt or innocence?  Thank

12   you, Mr. Brokaw.

13      **JUROR NO. 9:**  Innocent until proven guilty.

14      **MR. ROSENBLUM:**  Thank you.  Do you understand how that

15   can cause some concern?  Because we've talked about these

16   concepts and not every hand went up.  So the only thing I

17   can ask is that, if you're chosen as a juror in this case,

18   that you all give real meaning to those words the

19   "presumption of innocence."  In the jury box?  Over on the

20   right side?  And in the middle?

21      Thank you very much.

22      **(Discussion held at sidebar between the Court and**

23       **counsel as follows:)**

24      **THE COURT:**  The agreement was, as understood, that you

25   were going to ask take care of the voir dire, but what

USA vs. Boone and Myers, Case #18-975          6/7/21 - Pg. 124
Voir dire

```
 1   exactly is -- how --
 2        MR. ROSENBLUM:  I thought I was going to go first in
 3   voir dire and take care of the bulk of it.  I think
 4   Mr. Kilgore has just some specific issues related to his
 5   case.  I don't imagine it will take long.  He's not going to
 6   go over all the general stuff.
 7        THE COURT:  I was concerned, if he would just sit
 8   down, the jury's going to wonder, you know, what about
 9   Mr. Boone?  So that answered my question.
10        MR. KILGORE:  Did you want me to do that now, Judge,
11   or did you want to go to lunch?
12        THE COURT:  Yeah, let's do it now.
13        (End of discussion at sidebar.)
14                        *   *   *   *
15        THE COURT:  Whenever you're ready, Mr. Kilgore.
16        MR. KILGORE:  Thank you, Judge.  May I proceed,
17   Your Honor?
18        THE COURT:  Yes, sir.
19        MR. KILGORE:  Good afternoon, ladies and gentlemen.
20   My name is Patrick Kilgore.  I represent Dustin Boone and
21   it's on his behalf that I will be speaking to you this
22   afternoon and for the rest of the trial.  I won't go over a
23   lot of the issues I intended to cover.  I think
24   Mr. Rosenblum did a good job.  I just want to touch on a few
25   things that are important for Mr. Boone.
```

1           I wanted to started by asking -- Mr. Rosenblum ended

2    by taking to you about text messaging, understanding the

3    concept of how important it is to understand context when

4    you've engaged in text messages.  So I wanted to talk to you

5    about a couple of different things in that area.  I

6    anticipate during the course of this trial that you're going

7    to hear evidence of text messages that Mr. Boone has engaged

8    in that are disparaging of protesters; disparaging of

9    protesters and the things that were going on during the

10   weekend of September 15th, 2017.

11          So my question with regard to that is -- and you will

12   receive an instruction from the judge as to how to make use

13   of that information.  So my question is:  Is there anybody

14   who, upon hearing that he sent a text message disparaging

15   protesters and making various other comments about

16   protesters, is there anybody who's automatically going to

17   find him guilty just based upon that alone?  I don't see any

18   hands.  Does everybody understand what I'm asking?

19          The next area I want to get into, it's very difficult

20   but we've got to talk about it, and there's no context for

21   it so I'm not suggesting that.  It's not inappropriate; it's

22   much, much worse.  I anticipate that you will hear evidence

23   that Dustin Boone engaged in using racist language, vulgar

24   racist language in text messaging.  And, again, you will

25   receive an instruction on those text messages, but what I'm

1    asking you:  Is there anybody who's going to automatically

2    assume that he is guilty of violating Luther Hall's civil

3    rights because he sent racist text messages and used racist

4    language?  Is there anybody who's going to automatically

5    shortcut to a guilty verdict just based upon those text

6    messages?  Okay.

7         And I guess the next question I want to ask is:  In

8    your lives, in your life experiences, have there been

9    situations where either you, yourself, a close family member

10   or you were confronted with a situation where somebody used

11   racist language?  Has that happened to everybody?  Anybody?

12        Okay.  And, Juror No. 25, can I ask you a little bit

13   about that?  Are you comfortable talking about that right

14   here?

15        *JUROR NO. 25:*  Yeah, I'm not really comfortable

16   talking about it.

17        *MR. KILGORE:*  Okay.  Is it something you want to talk

18   about at --

19        *JUROR NO. 25:*  No.  It's just, I've --

20        *MR. KILGORE:*  It's just uncomfortable in general?

21        *JUROR NO. 25:*  -- that have used racist language.

22        *MR. KILGORE:*  Okay.  It's an uncomfortable situation

23   to be in?

24        *JUROR NO. 25:*  Yes.

25        *MR. KILGORE:*  Okay.  Is that somebody you were close

1    to, a friend or co-worker?  What's the circumstance?  Can

2    you tell me a little bit about that.

3         **JUROR NO. 25:**  Friend.

4         **MR. KILGORE:**  Did you handle that in a particular way?

5         **JUROR NO. 25:**  I didn't confront them on it.  I just

6    let it pass.

7         **MR. KILGORE:**  Okay.  I understand.  And would you

8    agree with me that an individual that uses that type of

9    language like your friend could potentially mature and learn

10   from that and grow out of that?

11        **JUROR NO. 25:**  Yes.

12        **MR. KILGORE:**  Okay.  And would you agree with me that

13   somebody who uses that type of language, often that can be a

14   product of your upbringing or the environment in which you

15   operate in?

16        **JUROR NO. 25:**  Yes.

17        **MR. KILGORE:**  Okay.  Is there anybody that disagrees

18   with that?

19        Okay.  So with regard to what Dustin Boone is charged

20   with, he's charged with a very specific offense, and he is

21   charged with wilfully depriving Luther Hall by aiding and

22   abetting others in the violation of Luther Hall's civil

23   rights.  Does everybody understand that Dustin Boone is not

24   charged with a hate crime?  This charge has nothing to do

25   with the race of Mr. Hall.  Everybody understand that?  I

1    see some heads nodding.  Okay.

2         So can you all promise me right now that you will

3    follow the Court's instructions, compartmentalize evidence

4    and focus on the objective evidence that's presented to you

5    in this courtroom?  Can you all make me that promise right

6    now?  Okay.  See a bunch of heads shaking.  Okay.

7         So I know that the Court has instructed you, and

8    certainly Mr. Rosenblum talked about it at great length,

9    about the constitutional protections regarding the

10   presumption of innocence.  Burden of proof is always on the

11   government beyond a reasonable doubt unless and until you

12   find Dustin Boone guilty on your verdict.  Does everybody

13   understand that all of those provisions apply to

14   Dustin Boone as well?  Does anybody take any issue with

15   that?  Okay.

16        And regarding -- I know Ms. Costantin talked a little

17   bit to you about aiding and abetting, and she gave you the

18   example of, I guess, her and Mr. Livergood are robbing

19   banks.  So in the first example I believe Mr. Livergood was

20   the getaway driver and the second example Mr. Livergood was

21   the lookout, so, therefore, her example would be that he

22   would be guilty of aiding and abetting if those were facts

23   proven beyond a reasonable doubt.  You all with me?  Okay.

24        So you understand by, through that example and the

25   reason that you can find Mr. Livergood guilty if she proved

*USA vs. Boone and Myers, Case #18-975*          6/7/21 - Pg. 129
*Voir dire*

1    those facts beyond a reasonable doubt is because he acted

2    wilfully and he had knowledge of what she was doing.

3    Everybody understand?  Okay.

4        So if you hear evidence that Dustin Boone was present

5    at the scene regarding this incident with Luther Hall, can

6    you all promise me that you will follow the Court's

7    instruction and not find Dustin Boone guilty merely because

8    he was presented at the scene that this occurred?  Does

9    everybody understand that?

10       Is there anything else -- since the few minutes that

11   I've been talking to you that I brought up these issues, is

12   there anything that anybody feels like we need to know

13   before I move on?  Okay.  I don't see any hands.

14       Thank you, Judge.  I think that's all I have.

15       **THE COURT:**  Thank you.  Could I please again speak

16   with counsel.

17                        *   *   *   *

18       **(Discussion held at sidebar between the Court and**

19        **counsel as follows:)**

20       **THE COURT:**  What is the expectation about strikes for

21   cause of this particular panel?  Do we move on to the next

22   panel and then make all the strikes at the same time?  Do

23   you have a view about it?

24       **MR. ROSENBLUM:**  I don't think there's very many

25   strikes for cause on this panel.

 1         **MS. COSTANTIN:**  I would like to make the strikes for

 2    cause now but I'm not sure there were any, to be honest.

 3         **MR. ROSENBLUM:**  I don't think there were.

 4         **MS. COSTANTIN:**  I have to look at my notes but I don't

 5    know that there were any strikes for cause beyond what we've

 6    already done, but if you want to --

 7         **MR. ROSENBLUM:**  I agree with that.  I think we move on

 8    to the next panel.

 9         **THE COURT:**  Move to the next panel and then we'll --

10         **MS. COSTANTIN:**  Mr. Livergood's checking.

11         **MR. ROSENBLUM:**  We don't have any strikes for cause,

12    do we?

13         **MR. FEIN:**  No.

14         **THE COURT:**  Okay.

15         **MS. COSTANTIN:**  I agree, I don't think that we have

16    any additional strikes for cause.

17         **THE COURT:**  What I'm going to do is tell them they're

18    free to go to lunch and they need to return to the ninth

19    room so we don't get them mixed up.  And then we'll -- but

20    we're going to take a brief lunch break also.

21         **MS. COSTANTIN:**  Okay.  But, Judge, do we need this

22    group here at all the rest of the day?

23         **THE COURT:**  I can't hear you.

24         **MS. COSTANTIN:**  I'm sorry.  Do we need this group here

25    at all the rest of the day?

1      **THE COURT:**  Well, if we -- we could wind this up today

2      if they're available.

3      **MR. ROSENBLUM:**  I think, rightfully or wrongfully,

4      based on the fact that -- Carrie and I -- last time the jury

5      selection went two full days.  Obviously it's not.  I think

6      we'll probably wrap up today, I'm guessing, hopefully,

7      depending on the next panel.  So I don't think either one of

8      us were anticipating either opening our evidence, so I mean

9      if the Court please, I would just send this group back with

10     an admonishment.

11     **THE COURT:**  What we can do is send them to the ninth

12     floor.  We're going to take a break for like 35 minutes.  Is

13     that enough time for your lunch?

14     **MR. ROSENBLUM:**  Fine with me.

15     **THE COURT:**  I will tell them to go have a lunch.  When

16     they come back, come back to the ninth floor, and then

17     hopefully we'll move through that other panel and then we'll

18     do all the strikes for cause, and then after we do that we

19     can --

20     **[Indiscernible.]**

21     **(End of discussion at sidebar.)**

22                        *   *   *   *

23     **THE COURT:**  The attorneys are working very hard to try

24     to move this so it will not be necessary for you to come

25     back for another day.  And so the plan is for you to go to

1    lunch, take whatever time you need, because it's going to be

2    a while, and we are going to take a 35-minute break so

3    everyone here can have some lunch, lawyers and personnel,

4    and then we're going to begin -- going to do the second

5    panel.  There's another 30 jurors.  So you kind of know,

6    having been through this, that's going to take a while.  But

7    we're hopeful to get this done today.  And so I just want to

8    make sure everyone understands, you're not excused at this

9    time.  You're free to go to lunch, but please come back and

10    go to the ninth floor after lunch and wait there for further

11    instructions.  Okay?  Any questions about that?

12         Okay.  Thank you.  Court's in recess.

13         *(Court recessed from 1:06 p.m. to 2:22 p.m.)*

14         *(Proceedings reconvened in open court with the second*

15         *venire panel present:)*

16    **THE COURT:**  I'm calling the case *United States of*

17    *America vs. Mr. Dustin Boone and Mr. Christopher Myers.*

18    Number is 4:18-cr-00975-ERW.

19         Is the United States ready?

20    **MS. COSTANTIN:**  Yes, Your Honor.

21    **THE COURT:**  Is Defendant Boone ready?

22    **MR. KILGORE:**  Yes, Your Honor.

23    **THE COURT:**  Is Defendant Myers ready?

24    **MR. ROSENBLUM:**  Yes, Your Honor.

25    **THE COURT:**  Thank you.  Ladies and gentlemen, thank

1   you so much for your prompt appearance.  And I realize that

2   you've been waiting.  It's our hope that we can finish this

3   jury selection process rather than having you come back

4   another day.  It isn't for sure we can do that but that's

5   what we're trying to accomplish.

6         It is common here in this building, as people walk

7   around, jurors will come in contact with attorneys.  When

8   attorneys -- when you're meeting or seeing an attorney out

9   there, if they look the other way or walk the other way,

10  they are not being rude.  They are trying to avoid the

11  appearance of impropriety.  For example, if you would see

12  someone talk -- if a lawyer from one side would see you

13  talking to a lawyer from another side they might draw an

14  unreasonable inference that you're talking about the case.

15  Just, please -- lawyers like to visit and they would like to

16  be more friendly but this is not the place for that.

17        And so I wanted to -- I shall now read to you what is

18  called Jury Instruction Number 0.01:

19        Members of the jury panel, if you have a cell phone,

20  smart phone, iPhone, or any other wireless communication

21  device with you, please take it out now and turn it off.  Do

22  not turn it to vibrate or silent; power it down.  You must

23  leave your cell phones completely powered off whenever you

24  are here in the courtroom.  You may use them during breaks,

25  of course, but whenever you come back into the courtroom

1    please be sure they are completely powered off.

2        If you are selected as a juror you must continue to

3    leave your cell phones off whenever you are in the

4    courtroom.  Also, you will not be allowed to have your

5    phones in the jury room during your deliberations.  You may

6    give them to the court clerk for safekeeping.

7        I understand you may want to tell your family, close

8    friends, and other people about your participation in this

9    trial so that you can explain where you are and when you're

10   required to be in court, and you should warn them not to ask

11   you about the case, tell them -- they must not tell you

12   anything they know or think they know about it or discuss

13   this case in your presence.

14       You must not post any information on social media or

15   communicate with anyone about the parties, witnesses,

16   participants, charges, evidence, or anything else related to

17   the case, or tell anyone anything about the jury's

18   deliberations in this case until after I accept your verdict

19   or until I give you specific permission to do so.

20       If you discuss this case with someone other than the

21   other jurors during deliberations, you may be influenced in

22   your verdict by their opinions.  That should not -- that

23   would not be fair to the parties and it would result in a

24   verdict that is based on evidence and -- is not based on

25   evidence and the law.

 1           While you're in the courthouse and until you are
 2     discharged in this case, do not provide any information to
 3     anyone via any means about this case.  Thus, for example, do
 4     not talk face-to-face or use any electronic device or media
 5     such as the telephone, a cell or smart phone, camera,
 6     recording device, computer, the Internet, any Internet
 7     service, any text or instant messaging service, any social
 8     media such as Facebook, Instagram, Snapchat, or Twitter, or
 9     any other way to communicate to anyone any information about
10     this case until I accept your verdict or until you have been
11     excused as a juror.

12           Do not do any research -- on the internet, in
13     libraries, in newspapers, or in any way -- or make any
14     investigation about this case on your own.  Do not view
15     or -- do not visit or view any place discussed in this case
16     and do not use internet programs or other devices to search
17     for or to view any place discussed in the testimony.  Also,
18     do not research any information about this case, the law, or
19     the parties involved, including the parties, the witnesses,
20     the lawyers, and the judge until you have been excused as
21     jurors.

22           The parties have a right to have this case decided
23     only on the evidence they know about and that has been
24     presented here in court.  If you do some research or
25     investigation or experiment that we don't know about, then

1  your verdict may be influenced by inaccurate, incomplete, or

2  misleading information that has not been tested by the trial

3  process, including the oath to tell the truth and by

4  cross-examination.

5       Each of the parties is entitled to a fair trial,

6  rendered by an impartial jury, and you must conduct yourself

7  so as to maintain the integrity of the trial process.  If

8  you decide a case based on information not presented in

9  court, you will have denied the parties a fair trial in

10  accordance with the rules of this country and you will have

11  done an injustice.  It is very important that you abide by

12  these rules.  Failure to follow the rules and instructions

13  could result in the case having to be retried.

14       Is there anyone on this panel who cannot or will not

15  abide by these rules concerning communications with others

16  and outside research in any way, shape, or form during this

17  trial?

18       The purpose of voir dire is to select a jury that will

19  be fair to both sides and to make sure no preconceived

20  notions generally or any ideas about this case might

21  influence your decision.

22       "Fair to both sides" means a jury that will decide the

23  case based only on the evidence presented here in court and

24  the law as I give it to you in my instructions.

25       Thank you for answering the questionnaires.  That

 1   has -- that will shorten things considerably.  I'll be

 2   asking some questions today, as will the attorneys.  Not

 3   intending to be rude or pry into your personal affairs but

 4   some questions may do that, and if there is a question that

 5   is so personal you're not confident answering it in front of

 6   your fellow jurors, you may always have the option of

 7   answering -- raising your hand and asking to come up here to

 8   the sidebar so the lawyers and I can hear your answers.

 9        Now, I'm going to ask each of you to please rise,

10   raise your right hand, and the clerk shall administer an

11   oath to you.

12        **(Venire panel sworn.)**

13        **THE COURT:**  I will be asking some questions and

14   respective counsel will be asking some questions of the

15   panel.  If you would prefer, as I mentioned, to keep your

16   answer private, please ask to give it up here at the bench

17   out of the hearing of the other jurors.

18        When you give an answer, even if you do so more than

19   one time, please state your number for the court reporter.

20   If you are selected as a juror, after opening statements you

21   will be supplied with a notebook for convenience in taking

22   notes.

23        Counsel for the United States will introduce herself

24   and introduce other persons at counsel table at this time.

25        **MS. COSTANTIN:**  Good afternoon.  My name's

1   Carrie Costantin.  I'm an Assistant United States Attorney.

2   Robert Livergood is also an Assistant United States Attorney

3   here.  And Darren Boehlje is an FBI agent.

4        **THE COURT:**  Is there anyone on the panel who knows or

5   believes they know or who believes they work with any of the

6   United States Attorneys or the individuals mentioned here

7   today?  All right.

8        Counsel for defendants will now introduce themselves

9   and introduce any other persons at counsel table, including

10  the defendants.  Mr. Rosenblum.

11       **MR. ROSENBLUM:**  Thank you, Your Honor.

12       Scott Rosenblum, representing Christopher Myers, along

13  with Adam Fein of my office and Brad Bilyeu of my office,

14  and Christopher Myers.

15       **THE COURT:**  Is there anyone on the panel who knows or

16  thinks they may know any of the individuals just introduced

17  by Mr. Rosenblum, or Mr. Rosenblum himself?  All right.  You

18  may be seated.

19       At this time, Mr. Kilgore.

20       **MR. KILGORE:**  Good afternoon, ladies and gentlemen.

21  My name is Patrick Kilgore and I represent Dustin Boone.

22       **THE COURT:**  Is there anyone on the panel who knows or

23  thinks they may know either Mr. Kilgore or Mr. Boone?  Yes.

24  What's your number, please?

25       **JUROR NO. 48:**  Forty-eight.  I think we have some

1   mutual friends with Mr. --

2       **THE COURT:**  Just a second.  We're going to have a

3   microphone over to you.  Go ahead, sir.

4       **JUROR NO. 48:**  Hi there.  Number 48.

5       **THE COURT:**  You can take your mask down if you want

6   while you're answering.

7       **JUROR NO. 48:**  I believe I have some mutual friends

8   with Mr. Boone.  I have an indirect connection to him.

9       **THE COURT:**  Would you like -- would you like to come

10  up and give your answer up here?  I'm not sure I understood.

11      **(Juror No. 48 approaches the sidebar.)**

12                          *   *   *   *

13      **(Discussion held at sidebar with Juror No. 48, the**

14       **Court, and counsel, as follows:)**

15      **THE COURT:**  That's kind of crowded.  I wasn't sure I

16  heard your full answer.

17      **JUROR NO. 48:**  Yes, sir.  Yeah, I have some mutual

18  friends with Mr. Boone, and he and I used to live on the

19  same block in South City about ten years.

20      **THE COURT:**  Okay.  How long has it been since you've

21  known him personally?

22      **JUROR NO. 48:**  I haven't lived on that block in ten

23  years but I do still have some mutual acquaintances, and I

24  think we've been at the same party in the last couple

25  months.

*USA vs. Boone and Myers, Case #18-975*          6/7/21 - Pg. 140
*Voir dire*

1      **THE COURT:**  Okay.  If you're selected as a juror in

2    this case, would that friendship influence you in any way in

3    making a decision one way or the other?

4      **JUROR NO. 48:**  It could.  Honestly, it could, sure,

5    yeah.

6      **THE COURT:**  Okay.

7      **JUROR:**  I mean I can't say honestly.

8      **THE COURT:**  Thank you for your honesty.

9      **MS. COSTANTIN:**  Basically it would be awkward to be on

10    this jury and run into him again.

11      **JUROR NO. 48:**  Yes, ma'am.

12      **MR. ROSENBLUM:**  I don't have any questions.

13      **MR. KILGORE:**  I don't think I have any further

14    questions at this time, Judge.

15      **THE COURT:**  Thank you very much for your honesty.

16      **JUROR NO. 48:**  Yeah, yeah.  Yes, sir.

17      **(Juror No. 48 leaves the sidebar, and the discussion**

18       **continues between the Court and counsel as follows:)**

19      **MS. COSTANTIN:**  I would make a motion to excuse him

20    for cause.

21      **THE COURT:**  Okay.

22      **MR. ROSENBLUM:**  Do you just want to skip over him in

23    questioning?

24      **THE COURT:**  Yeah, you can skip over him and ask him

25    any other questions.

1      **MS. COSTANTIN:**  So he's --

2      **THE COURT:**  He's excused for cause.

3      **(End of discussion at sidebar.)**

4                          *   *   *   *

5      **THE COURT:**  Is there anyone else on the panel that

6    knows or believes they know any of the attorneys or the

7    parties?

8           Is there anyone on the panel who does not understand

9    that a charge is not evidence, and simply because a person

10   has been charged is no indication of guilt?  Is there anyone

11   who does not understand that?

12          In a criminal trial the defendant is presumed innocent

13   until proved guilty beyond a reasonable doubt.  This

14   presumption remains with the defendant until found guilty by

15   a jury.  The obligation's always on the government, or

16   United States, to prove the defendant's guilt, and there's

17   no obligation for defendant to prove his innocence.  Is

18   there anyone on the panel who disagrees with these

19   principles?

20          Would any of you find the defendant not guilty even if

21   convinced of his guilt beyond a reasonable doubt solely

22   because you felt sympathy for the defendant?

23          Is there anyone who does not understand that the

24   burden of proof in a criminal case is different than a civil

25   case?  In a criminal case the defendant is required -- in a

1    criminal case the government, the United States, is required

2    to prove the defendant's guilt beyond a reasonable doubt.

3    Does anyone disagree with this principle?

4         Is there anyone who does not understand that -- who

5    does not understand the defendant has an absolute right not

6    to testify?  Will any of you be more likely to believe a

7    defendant is guilty if he does not testify?

8         Is there anyone who does not understand that if a

9    defendant does not testify, you may not discuss that in your

10   deliberations?

11        There are two defendants in this case and the

12   United States, or government's, burden of proof extends to

13   each one separately.  Each of the defendants is entitled to

14   be treated separately and you must consider the evidence as

15   to each one separately.  Is there anyone who could not do

16   that?

17        The jury has no role in sentencing if you should find

18   a defendant guilty.  That is a matter to be decided by the

19   Court and not the jury.

20        Has any juror here today participated in any protests

21   on any matter in the past eight years?

22        Does anyone have any family member or close friend who

23   has participated in a public protest in the last eight

24   years?

25        This case is alleged to have happened during the

1    highly publicized protest that began the afternoon of

2    September 17th, 2017, after the acquittal of former

3    St. Louis City Police Officer Jason Stockley.  Did anyone

4    here participate in those protests that began September 15,

5    2017, and continued for several days thereafter?

6         The defendants in this case were police officers.  One

7    of the defendants is charged with violating the civil rights

8    of another police officer, Luther Hall, who was working

9    undercover during the protest, posing as a protester.  The

10   other defendant is charged with destruction of evidence in

11   contemplation of an investigation.  Does anyone here know

12   Luther Hall?

13        Is there anyone here who has personal knowledge about

14   this incident?  That's -- ask that question.  Well, is there

15   anyone -- I'll be more specific.

16        Has anyone here read or heard any news reports or

17   other stories about this case or has -- have you been told

18   anything about it by someone other than -- strike that.  Let

19   me start over.

20        Has anyone read or heard any news reports or other

21   stories about this case or been told about it by someone or

22   otherwise think they know something about this case?  If so,

23   please raise your hand at this time.  Okay.  And we'll be

24   back with a microphone.

25             **THE COURT:**  What is your number, sir?

```
 1        JUROR NO. 47:  Forty-seven.

 2        MS. COSTANTIN:  Judge, can we approach?

 3        THE COURT:  Yeah, come on up.

 4                        *   *   *   *

 5        (Discussion held at sidebar between the Court and

 6         counsel as follows:)

 7        THE COURT:  Just a second.  The machine wasn't turned

 8   on.  As you were coming up I said I was just going to get

 9   the numbers.

10        MS. COSTANTIN:  Okay.

11        (End of discussion at sidebar.)

12                        *   *   *   *

13        THE COURT:  Maybe we can do this without the

14   microphone.  Who is the next person that raised their hand

15   back there?  What's your number, please?

16        JUROR NO. 54:  Fifty-four.

17        THE COURT:  Okay.  And the next person?

18        JUROR NO. 59:  Fifty nine.

19        THE COURT:  Fifty-nine.  Okay.  Is there anyone else?

20   Pardon me?

21        JUROR NO. 38:  Thirty-eight.

22        THE COURT:  I'm missing them.

23        DEPUTY CLERK:  Thirty-eight.

24        THE COURT:  Anyone else who thinks they know anything

25   about this case?  Okay.  I think that's everyone, okay?
```

1        I'm sure everyone has been watching the news this past

2   year and heard of the incident of George Floyd.  Is there

3   anyone here today that, as they are viewing the evidence in

4   this case, thinks they will not be able to keep that

5   incident or other related incidents such as the

6   Breonna Taylor or Michael Brown cases out of their minds?  I

7   see no hands.

8        Does anyone here -- does everyone here understand that

9   this is a separate matter from those involving George Floyd,

10   Breonna Taylor, and Michael Brown?

11        Are any -- strike that.

12        There also may be news reports about this case while

13   the trial is going on.  If you're selected to serve as a

14   juror, will you -- strike that.

15        You will be obligated not to view or read any news

16   coverage about this case if there should be any broadcast.

17   Is there anyone who believes they could not or would not be

18   able to follow this rule?  And that is not to view any news

19   stories about this case if you're selected as a juror.  I

20   want to make sure now that my other question is clear.

21        Is there anyone else who --

22        **DEPUTY CLERK:**  Judge, 38.

23        **THE COURT:**  Okay.  Would you give her the microphone,

24   please.

25        And the question was -- specifically was:  If you're

1    selected to serve as a juror, you would be obligated not to

2    view or read any news coverage about the case if there

3    should be any.  And I asked:  Is there anyone who believes

4    they would not be able to follow this rule?

5         *JUROR NO. 38:*  I'm always watching the news and I'm

6    always pulling up the news on my cell phone and reading.

7         *MR. ROSENBLUM:*  I'm sorry?

8         *THE COURT:*  You can take the mask down.  It will be a

9    little clearer.  She said she always watched the news.

10        *JUROR NO. 38:*  I'm always watching the news.  I'm

11   always watching the news on my phone, along with the news on

12   TV, along with Facebook, so I don't know if I would be able

13   to not read on this or --

14        *THE COURT:*  Yeah.  If you're selected as a juror you

15   will not be permitted to watch any news stories about this

16   case.  Could you do that?

17        *JUROR NO. 38:*  That's what I'm saying.  I'm always

18   watching the news, and I have seen the news on this case,

19   and I don't know.

20        *THE COURT:*  Okay.

21        *MR. ROSENBLUM:*  Your Honor, can we approach?

22        *THE COURT:*  Sure.

23        *MR. ROSENBLUM:*  Can we just add Juror 38 to our list?

24        *THE COURT:*  All right.  Very well.  We'll be talking

25   to you later about that.  Okay.  Thank you.

1      Is there anyone else who would be unwilling to follow

2   the rule if you're on this jury, you would not be permitted

3   to view, listen to, watch any news broadcast about this

4   case?  All right.

5      Again, I want to make sure I understand.  Is there

6   anyone on the panel that has not already answered that has

7   watched the news and thinks they know anything about this

8   case from the news, other than those that have answered?

9   Okay.

10      Does anyone have an opinion that would affect your

11   ability to serve as a fair and impartial juror in this case

12   about the movements known as Black Lives Matter, Defund the

13   Police, or Blue Lives Matter?  Is there anyone that has

14   opinions about -- that would affect your ability to serve as

15   a fair and impartial juror in this case about the movements

16   known as Black Lives Matter, Defund the Police, or Blue

17   Lives Matter?  Okay.  I see no hands.

18      Is there anyone who does not understand that it is the

19   duty of a juror selected to try this case to reach a verdict

20   based only on the evidence heard in court and under the

21   instructions of the Court?

22      I'm going to read into the record the names of

23   witnesses.  These witnesses may not all be called but they

24   may be called, and if they are, I need to know if you know

25   or believe you know any of these individuals.  As I read the

1    names, if you believe you know any of these individuals,

2    have any doubt about it, please raise your hand and we'll

3    discuss it further.

4         The first is Darren B-O-C-H-I-L-E [*sic*].

5    Darren Boehlje.  Kim Allen.  Lawrence Bryant.

6    Anthony Caruso.  Dr. Jacob Buchowski, B-U-C-H-O-W-S-K-I.

7    Paul Chester.  Marcus Burzota, B-R-U-Z-O-T-A.  Joseph Crews,

8    C-R-E-W-S.  Justin Davis.

9         **DEPUTY CLERK:**  Judge.

10        **THE COURT:**  Okay.  Yes.

11        **JUROR NO. 44:**  I do know a Justin Davis.  Could be the

12   same one.  I really don't know.

13        **THE COURT:**  Okay.  Yeah, there are probably a lot of

14   Justin Davises.  Could you approximate --

15        **MS. COSTANTIN:**  Judge, he's a police officer.

16   Justin Davis is a police officer.

17        **JUROR NO. 44:**  Okay.  Not him.

18        **THE COURT:**  Okay.  Thank you for raising your hand.

19   That was 44.

20        Matthew Drake.  Michael Deeba, D-E-E-B-A.  Zach Foltz,

21   F-O-L-T-Z.  Christopher Gwaltney, G-W-A-L-T-N-E-Y.

22   Lester Hall.  Randy Hays.  John Green.  Randy Jemerson,

23   J-E-M-E-R-S-O-N.  Patrick Haug, H-A-U-G.  John Hayden.

24   Lindsey Kellis, K-E-L-L-I-S.  Taylor Hosna, H-O-S-N-A.

25   Justin Johnson.  Andrew Kleffner, K-L-E-F-F-N-E-R.

1    Jerry Leyshock, L-E-Y-S-H-O-C-K.  Kyle Mack.

2    Matthew Manley.  Joseph Marcantano, M-A-R-C-A-N-T-A-N-O.

3    Richard Melts -- Metz.  Richard Metz, M-E-T-Z.

4    Michael Mayo, M-A-Y-O.  Lawrence O'Toole.  Brian Rossamano,

5    R-O-S-S-A-M-A-N-O.  Lou Naes, N-A-E-S.  Nathan Strickland.

6    George -- or Greg Schaffer.  Trevor Russell.  Dan Ogden.

7    Heather Taylor.  Marcos Silva.  Matthew Tesserau,

8    T-E-S-S-E-R-A-U.  Marty Walls III.

9         Okay.  Thank you.

10        My concluding questions are as follows:  I shall not

11   indicate my opinion about the facts of this case.  It is the

12   jurors' duty to decide the facts and my duty to rule on

13   questions of law.  Is there anyone on the panel who does not

14   understand that it is your duty, if you are selected as a

15   juror, to follow the law as the Court gives it to you even

16   though you may disagree with the law or find the law to be

17   repugnant or unpleasant to apply as the Court states it

18   exists?

19        Is there anyone who has not already answered who can

20   think of any manner or experience in your lives which would

21   prevent you from being a completely fair and impartial juror

22   in this case?

23        Do each of you -- does each person realize that

24   objections will likely be made, and if there are objections,

25   would you hold that against the party because their attorney

1   makes an objection?  It may happen a lot, and sometimes you

2   just wonder what's going on, but if that is something that

3   really bothers you, I need to know about it.  Okay.

4        Will any juror find it objectionable if an attorney

5   requests a bench conference up here?  And that happens quite

6   a bit, too.

7        Is there any member of the panel who has not already

8   answered who could not, for any reason, listen carefully to

9   all of the evidence and not make up her or his mind

10  prematurely about the case until all the evidence has been

11  seen and heard and the instructions of the Court have been

12  given?

13       Is there any member of the panel who, for any reason,

14  feels that he or she would not want a person listening to

15  her or his case with the same feelings about the case that

16  particular panel member has at this time?  That allows you

17  to be very introspective.

18       Is there any member on the panel who, for any reason,

19  whether I've asked the question or not, believes that he or

20  she could not, for any reason, listen to the evidence,

21  decide the facts in a fair, unbiased, and impartial manner,

22  listen to the instructions of the Court, and return a fair

23  verdict?

24       Okay.  At this time what we're going to do is excuse

25  you back to the gallery outside.  And I need to find my

1    instructions.  Those of you who answered, Jurors Number 47,

2    54, 59, 38, and 48, you'll be called back in individually

3    for some additional questioning.

4         Until the case is given to you to decide, you must not

5    discuss the case with anyone or remain in the presence of

6    anyone discussing the case.  If anyone tries to talk to you

7    about the case, advise me immediately.

8         Do not read, watch, or listen to radio, television, or

9    news reports of the trial, and keep an open mind until all

10   the evidence has been received and you have heard the views

11   of your fellow jurors.

12        Court will be in recess until after we speak privately

13   with Jurors Number 47, 48, 54, 59, and 38.  Each of those

14   persons will be called back as soon as you get back -- in

15   fact, would Juror No. 48 just remain in your seat.

16        **(Venire panel exits the courtroom; Juror No. 48**

17        **remains.)**

18        **THE COURT:**  I probably asked the wrong person to stay.

19   I think you've already -- has he answered?  Any other

20   questions?

21        **MS. COSTANTIN:**  No, Judge.  But I just would say, I

22   don't believe he knows he's been excused.

23        **THE COURT:**  I'm sorry?

24        **MS. COSTANTIN:**  I don't believe he knows he's been

25   excused.

1    **THE COURT:**  Yeah.  Okay.  You are excused.  You are

2    excused, and someone will take you back through this door,

3    okay?  Thank you.

4        Kelley, would you -- does someone out there know to

5    bring in Juror No. 47?

6    **DEPUTY CLERK:**  Number 47, Rhonda.  I believe 41

7    said -- Juror No. 41 would like to be called.  He said he

8    might have heard something about it over the news.

9    **THE COURT:**  Okay.  Thank you.

10   **DEPUTY CLERK:**  He told me out there.

11   **THE COURT:**  Okay.  Thank you.

12       Thank you very much, sir.

13       **(Juror Number 48 exits the courtroom; Juror Number 47**

14        **enters the courtroom.)**

15   **THE COURT:**  You may inquire.

16   **MS. COSTANTIN:**  Thanks, Judge.

17       You indicated that you had heard some publicity about

18   this case.

19   **JUROR NO. 47:**  I did.  I don't remember specifically

20   what I originally heard it, but I believe it was just on a

21   morning news cast.  Sometimes I have the news on while I get

22   ready for work, and heard about the case.  And,

23   interestingly enough, in waiting in the jury room as I was

24   just entertaining myself on the phone, I happened to go to

25   *STL Today*, saw it, kind of realized that this might be what

1   this is.  I got about halfway through it, stopped.  I can

2   tell you specifically what I know.

3        **MS. COSTANTIN:**  Yeah, exactly.  That would be great.

4        **JUROR NO. 47:**  That it was a hung jury.  I believe --

5   and I don't know, this is just my recollection, that there

6   are two people that pled guilty.  I'm not sure about that.

7   Again, that may be completely inaccurate.  And that would be

8   the extent of what I know.

9        **MS. COSTANTIN:**  Do you recall any of the facts or

10  anything from the -- what you read or heard?

11       **JUROR NO. 47:**  There was a trial in March.  One

12  person, it was a 6-to-6 vote and the other it was 10-to-2.

13  Again, it's at that point is when I realized that this very

14  well could be the case because the article specifically said

15  that jury selection for the case was today, and I realized

16  where I was sitting and -- yeah.

17       **MS. COSTANTIN:**  Okay.  Judge could we approach?

18                        *   *   *   *

19       *(Discussion held at sidebar between the Court and*

20        *counsel as follows:)*

21       **MS. COSTANTIN:**  Judge, I was just looking over strike

22  him for cause because he knows all about the previous trial.

23       **MR. ROSENBLUM:**  No objection.

24       *(End of discussion at sidebar.)*

25                        *   *   *   *

```
1          THE COURT:  Just so -- yeah, just a minute.  I always
2     get ahead of myself.  Sorry about that.
3          Mr. Boyle, just so you understand, you've done nothing
4     wrong.  You answered honestly and that's part of the
5     process.  So you're going to be excused just because of what
6     you already know about the case.  But it's not personal.
7     Just make sure you understand that we appreciate so much you
8     being here, and that's the process we go through to find out
9     if anybody knows about the case.  Okay?
10         All right.  So you are excused and the clerk will take
11    you out this door, and you can go home you don't have to
12    stick around.
13         Sharon, Number 54.
14         DEPUTY CLERK:  Judge, that's Rhonda back there.
15         THE COURT:  I'm sorry?
16         DEPUTY CLERK:  Rhonda.
17         THE COURT:  Yeah, Rhonda.
18         (Juror No. 48 exits the courtroom; Juror No. 54 enters
19          the courtroom.)
20         THE COURT:  Would you tap on that microphone to make
21    sure it's on.  It might be need to be pulled down a little
22    bit.
23         JUROR NO. 54:  I'm not sure.
24         THE COURT:  There you go.  Whenever you're ready,
25    Ms. Costantin.
```

1        **MS. COSTANTIN:**  Ma'am, you indicated that you knew --

2    had heard some publicity about the case.  Can you --

3        **JUROR NO. 54:**  I read the paper every day.  I've read

4    every article that's ever been written about it.

5        **MS. COSTANTIN:**  Okay.  So do you basically know

6    everything about the case?

7        **JUROR NO. 54:**  Yes.

8        **MS. COSTANTIN:**  Okay.  All right.  On a completely

9    unrelated matter, why is it a crime to have a metal detector

10   in a national park?

11       **JUROR NO. 54:**  It was a Civil War battlefield.

12       **MS. COSTANTIN:**  But why is it a crime to have a metal

13   detector?

14       **JUROR NO. 54:**  It's a crime to have it if you don't

15   have batteries removed and separated from the metal detector

16   itself.  They have to be one in the trunk, one in the glove

17   compartment.

18       **MS. COSTANTIN:**  Because somehow it's like -- it's

19   artifacts, is that the idea?

20       **JUROR NO. 54:**  Yes.

21       **MS. COSTANTIN:**  All right.  That's all.

22       Judge, if we can approach.  I mean I think we're

23   gonna -- I'll make a motion for cause to strike.

24       **MR. ROSENBLUM:**  No objection.

25       **THE COURT:**  Okay.  Not because of anything you said

1   here or did wrong.  You just listen to the news.  And so

2   you'll be excused.  But I just want to make sure we

3   appreciate your service and someone will be escorting you

4   out this door right over here in just a moment.

5        **JUROR NO. 54:**  Thank you.

6        **THE COURT:**  Rhonda, the next one would be Number 59.

7   It will be just a moment.

8        ***(Juror No. 54 exits the courtroom; Juror No. 59 enters***

9        ***the courtroom.)***

10       **MS. COSTANTIN:**  You indicated that you knew -- had

11  heard about this case, some sort of publicity; is that

12  correct?

13       **JUROR NO. 59:**  On TV, news.

14       **MS. COSTANTIN:**  All right.  So it would have been

15  through the TV news?

16       **JUROR NO. 59:**  Uh-huh.

17       **MS. COSTANTIN:**  Okay.  And tell me roughly what time

18  that you learned about it, or when's the most recent time

19  you heard about it?

20       **JUROR NO. 59:**  This morning, last night.  When I woke

21  up and said it was coming to court today, and I went, okay.

22       **MS. COSTANTIN:**  Tell me what information you learned

23  from the news about the case.

24       **JUROR NO. 59:**  Well, back in 2017 when it started I

25  was, of course, watching everything on TV.  I was born and

1    raised in Minnesota so it was important to me to pay

2    attention to all of it, not just part of it.

3         **MS. COSTANTIN:**  Okay.

4         **JUROR NO. 59:**  And the protests were part of it.

5         **MS. COSTANTIN:**  And you say you were born in

6    Minnesota.  Is that a reference to what happened with

7    George Floyd in Minnesota?

8         **JUROR NO. 59:**  It was part of it, yeah.

9         **MS. COSTANTIN:**  So this case occurred before the

10   George Floyd case.  What you're saying is that you followed

11   what was going on?

12        **JUROR NO. 59:**  All the protesting going on.

13        **MS. COSTANTIN:**  Okay.  And based on that -- well,

14   first of all, I guess what we're trying to do is find out

15   what information you know about this case specifically apart

16   from what you might actually learn in court.  So did you --

17        **JUROR NO. 59:**  Little to nothing.

18        **MS. COSTANTIN:**  So you were following the protests but

19   not the actual incident or charges?

20        **JUROR NO. 59:**  I saw the clips on TV just like

21   everybody else did.

22        **MS. COSTANTIN:**  Okay.  And do you know what the -- to

23   your knowledge, what is this case about?

24        **JUROR NO. 59:**  This particular case?

25        **MS. COSTANTIN:**  This particular case.  I'm sorry.

1    **JUROR NO. 59:**  Two gentlemen that are police officers

2    that are being accused of hurting another police officer.

3    **MS. COSTANTIN:**  Okay.  All right.  Is there anything

4    other than that that you know from the news or any other

5    source?

6    **[No audible answer.]**

7    **MS. COSTANTIN:**  When you heard about the case, or with

8    the information you learned about the case, did you come to

9    an opinion or come to a conclusion when you heard it?

10   **JUROR NO. 59:**  I didn't have all the facts.  No.

11   **MS. COSTANTIN:**  All right.  And whatever -- as you

12   listen to this case, if you hear things and you hear

13   evidence in the court, is that going to bring back other

14   coverage or do you think not?

15   **JUROR NO. 59:**  It doesn't matter because the facts are

16   here.  The TV puts it their own way.

17   **MS. COSTANTIN:**  Exactly.  So that's my question.  Are

18   you going to be able to judge this case solely on the facts

19   as they come into evidence?

20   **JUROR NO. 59:**  Yes.

21   **MS. COSTANTIN:**  You know about this case, but there's

22   nothing about the publicity or that you've learned about the

23   case that causes you to reach an opinion or prevent you from

24   being able to decide this case only on the evidence in

25   court?

1        ***JUROR NO. 59:***  Just on the evidence here.

2        ***MS. COSTANTIN:***  Okay.  All right.  And in regards to

3    what you read this morning, did you -- was it simply the TV

4    news or did you look at anything on the internet?

5        ***JUROR NO. 59:***  I deliberately didn't.  I saw it on a

6    clip on the news and went, okay.

7        ***MS. COSTANTIN:***  Okay.  All right.  And then you -- if

8    they were going to tell you anything more about it, you

9    avoided that information?

10        ***JUROR NO. 59:***  I didn't -- I shut it off.

11        ***MS. COSTANTIN:***  Thank you.  I think they've got

12    questions for you.

13        ***JUROR NO. 59:***  I'm sorry.

14        ***MR. ROSENBLUM:***  Good afternoon, Ms. Seib.  I just want

15    to unpack a little bit about what you've said.  So you were

16    watching the news last night and this morning?

17        ***JUROR NO. 59:***  Yeah.  I always watch the weather once

18    the weather comes on.  If the Cardinals won, I watch that;

19    if they lost, I shut it off.

20        ***MR. ROSENBLUM:***  You've been depressed lately about

21    those Cardinals, haven't you?

22        ***JUROR NO. 59:***  That's why I've been shutting it off.

23        ***MR. ROSENBLUM:***  So last night you were aware that you

24    were called as a prospective juror in this case; is that

25    correct?

```
1          JUROR NO. 59:  I knew I was coming to the courthouse

2    today, but --

3          MR. ROSENBLUM:  Did I understand it correctly, is that

4    why you saw it and shut it down, the same thing that you did

5    this morning?

6          JUROR NO. 59:  Yeah, because I didn't want to sway it.

7          MR. ROSENBLUM:  And you said that when it first

8    started, and everything that you learned that you spoke to

9    Ms. Costantin about, you said that you recall a video with

10   respect to this case?

11         JUROR NO. 59:  It was in a clip on the news that comes

12   through.  That's why I knew their faces.  Otherwise, I

13   wouldn't have known them from Adam.

14         MR. ROSENBLUM:  So -- okay.  I'm sorry.  How do you

15   know their faces?

16         JUROR NO. 59:  Just on TV, on the news when they had

17   the clip.

18         MR. ROSENBLUM:  Okay.

19         JUROR NO. 59:  That's all.

20         MR. ROSENBLUM:  All right.  So you don't have any

21   other information specifically with respect to this case?

22         JUROR NO. 59:  No.

23         MR. ROSENBLUM:  And then you said you're from

24   Minnesota and you follow all the protests?

25         JUROR NO. 59:  I have been, yes.
```

1      **MR. ROSENBLUM:**  Did you have -- at any point along the

2   way have you -- were you following out of curiosity or did

3   you follow them because you had an opinion one way or the

4   other about protests generally or specifically any

5   particular protest?

6      **JUROR NO. 59:**  I taught first grade for 22 years.

7   There are two sides to every story.

8      **MR. ROSENBLUM:**  Not three?

9      **JUROR NO. 59:**  Nope; two, yours and mine.  Don't have

10  to agree.  I don't have to be right all the time.

11     **MR. ROSENBLUM:**  Okay.  So along the way did you form

12  any opinions about any of the protests that you were

13  following, whether you agreed with them or not agreed with

14  them or anything of that nature, or just listened?

15     **JUROR NO. 59:**  Not really because I didn't have all

16  the information that everybody else did.  You know, when

17  they go to court, they have all the information.  I didn't.

18     **MR. ROSENBLUM:**  That's a perfect answer.  So at the

19  end of the day what you're telling this Court and the

20  lawyers are that you will only decide this case from what

21  you hear from the witness stand and the law that His Honor

22  will read to you at the conclusion of the case?

23     **JUROR NO. 59:**  I have to.

24     **MR. ROSENBLUM:**  Thank you.

25     **THE COURT:**  Back with the other panel?

1          **MS. COSTANTIN:**  Yeah, Judge.

2          **THE COURT:**  Okay.  Thank you very much.  You'll go

3     back to the other group.

4          **(Juror No. 59 exits the courtroom.)**

5          **THE COURT:**  This is the one that someone said they

6     told --

7          **DEPUTY CLERK:**  Yes.

8          **THE COURT:**  -- them they knew something about the case

9     after they were -- after they went outside?

10         **DEPUTY CLERK:**  Yes.

11         **(Juror No. 41 enters the courtroom.)**

12         **THE COURT:**  Thank you for recollecting something.

13    That's what we understand afterwards, and so you did the

14    right thing.  Appreciate it.  And there will be some

15    questions.  Just a second.  And you can take your mask down

16    if you want to answer the questions.

17         **MS. COSTANTIN:**  You, I guess, indicated that you might

18    have heard something about the case?

19         **JUROR NO. 41:**  I feel like I recall the headline.  I

20    don't know that I know the details of it, but after we kind

21    of went over everything and then went through the -- more

22    details, the names, I do recall a headline about it, but

23    that's about the extent.

24         **MS. COSTANTIN:**  What do you recall basically is all

25    we --

1      **JUROR NO. 41:**  I recall hearing a on-duty officer

2   involved with a undercover officer, and that was an

3   altercation at an event, at a protest, I believe, that was

4   in the St. Louis area.  That's about the extent of what I --

5   also, I think pretty much what Your Honor said earlier, but

6   just wanted to make sure that was clear.

7      **MS. COSTANTIN:**  Is there a -- would you be able to set

8   aside the little bit you know about it and judge the case

9   based on the evidence as you hear it?

10      **JUROR NO. 41:**  Absolutely.

11      **MS. COSTANTIN:**  Okay.  Judge, I don't have anything

12   more.

13      **MR. ROSENBLUM:**  Good afternoon.  So you just read

14   briefly a headline, is that it?

15      **JUROR NO. 41:**  Yes.

16      **MR. ROSENBLUM:**  You didn't read the body of any

17   article?

18      **JUROR NO. 41:**  I don't recall reading any more into

19   it.  I just kind of slip through the news every once in a

20   while and I --

21      **MR. ROSENBLUM:**  That would have been from the

22   beginning of the case up 'til the present?

23      **JUROR NO. 41:**  Would you repeat that.

24      **MR. ROSENBLUM:**  That would have been all the news, all

25   the information you would have received throughout the

1    entire time?

2        **JUROR NO. 41:**  I think I saw it when it first happened

3    go by the newslines, and that was it.

4        **MR. ROSENBLUM:**  When it first happened do you recall

5    forming any opinion one way or the other?

6        **JUROR NO. 41:**  No.

7        **MR. ROSENBLUM:**  Do you ever recall having any

8    discussions with anybody about the case?

9        **JUROR NO. 41:**  Other than saying, *Hey, this just*

10   *happened in St. Louis*, I didn't discuss anything further

11   than that.

12       **MR. ROSENBLUM:**  Do you recall when you said, *Hey, this*

13   *just happened in St. Louis*, whether or not that followed an

14   opinion one way or the other as to --

15       **JUROR NO. 41:**  No.  I think everybody was just

16   concerned, of course, about the environment and everything

17   going on, just staying aware what was going on in the City.

18       **MR. ROSENBLUM:**  And as of now do you have any opinion

19   about the case?

20       **JUROR NO. 41:**  No, I do not.

21       **MR. ROSENBLUM:**  You have an open mind?

22       **JUROR NO. 41:**  I do.

23       **MR. ROSENBLUM:**  You'll decide the case just on the

24   evidence and the law the judge will give to you at the close

25   of the case?

```
1           JUROR NO. 41:  Absolutely.

2           MR. ROSENBLUM:  Thank you.

3           THE COURT:  Okay.  You may join the others.

4           (Juror No. 41 exits the courtroom.)

5           THE COURT:  I'm inclined to bring in Number 38 and

6    allow her to remain at her seat as we proceed with the

7    voir dire, except -- if there's anyone in the group that

8    needs a brief recess, I don't want to deprive you of that.

9           MS. COSTANTIN:  I thought 38 heard about publicity.

10          THE COURT:  Pardon me?

11          MS. COSTANTIN:  I thought 38 said that she had heard

12   publicity on the case.

13          THE COURT:  Yeah, I'm going to bring her in.

14          MS. COSTANTIN:  Oh, okay.

15          THE COURT:  What I'm saying is --

16          (Simultaneous crosstalk.)

17          MS. COSTANTIN:  Okay.  I misunderstood.

18          THE COURT:  I'm going to leave her seated and then go

19   right into voir dire, unless you want a break.

20          MR. ROSENBLUM:  I wouldn't mind a three-minute break.

21          DEPUTY CLERK:  Number 36 knows you.

22          THE COURT:  She knows me?

23          DEPUTY CLERK:  Thirty-six.

24          THE COURT:  Thirty-six, Karin King.  Well, I'll be

25   eager to get reunited.  I don't remember her, but that's
```

1   good.  Have her come in first, 36.

2           **(Juror No. 36 enters the courtroom.)**

3           **THE COURT:**  You can take your mask down.  Could you --

4   someone had reported that we were acquainted and I just

5   wanted to have you explain the nature of that acquaintance.

6           **JUROR NO. 36:**  Well, I think your nephew was married

7   to my niece.  Joey.

8           **THE COURT:**  Oh, yes.  Okay.  Joey O'Connell.

9           **JUROR NO. 36:**  Joey O'Connell.

10          **THE COURT:**  Is my -- Ann O'Connell is his mother.

11  Ann O'Connell was my wife's sister.

12          **JUROR NO. 36:**  Yes.  And I'm Shelly's niece -- I mean

13  aunt.  Shantel's [phonetic].

14          **THE COURT:**  Shantel, right.  Okay.  Go ahead and

15  inquire if you care to.

16          **MS. COSTANTIN:**  Is there anything about that

17  relationship that would prevent you from being able to

18  listen to the evidence here?

19          **JUROR NO. 36:**  No, no.  I just wanted to let everybody

20  know.

21          **THE COURT:**  You did the right thing.  I appreciate it.

22  Thank you.

23          **MR. ROSENBLUM:**  No questions.

24          **THE COURT:**  Okay.  Thank you.  You may rejoin.

25          **(Juror No. 36 exits the courtroom.)**

1      **THE COURT:**  And would you ask Number 38 to come in,

2   please.  We'll have Number 38 come in and just have her

3   remain seated, and then we'll take a brief recess, restroom

4   break, or whatever you need to do.

5      It seems a little unlikely to me that we're going to

6   finish this by 5:00.  Any views about that?

7      **MS. COSTANTIN:**  I agree with you, Judge.

8      **THE COURT:**  Okay.  We'll have a visit with 38 and then

9   we need to talk again, I think.

10      **(Juror No. 38 enters the courtroom.)**

11      **THE COURT:**  All right.  You may take the mask down as

12   you speak.  Thank you.

13      Go ahead and inquire, Ms. Costantin.

14      **MS. COSTANTIN:**  Ma'am, you indicated that you knew

15   something about this case from watching the news.

16      **JUROR NO. 38:**  I believe so.  And if I could reflect

17   on this, what this case is.

18      **MR. ROSENBLUM:**  I have a hard time hearing.

19      **MS. COSTANTIN:**  What do you remember --

20      **JUROR NO. 38:**  Can I reflect on what I think it's

21   about?

22      **MS. COSTANTIN:**  Yep, exactly.  That's exactly what I

23   want to know.

24      **JUROR NO. 38:**  Okay.  I'm thinking it's about the

25   officer.  Okay.  They were protesting and an undercover

*USA vs. Boone and Myers, Case #18-975*     6/7/21 - Pg. 168
*Voir dire*

1   officer was beaten by the police.  Is this case about that?

2       **MS. COSTANTIN:**  Okay.  The question's:  Do you

3   remember any more details other than what you just said?

4       **JUROR NO. 38:**  Actually, remembering on -- he was

5   beaten by more than one person, more than one officer, and

6   they stomped him and they -- they stomped him and kicked

7   him, even though he was hollering who he was, and my

8   understanding, remembering that a couple of them knew who he

9   was.

10      **MR. ROSENBLUM:**  I missed that last part.

11      **JUROR NO. 38:**  A couple of them knew who he was, he

12  was an undercover cop.  I mean he was undercover.  He's out

13  there protesting.

14      **MS. COSTANTIN:**  So you've heard some information from

15  the news about the case, and what the question we have for

16  you is:  Would you be able to set that aside and decide this

17  case only on the evidence that you hear in court?  You

18  remember that, but you have to put that aside.  Can you put

19  that aside and listen to the evidence, the witnesses and the

20  physical evidence, and decide the case only on the evidence

21  you hear in court?

22      **JUROR NO. 38:**  My personal experience?  I know the

23  judge had said about -- would anybody reflect back to

24  Breonna Taylor now.  And I don't know because I don't

25  believe the system is right.  My personal experience, I lost

```
 1    my baby brother, he was murdered.  My baby brother was about
 2    32; I'm 63.  And I don't think that was fair, the conviction
 3    that the man had got.  He was able to get parole in seven
 4    years and he was able to go up on parole in about seven
 5    years on a premeditated murder, and he killed my brother out
 6    of jealousy on what he had.  My brother Ronzea [phonetic]
 7    had a house, my brother Ronzea had a car, all this stuff.
 8    My brother worked two jobs for it.
 9          And also, my nephew, great-nephew, who had to plead
10    guilty was told -- he sold drugs to his wife and someone
11    else shot her, but my nephew, he pleaded guilty that he did
12    the sale.  So they was looking for who murdered the woman.
13    So they couldn't find who murdered the woman so they took
14    him and had him where his story was telling his momma and
15    they took this case from, I guess it was state or whatever,
16    to federal and telling him that you might as well plead
17    guilty because federal going to win always in court.  It's
18    just a lot that bothers me about the system.
19          MS. COSTANTIN:  I understand.
20          JUROR NO. 38:  And I just don't feel the system -- I
21    watch a lot of things on the news.  I even watch how they
22    gun down these young kids, police officer, because one had a
23    weapon or the weapon was sitting right there.  Police gun
24    'em down.  And then they had these two white young kids with
25    AKs shooting at them, and they say don't kill the kids.  And
```

```
 1    they shot the one girl but they didn't kill her, but they

 2    shoot to kill the blacks.

 3         MS. COSTANTIN:  I understand.

 4         JUROR NO. 38:  Just a lot with the system and it

 5    bothers me.  I wrote a whole summons.  I was being steady

 6    called to jury duty in the other court.

 7         MS. COSTANTIN:  In the City or the County?

 8         JUROR NO. 38:  And I wrote a statement, you know, and

 9    they stopped calling me.  But then they started here at the

10    federal.  Me, my personal self, I don't want to judge

11    nobody's life.

12         THE COURT:  Do you have any other questions?

13         JUROR NO. 38:  I don't want to judge nobody's life.  I

14    only want to live -- obey the laws and live the rest of my

15    life out but not pass judgment on nobody else.

16         THE COURT:  Do you have any other questions,

17    Ms. Costantin?

18         MS. COSTANTIN:  No, I do not, Your Honor.

19         THE COURT:  All right.  Mr. -- whenever you're ready.

20         MR. ROSENBLUM:  I think we've agreed we can thank and

21    excuse.

22         THE COURT:  Is that correct?  Okay.

23         First of all, I want to make sure you understand how

24    much everyone appreciates you being here and participating,

25    and there's nothing that you said or have done that
```

1    indicates that you're not a good person or anything like

2    that.  It's -- the process goes through gathering

3    information on each person to see if they can put aside all

4    the things that have happened in the past.  And so you'll be

5    excused with our gratitude for your answers.  Thank you.

6         **THE COURT:**  That's the final one; correct?

7         **DEPUTY CLERK:**  Yeah.

8         **THE COURT:**  Okay.  Could I make an announcement?

9         My intention is to have Kelley go to the first panel

10   and tell them that, as hard as we tried, we are -- we're

11   going past 5:00, and we're not going to be able to finish

12   with them today.  They'll have to come back in the morning

13   at 9:00.

14        **MS. COSTANTIN:**  Judge, I agree.

15        **MR. ROSENBLUM:**  Yes, Your Honor.

16        **THE COURT:**  Okay.  And then this panel, I propose that

17   we keep them until we're finished, at least through

18   questioning; not necessarily through the strikes but through

19   questioning.

20        **MS. COSTANTIN:**  Right.  I don't think we would do

21   strikes tonight.

22        **THE COURT:**  We'll do those in the morning.  Okay.

23   Thank you.

24        Okay, Kelley.  Tell the people on the ninth floor I'm

25   sorry, we really tried, but we can't get this done before

1    5:00.

2         **DEPUTY CLERK:**  Okay.  I'll just have them be back

3    tomorrow at nine.

4         **(Juror No. 38 exits the courtroom.)**

5         **THE COURT:**  Okay.  We're going to go ahead and take a

6    recess at this time, five minutes.

7         **(Court recessed from 3:36 p.m. to 3:41 p.m.)**

8         **(Proceedings reconvened in open court outside the**

9          **presence of the jury:)**

10        **THE COURT:**  What my practice is, instead of marking

11   them off the bottom of the list, we put all the numbers in a

12   basket and pull them out, and so everyone has an equal

13   chance to serve.  Is that what you meant?

14        **MS. COSTANTIN:**  Yes, Judge, but I mean we can do it

15   the other way.  We can just do it the regular way.  That's

16   fine.

17        **THE COURT:**  Okay.  I'll do it.

18        **MR. ROSENBLUM:**  I think we could just do either the

19   first 28, whatever.  Whatever you want to do.

20        **THE COURT:**  All right.

21        **MR. ROSENBLUM:**  We're going to wind up with 40, so

22   anyone past 40's going to be lopped off; right?

23        **(Venire panel enters the courtroom.)**

24        **THE COURT:**  Whenever you're ready, Ms. Costantin.

25        **MS. COSTANTIN:**  Thank you, Judge.

1    The first question I want to ask is basically the last

2   question the judge asked, which is -- now you've had some

3   time to reflect on it.  This case involves a situation which

4   an undercover detective whose name is Luther Hall was

5   working during the protests that occurred after the Stockley

6   verdict in September of 2017.  Officer Boone is charged with

7   violating his civil rights through participating in an

8   assault.  Officer Myers is charged with smashing his phone.

9    With that bare minimal facts, does anyone recall

10   reading any news reports about this, either at the time or

11   any time between 2017 and now?  If so, please raise your

12   hand.  Mr. Schultz, Number 57, could you come up.  We're

13   going to go to the bench.

14                        *   *   *   *

15   **(Discussion held at sidebar with Juror No. 57, the**

16    **Court, and counsel as follows:)**

17   **THE COURT:**  They're going to have some questions for

18   you.  First, this is Ms. Costantin.  She'll be asking you

19   some questions, and then after that, Mr. Rosenblum will have

20   some questions.  Go ahead.

21    **MS. COSTANTIN:**  What do you remember about the news

22   reports?

23    **JUROR NO. 57:**  I just remember seeing it on the news

24   on TV.  I was sitting out there during this wait I kept

25   thinking about that.  I was like, man, I remember seeing

1   this on TV.  I thought this is going to be biased on my part

2   to have an opinion related from that news article.

3       **MS. COSTANTIN:**  And that's really the question.

4   That's exactly the question.  What do you remember about the

5   news article?

6       **JUROR NO. 57:**  It was just -- I remember them talking

7   about what happened at that scene, what was going on, and I

8   thought, man, why would they be treating this guy that

9   baddive they knew he was an undercover cop?

10       **MS. COSTANTIN:**  Okay.  The fact -- so at that time

11   when you read it you kind of reached an opinion about that

12   was bad?

13       **JUROR NO. 57:**  Oddly enough, yeah.

14       **MS. COSTANTIN:**  Not oddly enough.  You're allowed to

15   reach an opinion.  The question is:  Can you set that aside

16   and judge the case only on the facts or is that always going

17   to be in your head?

18       **JUROR NO. 57:**  It's always going to be in my head.

19       **THE COURT:**  I didn't hear your answer.

20       **JUROR NO. 57:**  That's probably always going to be in

21   my head.

22       **MR. ROSENBLUM:**  I have no questions.

23       **THE COURT:**  What we're going to do is, Kelley will

24   just walk out with you, and you'll be excused.  This is not

25   anything bad you did; it's just going through the process of

1  trying to get jurors who know nothing about the case.  So

2  don't feel like anybody's found anything wrong with you.

3  That's not the case, okay?

4        *JUROR NO. 57:*  Okay.  Thank you.

5        *(End of discussion at sidebar.)*

6                        *   *   *   *

7        *(Juror No. 57 exits the courtroom.)*

8        **MS. COSTANTIN:**  I'm not going to go through the whole

9  fact situation again, but is there anybody else with those

10  little bits of facts that I've just said, is there anybody

11  else who now remembers, oh, yeah, I read news reports on it?

12  If so, please raise your hand, unless you've already -- I'm

13  sorry.  Unless we've already talked to you.  We don't need

14  to go back to that.  I'm sorry.

15        As citizens we have three contacts with the criminal

16  justice system:  As you sit here as jurors, victim of a

17  crime and/or we have someone close to us is charged with a

18  crime.  I'm going to go through those a little bit right

19  now.

20        It appeared from the jury questionnaires that only one

21  person had prior jury service, unless I missed something.

22  And that -- I believe Number 52, Ms. Golden.  Yes.  Is there

23  anything about that prior jury service that was negative and

24  would prevent you from being fair and impartial in this

25  case?

1        **JUROR NO. 52:**  No.  It was in Washington County

2   because that's where I lived at the time.  Just taught me

3   some things, that's all.

4        **MS. COSTANTIN:**  Okay.  But you'd be able to listen to

5   this case and listen to the evidence in this case and reach

6   a decision based on that?

7        **JUROR NO. 52:**  Sure.

8        **MS. COSTANTIN:**  Okay.  The judge talked about some

9   important concepts.  I must show the defendants are guilty

10  beyond a reasonable doubt.  That's higher than a

11  preponderance of the evidence but it's not beyond all doubt,

12  and the judge will define "reasonable doubt."

13       Is everyone here going to be able to follow that

14  instruction from the judge?  If not, please raise your hand.

15       As I said, sometimes we or someone close to us is a

16  victim of a crime, and in those jury questionnaires several

17  of you have filled out some information.  I just want to ask

18  you about that.

19       Mr. -- 38.  No, I'm sorry.  Forty-nine.  Apologize.

20  Mr. Cobb, you indicated that both your --

21       **THE COURT:**  What number?

22       **MS. COSTANTIN:**  Forty-nine.  You indicated that both

23  your brother and his wife were murdered --

24       **JUROR NO. 49:**  Correct.

25       **MS. COSTANTIN:**  -- is that correct?  How long ago was

1   that?

2        **JUROR NO. 49:**  Just over two years.

3        **MS. COSTANTIN:**  Okay.  Is that -- has anyone been

4   caught or prosecuted for that?

5        **JUROR NO. 49:**  The case is still pending.  The trial

6   is August, I believe, in North Dakota.

7        **MS. COSTANTIN:**  Oh, in North Dakota.  All right.  Is

8   there anything about that -- I'm assuming you're in touch

9   and knowing what's going on and all that sort of thing?

10        **JUROR NO. 49:**  Yes.

11        **MS. COSTANTIN:**  Is there anything about that, the fact

12   that your close relatives were victims of a brutal crime,

13   that would prevent you from being fair in this case?

14        **JUROR NO. 49:**  No, ma'am.

15        **MS. COSTANTIN:**  Okay.  Thank you, sir.

16        The other way that we have contact with the criminal

17   justice system is when we or someone close to us has been

18   arrested.  And, once again, going to the jury

19   questionnaires, there's several people who someone close to

20   them has been arrested.  Ms. Ivie, I believe you had a

21   cousin who was prosecuted for robbery?

22        **JUROR NO. 35:**  Yes.

23        **THE COURT:**  What number?

24        **MS. COSTANTIN:**  I'm sorry.  35.  Sorry, Judge.  And do

25   you feel that the outcome in that case was fair or do you

```
 1  feel that it was -- or do you have an opinion?

 2       JUROR NO. 35:  I don't think I know enough facts about

 3  it to have much of an opinion, to be honest.

 4       MS. COSTANTIN:  I'm supposed to remind everybody that

 5  when they speak they can take their masks off because it's

 6  hard for the court reporter.

 7       JUROR NO. 35:  I have a quiet voice, too.

 8       MS. COSTANTIN:  You don't think you have enough facts

 9  in order to have an opinion one way or the other?

10       JUROR NO. 35:  Yeah.

11       MS. COSTANTIN:  Just the fact that you have a relative

12  that was prosecuted, anything that would prevent you from

13  being fair and impartial in this case?

14       JUROR NO. 35:  No.

15       MS. COSTANTIN:  Okay.  Number 34, you indicated on the

16  questionnaire that you had -- Mr. Boyd, that you had a

17  cousin who was charged with robbery.

18       JUROR NO. 34:  Right.

19       MS. COSTANTIN:  First of all, do you believe that the

20  result there, the outcome, was fair in that case?

21       JUROR NO. 34:  Yes.

22       MS. COSTANTIN:  Is there anything about that case that

23  would prevent you from being fair and impartial in this

24  case?

25       JUROR NO. 34:  No.
```

```
 1        MS. COSTANTIN:  Okay.  Number 36, Ms. King.  Actually,
 2   I think I'm wrong.  Did you have a relative who was -- did
 3   you have a relative who was arrested?  I'm trying to read my
 4   notes.  I have bad handwriting.  I'm sorry.  You had an
 5   ex-husband who was in prison; is that correct?
 6        JUROR NO. 36:  That's correct.
 7        MS. COSTANTIN:  Do you think that outcome was fair in
 8   that case or not?
 9        JUROR NO. 36:  That's been 20 years ago, so -- no, I
10   think he got what he deserved.
11        MS. COSTANTIN:  Okay.  Is there anything about that
12   case that would prevent you from being fair and impartial in
13   this case?
14        JUROR NO. 36:  No.
15        MS. COSTANTIN:  Okay.  Can you pass the mic -- oh,
16   wait.  Hold on.  That person is --
17        Number 46, Mr. Anderson, you indicated there's a DWI;
18   is that correct?
19        JUROR NO. 46:  Correct.
20        MS. COSTANTIN:  Do you believe that the outcome was
21   fair in that case or not?
22        JUROR NO. 46:  Yeah.
23        MS. COSTANTIN:  I'm sorry.  Your answer is "yes"?
24        JUROR NO. 46:  Yes.
25        MS. COSTANTIN:  Okay.  Is there anything about that
```

```
 1   case that would prevent you from being a fair and impartial
 2   juror in this case?
 3        JUROR NO. 46:  No.
 4        MS. COSTANTIN:  Number 50, Mr. -- I can't say your
 5   last name right.  "Vow"?
 6        JUROR NO. 50:  "Vee-oh."
 7        MS. COSTANTIN:  "Vee-oh."  You indicated that in your
 8   younger days that you had some arrests.
 9        JUROR NO. 50:  [Inaudible.]
10        COURT REPORTER:  I can't hear you, sir.
11        JUROR NO. 50:  It was all as a kid.
12        MS. COSTANTIN:  You gotta hold it up.  You gotta hold
13   the mic up.
14        JUROR NO. 50:  As a juvenile.  Yeah, I learned all my
15   lessons the hard way.
16        MS. COSTANTIN:  Okay.  Is there anything -- well,
17   first of all, do you feel that the outcome was fair and what
18   happened with you or do you feel you were being picked on in
19   those situations?
20        JUROR NO. 50:  Not at all.  It was bad decisions.
21        MS. COSTANTIN:  Okay.  Is there anything about that
22   experience that would prevent you from being fair in this
23   case?
24        JUROR NO. 50:  No, ma'am.
25        MS. COSTANTIN:  Okay.  Thanks.
```

```
1          And, Mr. "Krummer" -- or Kremer.  Number 51.  I'm

2    sorry.  You indicated there was a very, very old charge that

3    got dropped; correct?

4          JUROR NO. 51:  Correct.

5          MS. COSTANTIN:  Okay.  Anything about that that would

6    prevent you from being a fair and impartial juror?

7          JUROR NO. 51:  Oh, no.  It worked out just fine for

8    me, so yes.

9          MS. COSTANTIN:  All right.  And you also indicated

10   that you had a relative who had a DWI.  Is there anything

11   about that that would prevent you from being fair?

12         JUROR NO. 51:  No, no.  That all worked out good, too.

13         MS. COSTANTIN:  Okay.  And Mr. -- Number 53,

14   Mr. Bowler, you indicated you had a relative who had a DWI;

15   is that right?

16         JUROR NO. 54:  Yes.

17         MS. COSTANTIN:  Do you feel that the outcome there was

18   fair or --

19         JUROR NO. 54:  Yes.

20         MS. COSTANTIN:  Okay.  Anything about that that would

21   prevent you from being a fair and impartial juror?

22         JUROR NO. 54:  No.

23         MS. COSTANTIN:  No?  You have to answer out loud.

24         JUROR NO. 54:  No.

25         MS. COSTANTIN:  Okay.  Thanks.
```

```
 1          Mr. Hibbler.  Number 58.  I'm sorry.  You indicated
 2   that you knew someone who was in prison in another state, in
 3   Virginia; is that correct?
 4          JUROR NO. 58:  Correct.
 5          MS. COSTANTIN:  Okay.  Do you believe that the outcome
 6   was fair in that situation or not?
 7          JUROR NO. 58:  Yes.
 8          MS. COSTANTIN:  Okay.  Is there anything about that
 9   situation that would prevent you from being fair and
10   impartial in this case?
11          JUROR NO. 58:  No, ma'am.
12          MS. COSTANTIN:  Okay.  Thank you.
13          Has anyone here ever been a witness in a case, as in
14   had to come in to court and actually testify from the
15   witness stand?  If so, please raise your hand.
16          I did not see that.  I'm sorry.  Forty-two.  Is it
17   Schaben?
18          JUROR NO. 42:  Yes.
19          MS. COSTANTIN:  Can you tell me what that involved.
20          JUROR NO. 42:  It was guardianship hearings.
21          MS. COSTANTIN:  Oh, a guardianship hearing?
22          JUROR NO. 42:  Uh-huh.
23          MS. COSTANTIN:  I'm sorry, I didn't hear that last
24   part.
25          JUROR NO. 42:  I work for the State of Missouri so I
```

1    did guardianship hearings quite often.

2         *MS. COSTANTIN:*  So you testified quite a bit in those

3    situations.  Anything about that experience testifying that

4    would negatively affect your being a juror?

5         *JUROR NO. 42:*  No.

6         *MS. COSTANTIN:*  Okay.  That's all I have.  Thank you.

7         I anticipate that you're going to hear testimony from

8    both police officers as well as federal agents in this case,

9    and the judge is going to give you an instruction concerning

10   the credibility of witnesses.  And do you understand that

11   that same instruction is used to judge the credibility of

12   all witnesses, whether someone's a police officer or not a

13   police officer?  Does anyone have a problem with that?

14        A number of people have indicated that they have

15   friends or family members who are in law enforcement, and I

16   just want to quickly go through some of that and ask you

17   sort of the same set of questions.

18        Number 33, Ms. Biggerstaff, you indicated that your

19   husband was a former Maplewood police chief; is that

20   correct?

21        *JUROR NO. 33:*  Yes.

22        *MS. COSTANTIN:*  Okay.  Would you be able to set aside

23   that relationship and judge this case on the evidence as you

24   hear it from the witness stand as well as the physical

25   evidence that you'll observe?

1      **JUROR NO. 33:**  Yes, I would.

2      **MS. COSTANTIN:**  Okay.  Thank you, ma'am.

3      We can pass it down to Ms. Ivie because Ms. Ivie has

4   relatives who are police officers as well.

5      Same question for you, ma'am:  Would you be able to

6   set aside the relationship that you have with your -- I

7   guess your sister and your brother-in-law, as well as some

8   friends, and judge this case solely on the evidence that

9   comes into court?

10      **JUROR NO. 35:**  Yes.

11      **MS. COSTANTIN:**  Okay.  Ms. -- Number 36.  I'm sorry.

12   Ms. King.  Ms. King, were you yourself a correctional

13   officer at Maryville Treatment Center?

14      **JUROR NO. 36:**  Yes.

15      **MS. COSTANTIN:**  For about how long was that?

16      **JUROR NO. 36:**  About two years.

17      **MS. COSTANTIN:**  Is there anything about that

18   experience that would prevent you from being able to listen

19   to the evidence in this case and judge the case solely on

20   this evidence?

21      **JUROR NO. 36:**  No.

22      **MS. COSTANTIN:**  Could you be fair and impartial to

23   both sides in this case?

24      **JUROR NO. 36:**  Yes.

25      **MS. COSTANTIN:**  Okay.  Thank you.  Want to pass it

1   down to -- oh, wait, no.  That person's -- 49, behind you,

2   right.  I was going to say, you're not that way, you're that

3   way.  You indicated you had several folks who were law

4   enforcement and I wasn't sure what the connection was.

5           **JUROR NO. 39:**  Retired state trooper.

6       **MS. COSTANTIN:**  Okay.  And are you a retired state

7   trooper or is someone --

8           **JUROR NO. 39:**  No.  Just the person I was -- relative

9   was.

10      **MS. COSTANTIN:**  Okay.  Is that someone that you have a

11  lot of contact with?

12          **JUROR NO. 39:**  Yes.  Family functions we always go to.

13      **MS. COSTANTIN:**  Okay, all right.  Would you be able to

14  set that relationship aside and judge this case solely on

15  the evidence as it comes in?

16          **JUROR NO. 39:**  Yes.

17      **MS. COSTANTIN:**  Pass that down to 40 -- Number 41.

18      Mr. Harmon, you indicated you had a friend who was a

19  police officer in O'Fallon; is that correct?

20          **JUROR NO. 41:**  That's correct.

21      **MS. COSTANTIN:**  Would you be able to set aside that

22  relationship and judge this case solely on the evidence as

23  it comes into court?

24          **JUROR NO. 41:**  Yes.

25      **MS. COSTANTIN:**  Thank you.

 1         Number 45, Mr. Conner.  You'd indicated that you knew

 2  some law enforcement officers on basically all levels of law

 3  enforcement.

 4         **JUROR NO. 45:**  I do.

 5         **MS. COSTANTIN:**  Can you give me some idea of where

 6  they work or what they do.

 7         **JUROR NO. 45:**  One's a U.S. Marshal, one just

 8  graduated FBI academy, officers in O'Fallon Police

 9  Department.

10         **MS. COSTANTIN:**  Okay.  And is that -- the person who's

11  a U.S. Marshal, is that someone who's working in this

12  building?

13         **JUROR NO. 45:**  No.

14         **MS. COSTANTIN:**  Okay, all right.  Would you be able to

15  set aside those relationships and judge this case solely on

16  the evidence you hear in court?

17         **JUROR NO. 45:**  I would.

18         **MS. COSTANTIN:**  Thank you, sir.

19         I'm sorry.  I just want to make sure there's nobody

20  that I miss.  Number 55, Mr. Polizzi.  Mr. Polizzi, you

21  indicated that you had a friend who is a City police

22  officer?

23         **JUROR NO. 55:**  Yes, ma'am.

24         **MS. COSTANTIN:**  What is his or her name?

25         **JUROR NO. 55:**  Nick Hayden.

1      **MS. COSTANTIN:**  Hayden?

2      **JUROR NO. 55:**  Yes, ma'am.

3      **MS. COSTANTIN:**  All right.  Would you be able to set

4    that -- do you know, first of all, if he was -- if that

5    officer was working in 2017 with the City police department?

6      **JUROR NO. 55:**  They were, yes.

7      **MS. COSTANTIN:**  Okay.  Would you be able to set aside

8    that relationship and judge this case solely on the evidence

9    that comes into court?

10      **JUROR NO. 55:**  Yes, I would.

11      **MS. COSTANTIN:**  Okay, thank you.

12      And Ms. -- I can't say -- Ijames?  Okay.  Also, that's

13    56.  You indicate you have brothers who are both police

14    officers and detectives?

15      **JUROR NO. 56:**  Yes.

16      **MS. COSTANTIN:**  On what departments are those?

17      **JUROR NO. 56:**  One is with Crystal City.

18      **MR. ROSENBLUM:**  Sorry, ma'am?

19      **JUROR NO. 56:**  Crystal City.  And the other is with

20    DeSoto.

21      **MS. COSTANTIN:**  Would you be able to set aside those

22    relationships and listen to the evidence in this case and

23    judge this case solely on the evidence as it comes into

24    court?

25      **JUROR NO. 56:**  Yes, ma'am.

1          **MS. COSTANTIN:**  Thank you.  Okay.  I think that's all
2     I've got on that.
3          The judge has indicated that this case will go for two
4     weeks, which is pretty much a maximum is what we believe.
5     If there's anyone who has a scheduling problem, like an
6     unavoidable scheduling problem, please raise your hand,
7     during those two weeks time.
8          Does anyone here have any vision or hearing problems,
9     as in just being in court this afternoon they've had trouble
10    hearing people or haven't been able to see something they
11    would need to see?  If so, please raise your hand.
12         Has anyone here been assaulted by law enforcement or
13    had a close friend or relative who was assaulted by law
14    enforcement?  Please raise your hand, if so.
15         Now, as I said before, the defendant, former police
16    officer Dustin Boone, is charged with deprivation of civil
17    rights, and the defendant, former police officer Myers, is
18    charged with destruction of evidence.  Is there anything
19    about the nature of those charges that would make any member
20    of this panel unable to be fair?  Just the nature, just the
21    name of the charges basically.  Does anyone think that
22    deprivation of civil rights should not be a crime?  And does
23    anyone think destruction of evidence should not be a crime?
24    If so, please raise your hand.
25         Now, Defendant Boone is charged with aiding and

```
 1    abetting the deprivation of the civil rights of Luther Hall,

 2    and I want to talk for a moment about the concept of aiding

 3    and abetting.  I'm going to use an example to illustrate

 4    this concept.  And these are not the facts of this case,

 5    obviously, once I start to talk about it.

 6         Under aiding abetting, the law that you'll be given by

 7    the Court -- under aiding abetting, if I go into a bank with

 8    a gun and I rob a bank and Mr. Livergood stays outside that

 9    bank in the car and drives me away from the robbery -- he's

10    the getaway driver -- he is guilty of bank robbery just like

11    I am even though he never went into the bank.

12         Does anyone think that that should not be the law,

13    that that's not fair?  If so, please raise your hand.

14         If instructed that that's the law, is there anybody

15    here who could not follow the law on aiding and abetting?

16    If so, please raise your hand.

17         Let me give you another example.  Under aiding and

18    abetting, if I go into that bank with a gun and I rob the

19    bank, and Mr. Livergood stays outside the bank and he's the

20    lookout to see if the police are coming, then he is guilty

21    of bank robbery because the lookout is guilty of the bank

22    robbery even if the lookout never enters the bank and never

23    had the gun.  Does anyone think that that should not be the

24    law?  If so, please raise your hand.

25         Is there anyone here who could not follow the law in
```

1    aiding abetting if they're instructed that that was the law?

2    If so, please raise your hand.

3        Now, there have been some high profile cases in the

4    news recently that were mentioned by the Court, and in some

5    of those cases there was video that recorded the entire

6    incident.  Is there anyone -- let me just be clear.

7        In this case there is no video that records the entire

8    incident.  Is there anyone who's just sitting here right

9    now, believes that they're going to need a video in order to

10   convict someone -- to find beyond a reasonable doubt and

11   convict somebody?  If so, please raise your hand.

12       Is there anyone here, sitting here right now, who

13   believes that they'll need video evidence of the crime in

14   order to find a police officer guilty beyond a reasonable

15   doubt?  If so, please raise your hand.

16       Does anyone here believe that, in order to convict a

17   police officer, that there must be a higher standard of

18   proof than reasonable doubt?  If so, please raise your hand.

19       Now, you may hear testimony from a witness who pled

20   guilty and is cooperating with the investigation in hopes of

21   receiving a lower sentence, and use of such testimony from

22   cooperating witnesses is lawful and it's permitted.  The

23   Court will give you an instruction concerning the rule for

24   judging the credibility of that witness.  Is there anyone,

25   however, who's sitting here right now would automatically

1   disregard testimony from that witness?  If so, please raise
2   your hand.
3          Now, the judge will give you the law.  It's not what I
4   say it is, it's not what you think it is, it's not what
5   defense counsel says it is; it's what the judge says it is.
6   So you may have some ideas about what certain things mean
7   like "unreasonable force" or "bodily injury."  You must
8   follow the Court's definition of these terms.  Is there
9   anyone who would be unable to do that, follow what the Court
10  says the law is?  If so, please raise your hand.
11         Is there anyone who has any personal or religious
12  reasons why they feel that they cannot sit in judgment of
13  another person?  If so, please raise your hand.
14         And, finally -- and I think the judge asked this a
15  different way, too -- but is there anyone, as they sit here
16  today, says, *I have my own reason that I can't be fair but*
17  *they just haven't asked me the right question to bring that*
18  *out*?  Is there anyone who's sitting here today believes that
19  or knows that they cannot be fair and impartial in this
20  case?  If so, please raise your hand.
21         Judge, that's all I've got.
22         **MR. ROSENBLUM:**  May it please the Court.  Good
23  afternoon, ladies and gentlemen.  I may ask you to raise
24  your hand from time to time.  It's late in the afternoon.
25  It will keep you hopefully engaged for exercise.

1    As I said, I'm Scott Rosenblum.  Along with Adam Fein

2    and Brad Bilyeu, we represent Christopher Myers.  I think

3    you said nobody was familiar with me when the Court asked.

4    Is anybody familiar with my law firm -- it's in Clayton;

5    Rosenblum, Schwartz and Fry -- or had any dealings with the

6    law firm or had any dealings with me?

7         I'm going to start off -- as we've already seen as we

8    go through this process -- and really what this process is

9    about, it's the lawyers' opportunity to ask questions that

10   would ordinarily be none of our business, but as you can

11   see, we all have life experiences and, really, the only

12   issue is if any of those life experiences are such that they

13   would impact your ability to be a fair and impartial juror.

14        Again, that's why we start off with 90 jurors that

15   we're going to question potentially and we're going to wind

16   up with 12, because we realize that not everyone is best

17   suited for every particular trial.

18        I'm going to go back and start off by talking to some

19   of the jurors that Ms. Costantin has talked to about people

20   that have been charged or arrested, family members.

21        So, Ms. Ivie, you said you had a cousin that was

22   charged with robbery; correct?

23        **JUROR NO. 35:**  Yes.  Do you want me to wait for the

24   microphone?

25        **MR. ROSENBLUM:**  Oh, I'm sorry.  Number 35.

1      **JUROR NO. 35:**  Yes.

2      **MR. ROSENBLUM:**  Do you know which police department

3   arrested him?

4      **JUROR NO. 35:**  I don't know, no.

5      **MR. ROSENBLUM:**  Were you -- did you have a -- did you

6   follow him or did you have any communication with him either

7   by letter or visiting once he was incarcerated?

8      **JUROR NO. 35:**  My cousin is a female.

9      **MR. ROSENBLUM:**  Oh, I'm sorry.

10      **JUROR NO. 35:**  It's okay.  I haven't had any contact

11   with her since she's been in prison.

12      **MR. ROSENBLUM:**  Okay.  Thank you, Ms. Ivie.

13      And, Mr. Boyd, same series of questions.  Your

14   cousin -- when was your cousin actually charged with the

15   robbery, if you recall?

16      **JUROR NO. 34:**  '96.

17      **MR. ROSENBLUM:**  '96.  And was he a cousin that you

18   were close with?

19      **JUROR NO. 34:**  Yeah.

20      **MR. ROSENBLUM:**  Did you follow the case?

21      **JUROR NO. 34:**  A little bit.

22      **MR. ROSENBLUM:**  Little bit?  Okay.  And I think you

23   said that you could still be fair and impartial?

24      **JUROR NO. 34:**  Yes.

25      **MR. ROSENBLUM:**  Do you know which police agency or

1   department was involved?

2       **JUROR NO. 34:**  This was in St. Louis when I was living

3   in Missouri -- I mean Illinois.

4       **MR. ROSENBLUM:**  Okay.  Do you know whether it was

5   St. Louis City police or St. Louis County?

6       **JUROR NO. 34:**  County.

7       **MR. ROSENBLUM:**  St. Louis County.  Okay.  Did you keep

8   in contact with your cousin once he was incarcerated?

9       **JUROR NO. 34:**  A little bit, and his mom.

10      **MR. ROSENBLUM:**  I'm sorry?

11      **JUROR NO. 34:**  A little bit, and his mom.

12      **MR. ROSENBLUM:**  Do you still keep in contact with his

13  mom?

14      **JUROR NO. 34:**  His mom.

15      **MR. ROSENBLUM:**  Do you still keep in contact with

16  him --

17      **JUROR NO. 34:**  He's about to get out.

18      **MR. ROSENBLUM:**  -- by visits or by letter?

19      **JUROR NO. 34:**  I talked to his mom.

20      **MR. ROSENBLUM:**  Just talked to his mom.  Okay.

21  Nothing about that experience that would cause you any

22  concern?

23      **JUROR NO. 34:**  No.

24      **MR. ROSENBLUM:**  Thank you.

25      And, Ms. King, I know you indicated it was quite

1    sometime ago, but you were married to the fellow; correct?

2         **JUROR NO. 36:**  Yes, for a year.

3         **MR. ROSENBLUM:**  Okay.  During -- once he was

4    incarcerated, even though he got what he deserved, did you

5    keep in contact with him?

6         **JUROR NO. 36:**  No.

7         **MR. ROSENBLUM:**  No?

8         **JUROR NO. 36:**  No.

9         **MR. ROSENBLUM:**  And you haven't kept in contact with

10   him since?

11        **JUROR NO. 36:**  No.

12        **MR. ROSENBLUM:**  Did you have any idea which police

13   agency arrested him?

14        **JUROR NO. 36:**  I think he was from St. Louis

15   someplace.  Spanish Lake.

16        **MR. ROSENBLUM:**  St. Louis County potentially?

17        **JUROR NO. 36:**  Probably.  It's been quite a while ago.

18        **MR. ROSENBLUM:**  Okay.  No problem.  Thank you.

19        And, Mr. Hibbler?

20        **DEPUTY CLERK:**  Number 58.

21        **MR. ROSENBLUM:**  I'm sorry, 58.  Yes, sir.  Thank you.

22   You said you had a friend in jail?

23        **JUROR NO. 58:**  Yes.

24        **MR. ROSENBLUM:**  And do you mind if I ask what the

25   charge is or was?  Sorry.

1          *JUROR NO. 58:*  Murder.

2          *MR. ROSENBLUM:*  Was he a close friend?

3          *JUROR NO. 58:*  No.

4          *MR. ROSENBLUM:*  Did you keep in contact with him once

5     he was incarcerated?

6          *JUROR NO. 58:*  Yes.

7          *MR. ROSENBLUM:*  Do you still keep in contact with him?

8          *JUROR NO. 58:*  Yes.

9          *MR. ROSENBLUM:*  That's by way of letter or visits?

10         *JUROR NO. 58:*  Letters.

11         *MR. ROSENBLUM:*  So, regular contact?

12         *JUROR NO. 58:*  Yes.

13         *MR. ROSENBLUM:*  Okay.  And do you -- you said you

14    don't have any -- you'd be able to put that aside?

15         *JUROR NO. 58:*  Yeah.

16         *MR. ROSENBLUM:*  And you think he was treated fairly?

17         *JUROR NO. 58:*  Yes.

18         *MR. ROSENBLUM:*  Do you know what police agency

19    arrested him?

20         *JUROR NO. 58:*  It was in the State of Virginia.

21         *MR. ROSENBLUM:*  Thank you, sir.

22         And on the subject of police, have any of you had

23    any -- I'm going to ask it specifically and then generally.

24    Has anybody had any negative experience with the St. Louis

25    City Police Department, or family members or close friends

1    that had a negative experience with the St. Louis City

2    Police Department?  Or any police department for that

3    matter, any negative experiences with any police department.

4    Thank you.

5         As you've been told Chris Myers, who I represent, has

6    been charged in one count of knowingly damaging a phone in

7    contemplation of an investigation.  Now, he's not charged

8    with the same offense as Mr. Boone.  And it's going to be

9    important that you consider the evidence, and you'll be

10   instructed that you should consider the evidence separately.

11        What that means is, even though there's two

12   individuals charged, Mr. Myers -- I represent Mr. Myers and

13   only Mr. Myers.  So you're going to be asked to

14   compartmentalize evidence.  What the government introduces

15   with respect to Mr. Myers has to nothing to do potentially

16   with Mr. Boone and vice-versa.  What they introduce against

17   Mr. Boone has nothing to do with Mr. Myers.  Separate

18   charges.  Do you all believe you can do that,

19   compartmentalize in such a way?  Do you all think that's the

20   fair way to do it?  Right?  Let me see your hands.  All

21   right.  Thank you.

22        Now, along those same lines, if at the conclusion of

23   the case you believe that the government has failed to meet

24   its burden of proof beyond a reasonable doubt with respect

25   to Mr. Myers, would any of you have any problem returning a

1    verdict of not guilty, regardless of the evidence or how you

2    considered the evidence against Mr. Boone?  Does everybody

3    understand that question?  You think you would all be able

4    to do that, compartmentalize that in such a fashion?  Let me

5    see your hands.  Over here?  All right.  Thank you.

6         Now, basically, like any of us, we're to be judged on

7    our own conduct.  Does that make sense?  All right.

8         And as the Court -- as Ms. Costantin has said,

9    Mr. Myers has been indicted.  So what is an indictment?

10   It's a piece of paper.  It's the formal way that any of us

11   are made aware by our government that these are the charges

12   against you; right?  It's a -- basically it's a piece of

13   paper.  It's not self-proving.  It's the formal notice any

14   of us receive.

15        So to put it another way, Ms. Costantin or

16   Mr. Livergood can't take this piece of paper, an indictment,

17   and put it up on the witness stand and be done.  She has to

18   call witnesses.  The government has to call witnesses and

19   produce evidence, whether it's documentary evidence, whether

20   it's witnesses or photos, whatever it is, to give life to

21   that indictment.  Does that make sense to everybody?

22   Because without that, it fails; right?

23        And in the process of that -- first of all, the fact

24   that Mr. Myers is sitting there next to a couple lawyers, do

25   any of you believe that, because he has been charged, that

 1   he must be guilty of what the government says he did, or

 2   anything else?  Does anybody believe that?  Okay.  Because

 3   the law says, and you'll be instructed, that to be

 4   charged -- like any citizen, like any of us, the fact that

 5   he has been indicted or charged gives rise to no inference

 6   and you can't consider that in any fashion that he must be

 7   guilty.  And that's fair, don't you think?  Let me see your

 8   hands.  Would you all agree to follow that instruction of

 9   law?  We all agree -- I think we can all agree.

10        So, Mr. Myers has been charged with destruction of

11   evidence in contemplation of an investigation.  And you'll

12   hear what these elements are about that the government has

13   to prove and you'll be given instructions on how to weigh

14   it.  But the fact that he's been charged with such an

15   offense, that's not a good thing; right?  It's awful to be

16   charged by the federal government.  Can we agree?  Can you

17   also agree that it's equally awful to be charged by the

18   federal government for a crime that you're not guilty of?

19   Can we agree that that's equally awful?  And that's what

20   we're here for, right, to decide what the facts are, what

21   the evidence is.

22        Do you all believe in 2021 that a citizen of the

23   United States can be charged with a crime that they didn't

24   commit?  Do you all agree that that's possible?  Can I see

25   your hands over here?  Do you think it happens?

```
 1          Okay.  Now, you heard that Mr. Myers is a police
 2   officer and -- was a police officer, and he's been -- and he
 3   has been charged, and I've been talking about it.  As you
 4   sit here now, do any of you believe -- the fact that he was
 5   a police officer, does that cause you to believe that he
 6   must have done something because they wouldn't have charged
 7   a police officer?  Does anybody think that?  Or can you
 8   agree that a police officer, just like any other citizen,
 9   can be charged lawfully and can be charged unlawfully?  Does
10   that make sense?  Would you hold -- do you believe that the
11   fact that he was one time a police officer and charged makes
12   it more likely that they got it right?  Does anybody, as
13   you're sitting here, think that?
14          You'll hear that the FBI was involved in the
15   investigation at some point.  Do any of you believe that,
16   because the FBI was involved, that it must be more serious,
17   or that they -- that he must be guilty of what he's charged
18   with because the FBI was involved?
19          Ms. Ivie, how about you?
20          JUROR NO. 35:  No.
21          MR. ROSENBLUM:  Mr. Anderson, how about you?
22          JUROR NO. 46:  No.
23          MR. ROSENBLUM:  Would you agree that the FBI can get
24   things wrong, too?  Does that make sense?  Do you agree with
25   that?  All right.
```

```
1              We've talked a little bit about the burden of proof,
2     and the state's asking you to convict Christopher Myers, our
3     client, deprive him of his liberty.  So in a criminal case
4     the burden of proof is the highest we have, the highest in
5     the law.  Ms. Costantin's correct, does not mean proof
6     beyond all possible doubt.  And you'll be instructed by the
7     Court as to what it means.  It's proof beyond a reasonable
8     doubt.  And it's going to be incumbent upon the government
9     to prove each element of the case that they have brought
10    beyond a reasonable doubt.  In fact, they would have to
11    prove that he did damage, destroy a phone, and also that he
12    did it in contemplation of an investigation.  They have to
13    prove every element.  If they fail on any, your verdict has
14    to be not guilty.  Does that make sense?  You think that's
15    the way it should be?  How about over here?  The right side
16    and in the middle?
17             And as we go through, as she said, you'll be
18    instructed.  So as you hear this case, if at the end of the
19    case you're thinking, *Gosh, you know, I've heard it with*
20    *respect to Chris and this case sounds awfully suspicious,*
21    *awfully suspicious.*  In fact, he may have done it, but it
22    doesn't rise to the level of beyond a reasonable doubt.
23             Ms. Ibarra, what would your verdict be, Number 37?
24        **JUROR NO. 37:**  I'd have to know everything.
25        **MR. ROSENBLUM:**  I can't hear you.  Would you take your
```

1    mask off.

2         **JUROR NO. 37:**  I'd have to know everything or know as

3    much as I possibly could.

4         **MR. ROSENBLUM:**  I understand, but I'm saying that --

5    would you be able to follow the law of proof beyond a

6    reasonable doubt?

7         **JUROR NO. 37:**  Yes.

8         **MR. ROSENBLUM:**  And you understand if they come close,

9    it doesn't count?

10         **JUROR NO. 37:**  Yes.

11         **MR. ROSENBLUM:**  They can't prove a case by suspicion,

12    they can't prove a case by "it's close"; they have to prove

13    beyond a reasonable doubt.

14         **JUROR NO. 37:**  Correct.

15         **MR. ROSENBLUM:**  You'll hold the government to the

16    burden?

17         **JUROR NO. 37:**  Yes.

18         **MR. ROSENBLUM:**  Will everybody hold the government to

19    that burden?  Okay.  Thank you.

20         You'll see how this case unfolds and how this burden

21    applies because I anticipate the Court, His Honor, is going

22    to look at the government and say, "Ms. Costantin, you now

23    must give an opening statement."  They'll look at our side

24    and say, "Mr. Rosenblum, you can choose to give an opening

25    statement or not, or waive it or delay it."

1          The same with the evidence:  "You now must present

2     evidence."  They'll look at the defense and say we have no

3     obligation to.  And the same with the closing argument,

4     because that's the burden.  It stays with the government

5     throughout the case until you complete your deliberations.

6          Now, I would anticipate -- obviously, I'm not going to

7     sit there and do nothing.  Mr. Myers would probably be

8     kicking me in my shins.  I anticipate that we will be

9     cross-examining witnesses, at the very minimum.  And does

10    everybody understand the concept of establishing reasonable

11    doubt through cross-examination?  Does that make sense?

12         Okay.  Mr. Schilling, does that make sense?

13         **JUROR NO. 40:**  Yes.

14         **MR. ROSENBLUM:**  How about over here.  Everybody

15    understand that concept?  In the middle of the room?  Okay

16    thank, you.

17         You've been told that this is -- has had some news

18    coverage, okay?  And a number of you said that you've heard

19    the news, some of you haven't.  So one of the concerns we

20    have is that when you're back -- when you're considering

21    this case and when you're deliberating this case, that you

22    give -- you may give mind or give thought to how people are

23    going to perceive me.  Do you understand that your oath as a

24    juror is to decide this case from what you hear in this

25    courtroom and not give credence or not give thought to how

1    you're going to be perceived or if you're going to have to

2    explain your verdict to anybody, family members or nonfamily

3    members, whatever your verdict may be.  Do you all agree

4    with that?  Certainly we would want that for ourselves;

5    right?  Do you agree with that over here?  And over here?

6         Another principle that we've heard is the presumption

7    of innocence.  Now, you know, these principles are things

8    that typically none of us have to think about unless we're

9    in this position of being a prospective juror, and then you

10   have to give thought to it, but the presumption of

11   innocence -- and certainly it protects us all, every one of

12   us and our family, and this week, to be sure, to be certain,

13   it protects Christopher Myers.

14        But basically what the presumption of innocence says

15   is that all of us, every one of us is presumed -- any

16   citizen is presumed innocent unless and until the government

17   can meet its burden on each element of what's charged.  It's

18   been said that the presumption of innocence alone is enough

19   to return a verdict of not guilty.  Does that make sense to

20   everybody?

21        Mr. Weber, the presumption of innocence alone is

22   enough to return a verdict of not guilty.  And the way this

23   works is -- none of you have heard any evidence; right?  So

24   if you had to vote right now what would your verdict be?

25        **JUROR NO. 44:**  Not guilty.

1          **MR. ROSENBLUM:**  Right.  Does that make sense to

2     everybody?  Agree with that?  This presumption, as the

3     Court, as Judge Webber has mentioned, provides that because

4     any citizen -- and Mr. Myers is presumed to be innocent.  He

5     doesn't have to present -- we don't have to present any

6     evidence at all.  We don't have to present any evidence, we

7     don't have to present his testimony.  Like any one of us

8     accused of a crime, he has an absolute right not to testify.

9          Do any of you as you sit here now, think, *Well, boy,*

10    *if I were in that situation I'd sure want to be heard from*?

11    And are those feelings such that you would want to hear from

12    Christopher so much that it would impact your ability to be

13    fair and impartial regardless of what the Court's

14    instruction is?

15         So, as you're sitting here now, does anybody feel that

16    they would want or require Christopher to take the stand and

17    testify before you would consider a verdict of not guilty?

18    Does anybody come down like that or think about that?  You

19    would have no problem following the jury instruction that

20    says you cannot consider whether or not, after speaking with

21    his lawyers, whether or not he testified, you can't consider

22    it one way or the other, you have to keep it out of your

23    mind.  Everybody comfortable with that?  How about on this

24    side of the room?

25         Ms. Golden, are you comfortable with that?

1      **JUROR NO. 52:**  Yeah.

2      **MR. ROSENBLUM:**  How about in the middle of the room?

3  Mr. Viau, are you good with that?

4      **JUROR NO. 50:**  Yes, sir.

5      **MR. ROSENBLUM:**  All right.  Thank you.

6      And on the other side of the coin, Mr. Chris Myers has

7  an absolute right to testify, like any of us accused of a

8  crime, and if he chooses to testify he will be subject to

9  the same credibility instruction that the Court will read

10  with respect to every witness.  Everybody good with that and

11  would be able to follow that particular law?

12      Mr. Boyd, it just reminded me a question that

13  Ms. Costantin had about whether anybody had any hearing

14  difficulties.  I may have misread it on your questionnaire,

15  but did you indicate you had some hearing issues?

16      **JUROR NO. 34:**  No.  I was in the military for --

17      **MR. ROSENBLUM:**  I'm sorry?

18      **JUROR NO. 34:**  I was in the military for [inaudible].

19      **MR. ROSENBLUM:**  You're hearing everybody all right?

20      **JUROR NO. 34:**  Yeah.

21      **MR. ROSENBLUM:**  All right, good.  Lawyers have a

22  tendency to loud talk anyway.  So, okay.

23      So, along those same lines of following up on the

24  questions of testifying, not testifying, does everybody

25  understand the concept of, you can't prove a negative;

1  right?  Is it Ms. "Shobby"?

2         ***JUROR NO. 42:***  Schaben.

3         **MR. ROSENBLUM:**  Schaben.  Do you understand the

4  concept that you can't prove a negative?  Does that make

5  sense, Mr. Harmon?

6         ***(No audible response.)***

7         **MR. ROSENBLUM:**  All right.  Mr. Lammert?

8         ***(No audible response.)***

9         **MR. ROSENBLUM:**  Along the same lines, the Court's told

10 you that Chris Myers has entered a plea of not guilty.

11 That's why this case is here at issue for you all to decide.

12        I want to ask about -- there'll be different types of

13 evidence that will be introduced.  You'll see -- I'm

14 anticipating you'll certainly hear from a number of

15 witnesses, witness testimony.  I would anticipate that

16 you're going to see a number of photographs, documents, all

17 sorts of evidence for you to consider.  That's evidence;

18 right?

19        Now, would you agree with me that speculation or

20 guessing is not the same as objective evidence?  Does that

21 make sense?  Okay.  So I'll give an example.

22        If I asked you over there to guess Mr. Bilyeu's age --

23 right?  There's 29 of you in the courtroom.  Chances are

24 we're probably going to get -- if you're guessing, you're

25 probably going to get potentially 29 different guesses;

1  right?  Does that make sense?

2      Now, at the end of that demonstration, after everybody

3  guessed, if I took out his birth certificate and I said,

4  *This is his age*, some of you are right, some of you are

5  wrong; right?  That's objective evidence.  That's a

6  difference; right?

7      Along those same lines, if I ask you to speculate why

8  Mr. Bilyeu's at that table, well, when you walked in you saw

9  him with some other defense lawyers.  You may have said,

10  *Well, I'm assuming he's a lawyer because he's over there.*

11  *I'm speculating that he's a lawyer.*  You may be right but

12  you may be wrong.  He may be a paralegal, he may be an IT

13  guy.  That's speculation.  That's different than objective

14  evidence; right?  Everybody agree to distinguish, as we go

15  through this case, what is speculation, what is guessing

16  versus what is objective evidence?

17      Will you do that, Ms. Gilbert?  You didn't think I

18  could find you back there, but I saw you shaking your head.

19  All right, Number 61.

20      Ms. Costantin talked about credibility of witnesses.

21  And to be sure, jurors -- you all decide the facts and it's

22  your sole province to decide the facts and the credibility

23  of the witnesses that come before you.  You guys decide

24  whether or not this person is testifying by way of an

25  agenda, whether or not their testimony is credible, is

1  consistent with the facts, is consistent with the other

2  evidence, whether or not they're lying, innocently mistaken.

3  That's all for you to decide.  Do you all believe you can do

4  that, judge the credibility of a witness?  Do you all

5  believe you can do that?  Over here?  Over here?

6  Mr. Kremer?

7       **JUROR NO. 51:**  [No audible answer.]

8       **MR. ROSENBLUM:**  All right, 51.

9       Now, you will hear from a number of law enforcement

10  officers, police officers, and there's a number of law

11  enforcement connections, potentially, if we decide to call

12  witnesses, and that's totally up to the defense.  We're

13  under no obligation to, but if we decide to call witnesses,

14  you may hear from police officers from the defense.

15  Certainly you're going to hear from a number of police

16  officers from the prosecution.

17       But, as you sit here now, would any of you have

18  difficulty following an instruction that, as they walk

19  through that courtroom and swear an oath and testify, that

20  everybody is to be treated equally, treated the same?  Now,

21  you can -- treated the same prior to their testimony.  It's

22  up to you to determine credibility but you can't just

23  automatically say, *I'm going to believe this person because*

24  *they're law enforcement*, or disbelieve.

25       So, as you sit here now, does anybody feel that they

1   may be, because of the way they were indoctrinated -- not

2   "indoctrinated," the wrong word -- the way they had their

3   beliefs coming into this courtroom, that they may tend to

4   automatically believe police officers versus lay witnesses?

5   Or would you be able to treat them the same way?  Everybody

6   agree to do that?  Thank you.

7        There is one category, and Ms. Costantin touched on

8   it, when you'll be instructed that you can treat a witness

9   differently, and that category is a cooperating witness.

10  And I anticipate you will -- and Ms. Costantin has told you,

11  you are going to hear from a witness, and you are able to

12  consider two things about this witness under the law:  One

13  thing about the witness that you can consider is that he's

14  pled guilty to a crime, and you can consider that and give

15  weight, give whatever weight you consider or whatever weight

16  you think that deserves, that he has pled guilty.

17       First of all, does everybody think that's fair?  Let

18  me see your hands.  Okay.  Will everybody agree to follow

19  that particular instruction and consider his plea of guilty

20  in the way that the instruction tells to you do so?  Can you

21  do that?  How about on this side of the room, and on this

22  side of the room?

23       Now, you also find that this gentleman, this officer,

24  has pled guilty to his conduct arising out of the events

25  that Mr. Myers was charged with, but he was charged in a

1    different -- with a different charge, violation of civil

2    rights.  As you know, Mr. Myers isn't.  But the fact that he

3    has pled guilty arising out of the same facts, do any of you

4    now believe that, in fact, then Mr. Myers must be guilty of

5    something?  Does anybody believe that?  Can you

6    compartmentalize what he did with respect to Mr. Myers and

7    judge only Mr. Myers?  Can you do that, in the middle?  And

8    how about over here?

9         And, additionally, you're going to be -- I anticipate

10   an instruction that you will be able to consider the fact

11   that he is seeking and hoping and testifying with leniency

12   on his mind, that he's looking to get a better deal.  Okay?

13   And you'll be given an instruction of how you can treat

14   that, how you can weigh that evidence, how you can determine

15   his desire to get a deal by virtue of his cooperation as to

16   his credibility.  Does everybody agree to do that?  Let me

17   see your hands.  Do you think it's fair to do that?  How

18   about over here, does everybody agree to do it?  Do you

19   think it's fair?  Okay.

20        We also, as we go through life, I imagine most of us,

21   if not all, have had a situation where we have either been

22   taken out of context or somebody has taken us out of

23   context.  Has anybody been in that situation before where

24   something you've said has been taken out of context, or

25   something that you've listened to, that when you're

```
 1    communicating with someone you've taken them out of context?

 2    Anybody at all.  Raise your hand if that's happened to you.

 3    Right.  I think it's happened to just about everybody.

 4         Mr. Polizzi, Number 55, would you agree that if you

 5    are taken out of context or somebody takes you out of

 6    context, then you may miss -- there may be a

 7    misunderstanding or you may ultimately form the wrong

 8    conclusion as to what's -- what you're talking about; right?

 9         JUROR NO. 55:  Yes.

10         MR. ROSENBLUM:  And, in fact, I don't know whether

11    you're a movie watcher.  I'll give you an example.  Have you

12    watched a movie recently?

13         JUROR NO. 55:  No.

14         MR. ROSENBLUM:  Okay.

15         JUROR NO. 55:  Not a movie guy.

16         MR. ROSENBLUM:  That's what I get for speculating,

17    right, or guessing?  Well, let's pretend that you watched a

18    movie, okay?  At some point in your life you watched a

19    movie; right?

20         JUROR NO. 55:  Yes.

21         MR. ROSENBLUM:  Would you agree that if you only

22    watched a couple minutes in the middle of that movie as

23    opposed to the entire movie, you may not understand what the

24    movie's about --

25         JUROR NO. 55:  Yes.
```

1       **MR. ROSENBLUM:**  -- because it would be out of context.

2       **JUROR NO. 55:**  Correct.

3       **MR. ROSENBLUM:**  Just as in our daily life where we

4   have to consider the context of what's going on, would you

5   agree it's important, especially in any important issue or

6   matter, to consider the entire context of the situation?

7   Everybody agree to do that?

8       So just like -- and relating it to this case, and

9   certainly Mr. Myers' case, would you all agree to consider

10  the entire context of the case before deciding the most

11  important thing in Mr. Myers' life, whether or not he's

12  guilty or not guilty?  Do you all agree to do that?  All

13  right.  Thank you.

14      I know Ms. Costantin asked about jury service and I

15  just want to cover it real briefly.  Prior criminal jury

16  service.  Did anybody respond?  Prior criminal jury service?

17  Yeah, I knew somebody.

18      Ms. Golden, can you tell me what kind of case it was.

19      **JUROR NO. 52:**  The man was -- it was --

20      **MR. ROSENBLUM:**  I'm sorry.  You can take your mask

21  off.

22      **JUROR NO. 52:**  It was people that had just got

23  married, and they have different children, you know,

24  different families.  And the man's son was accused of

25  molesting the daughter, but then the father was standing

*USA vs. Boone and Myers, Case #18-975*                    6/7/21 - Pg. 214
*Voir dire*

1   trial for it because they thought it was his fault.

2      **MR. ROSENBLUM:**  All right.  I don't want to know the

3   verdict, but --

4      ***JUROR NO. 52:***  Guilty.

5      **MR. ROSENBLUM:**  I didn't want to know the verdict.  So

6   the jury did reach a verdict?

7      ***JUROR NO. 52:***  Yes.

8      **MR. ROSENBLUM:**  Were you the foreman of that jury?

9      ***JUROR NO. 52:***  No.

10     **MR. ROSENBLUM:**  Okay.  Thank you, ma'am.

11     I don't think anybody -- was there another answer on a

12  criminal jury?  Yes, sir.  Mr. Cobb.

13     ***JUROR NO. 49:***  I don't remember what year it was.  I

14  don't remember when it was.  It was 15, 20 years ago in

15  St. Louis.

16     **MR. ROSENBLUM:**  St. Louis City or County?

17     ***JUROR NO. 49:***  City.

18     **MR. ROSENBLUM:**  Do you recall the type of case?

19     ***JUROR NO. 49:***  I'm sorry?

20     **MR. ROSENBLUM:**  Do you recall the type of case or the

21  charge?

22     ***JUROR NO. 49:***  Yes.

23     **MR. ROSENBLUM:**  What was that?

24     ***JUROR NO. 49:***  Attempted rape and kidnapping.

25     **MR. ROSENBLUM:**  Okay.  And, again, without telling me

1     the verdict, did that jury reach a verdict?

2           *JUROR NO. 49:*  Yes.

3           *MR. ROSENBLUM:*  Were you the foreman of that jury?

4           *JUROR NO. 49:*  No.

5           *MR. ROSENBLUM:*  Okay.  Thank you, Mr. Cobb.

6           Any one of us accused of a crime is entitled to

7     confronted our accusers.  You've heard of that; right?  And

8     I intend to cross-examine the witnesses that the government

9     puts forward, including any -- including the complaining

10    witness, Mr. Hall.  Any other witnesses, I intend to

11    cross-examine them.  The Sixth Amendment to the

12    United States Constitution provides that we can do so, and

13    that's how we confront witnesses, and that protection is

14    afforded to each and every one of us.  Is everybody okay

15    with that concept, thinks that's the way it should be?

16    Okay.

17          And, again, I mentioned it before, but when you hear

18    evidence on cross-examination, that's the same as hearing it

19    on direct.  There's no difference.  It's evidence, it's

20    testimony.  There'll be direct evidence and then there's

21    cross-examination.  So there's no difference in the weight.

22    It's just -- it just is for you to determine the

23    credibility; right?

24          And then with respect to cross-examination, again,

25    everybody understands that I can, we can, establish

1   reasonable doubt just through cross-examination; right?  Can

2   I see your hands?  All right.  Thank you.

3        Have any of you been involved in a situation where

4   you're in a conversation with someone and you're trying to

5   determine whether they're speaking literally or

6   figuratively?  Does that make sense?  Does everybody

7   understand that?  Like, for instance, if you have -- say you

8   have a child going to a dance recital, you say, *Go out there*

9   *and break a leg*; right?  You understand the difference, that

10  you're not actually going to tell her to break a leg.  It's

11  just a term of speech; right?  The difference between

12  figuratively speaking and literally.  Everybody understand

13  that concept?

14       How many of you guys are text messagers?  Okay.  Would

15  you agree with me that sometimes when you're texting there

16  may be conversations or meanings that are lost in

17  translation of the text; right?  How many of you all have

18  said -- you're in the middle of a text conversation,

19  especially probably with your kids, if you're anything like

20  me, and midway through you have to stop and say, *Okay.  Now*

21  *what are you talking about?*  Anybody go through that

22  situation?  Okay.  So, generally, you can agree that

23  sometimes text messaging isn't the best way to communicate

24  your thoughts.  Agreed?  All right.

25       Any members of the military, ever served in the

```
 1   military in the jury box?  Yes, sir.  Mr. Boyd?

 2         JUROR NO. 34:  Army.

 3         MR. ROSENBLUM:  Army.  And when did you serve, please?

 4         JUROR NO. 34:  '89 through '92.

 5         MR. ROSENBLUM:  Okay.  Thank you.  Anybody on the

 6   right side of the room?  And in the jury box?  Mr. Viau.

 7   Yes, sir?

 8         JUROR NO. 50:  Marine Corps, '96 to 2017.

 9         MR. ROSENBLUM:  ''96 to 2017.  So you stayed on in

10   active service?

11         JUROR NO. 50:  Just shy of 21 years.

12         MR. ROSENBLUM:  Okay.  Thank you.

13         So here's my last -- well, I'm going to ask two

14   questions.  I know that's painfully disappointing but you've

15   gone through a lot of questions from the government and from

16   the Court.  And, again, I'll just ask a wrap-up question.

17   And, honestly, this probably just comes from experience of

18   the lawyers because we've all had situations where we've

19   gone through this process, and I thank you for sitting and

20   patiently answering our questions, but then at the end of

21   all these questions somebody comes forward and says, "Why

22   didn't you ask me this?"  And it happens to be something

23   particularly relevant to the case.  So, has anybody sitting

24   here now -- do any of you feel that there's something,

25   anything that we should know about you that one of the --
```

1   that myself or Ms. Costantin or His Honor hasn't asked yet

2   that could affect your ability to be fair and impartial?

3        Number 59, Ms. --

4        **JUROR NO. 59:** My husband spent 31 years working for

5   NGA.

6        **MR. ROSENBLUM:** I'm sorry.

7        See, that's why we ask this question. That's

8   Ms. Winters, is it?

9        **JUROR NO. 59:** My husband spent 31 years working for

10  the government, NGA. So that -- he works a lot with the

11  FBI, the CIA, the DEA.

12       **MR. ROSENBLUM:** Okay. So, thank you for bringing that

13  up. And do you think, do you feel that that long

14  association with the government by your husband would affect

15  your ability to be fair and impartial?

16       **JUROR NO. 59:** I don't think so.

17       **MR. ROSENBLUM:** Do you think --

18       **JUROR NO. 59:** I think that I am partial to --

19       **MR. ROSENBLUM:** Pardon me?

20       **JUROR NO. 59:** I think that I am partial --

21       **MR. ROSENBLUM:** You are partial?

22       **JUROR NO. 59:** -- to the government side because of

23  all the work he's done.

24       **MR. ROSENBLUM:** And that's fair. And that's -- you

25  know, 31 years is a long time, and that's why I ask the

1   question, and -- thank you for bringing it up.  So you would

2   agree, if you are partial, that would make you less than

3   fair and impartial to hear this case?

4        *JUROR NO. 59:*  Sorry?

5        *MR. ROSENBLUM:*  You do not have to apologize.  That's

6   what this process is all about, okay?  Thank you, ma'am.

7        *THE COURT:*  Number?

8        *MR. ROSENBLUM:*  I'm sorry.  Number 59.

9        Anybody else have something that we should know about?

10       All right.  And the last thing before I sit down -- I

11  know it's been a long day, or long afternoon, and I

12  certainly and thank you for your attention.  But if you

13  would just take a moment and reflect on, specifically on the

14  principles of law that we spoke about and everything that

15  the Court read to you, the principles of law that

16  Ms. Costantin spoke to you about, and, of course, the

17  principles of law that I spoke with you specifically about,

18  the presumption of innocence and the burden of proof.

19       And as you sit here now, as you sit here now, do any

20  of you at all -- do any of you presume anything at all about

21  Christopher Myers' guilt or innocence?  Do you presume

22  anything at all about his guilt or innocence?  You presume

23  anything at all about his guilt or innocence?  Okay.  Not

24  one?  Not one teacher?

25       Ms. Ijames, do you presume him to be innocent?

1           **JUROR NO. 56:**  Yes.

2           **MR. ROSENBLUM:**  Do you understand that, because every

3    hand didn't go up after talking about these principles, it

4    could cause some concern, and the concern is that you hear

5    the words but sometimes they're not there in application.

6    Okay?  Do you all agree and promise to give real meaning to

7    those words "the presumption of innocence" if you're

8    selected as a juror in this case?  In the jury box?  On the

9    right side and in the middle?  Can we count on that?

10          Thank you for your time.

11          **THE COURT:**  Mr. Kilgore?

12          **MR. KILGORE:**  May I begin, Your Honor?

13          **THE COURT:**  You may begin.

14          **MR. KILGORE:**  Thank you.

15          Good afternoon ladies and gentlemen.  Excuse me.  My

16   name is Patrick Kilgore again, and I represent Dustin Boone.

17   I'm going to try and be as brief as I can.  I want to just

18   first ask you all -- as I said, I do represent Mr. Boone.

19   They are to be treated separately, as Mr. Rosenblum

20   indicated to you, by your view of the evidence.  But with

21   regard to all of the constitutional protections, all of the

22   instructions he discussed with you that you'll receive from

23   the Court, specifically regarding the presumption of

24   innocence, the burden of proof beyond a reasonable doubt,

25   all of those things -- and the right not to testify and

1    everything that he described, can you all just assure me

2    that you will apply those things to Dustin Boone as well?

3    Does everybody understand those apply equally to him as

4    well?  Okay.  I see everybody nodding their heads.

5        Okay.  I wanted to talk specifically about a couple of

6    things.  Mr. Rosenblum also mentioned text messages.  I

7    anticipate that during the course of this trial that some

8    text messages will be introduced into evidence, and there

9    will be some text messages that I would describe as -- well,

10   I would say that they would be describing Mr. Boone as text

11   messaging and indicating his views about protesters and

12   about the protesting that's going on beginning in September,

13   September 15th of 2017, and lasting through that weekend.

14   Those text messages are disparaging of protesters and

15   commentary and things of that nature.

16       So, my question is -- well, let me say this:  I

17   anticipate also the judge is going to give you an

18   instruction on how to evaluate those text messages and what

19   use you can give them.

20       So, my question is:  Knowing that bit of information,

21   is there anybody who's going to automatically find

22   Dustin Boone of knowingly and intentionally violating --

23   aiding and abetting the violation of Luther Hall's civil

24   rights just because he sent those types of text messages?

25   Okay.  I don't see any hands.  Am I being -- everybody

1    understand what I'm talking about?  Okay.

2         Now, the second issue I wanted to talk to you all

3    about -- and it's very difficult to talk about it.  It's

4    very difficult for me to talk to you about it.  But it deals

5    with racism.  And I anticipate that you will see evidence

6    that Mr. Boone sent text messages that are racist.  There's

7    no context that can be given to them.  They are vile and

8    racist.

9         And, again, you'll receive an instruction from the

10   Court about how to deal with that and how to evaluate that.

11   But at no time will you be instructed that evidence of --

12   those messages are evidence that Mr. Boone is guilty of

13   violating Luther Hall's civil rights, of aiding and abetting

14   the deprivation of his civil rights on September 17th of

15   2017.

16        So, having said that, is there anybody here who would

17   automatically find Dustin Boone guilty of violating

18   Luther Hall's civil rights or aiding abetting the violation

19   of Luther Hall's civil rights just because he sent racist

20   and exchanged racist text messages?  Is there anybody who

21   would do that?

22        Now, I know that in your own lives, in your own life

23   experiences and the environments in which you've lived in,

24   is there anybody who hasn't experienced a close friend,

25   family member, somebody you know, maybe a co-worker who's

1    used racist language?  Is there anybody who's not had that

2    experience ever?  Okay.  Unfortunately, I think it's an

3    experience that we've had.

4         Do you believe that a person can evolve from those

5    views, can change, can realize how wrong those type -- even

6    making those types of statements are?  How utterly wrong

7    that it is?  I see everybody nodding their head.  Okay.

8         So, I like the example that Ms. Costantin gave about

9    her and Mr. Livergood robbing a bank.  I like the visual of

10   it, but it also does illustrate the aiding and abetting

11   instruction.  And, so, if you recall that, she said that --

12   I think she gave two different scenarios.  One where

13   Mr. Livergood is just the lookout and the other one where

14   he's actually driving the getaway car.  And she explained to

15   you how that is an example of aiding and abetting a crime.

16        Do you understand that the reason that that is, is

17   because in those examples Mr. Livergood would be acting

18   knowingly and wilfully in the commission of that crime.

19   Does everybody understand that?  Okay.

20        So the reason I mention that is because I believe that

21   you will hear evidence that Dustin Boone was present at or

22   near the location where this offense occurred, and you

23   will -- the instruction will require you to find that he

24   acted knowingly and wilfully.  So is there anybody who would

25   find Dustin Boone guilty just because he was there, just

1    because you hear evidence that he was at the scene so to

2    speak?

3         Okay.  See everybody shaking their heads.  Okay.  So I

4    guess having heard that little bit of what I had to say

5    about this, is there anybody now who would, for whatever

6    reason, not apply all of those same constitutional

7    protections to Mr. Boone?  Hold the government to its burden

8    of proof, give the presumption of innocence its true weight

9    and meaning?  Does everybody agree with that?  You all

10   promise me that you're going to do that?  Okay.

11        Thank you, Judge.  That's all I have.

12        Thank you all very much.

13        **THE COURT:**  May I speak just briefly with counsel.

14                           *   *   *   *

15        *(Discussion held at sidebar between the Court and*

16         *counsel as follows:)*

17        **THE COURT:**  My intention is to tell the jury that we

18   really tried wanted to finish up today and so they could go

19   home tonight that weren't picked, but we couldn't get it

20   done, and that they are all going to have to come back in

21   the morning at 10:00.

22        **MR. ROSENBLUM:**  I have one additional strike for cause

23   if you want to excuse her.  I don't know what

24   Ms. Costantin's position is.  Ms. Winters says she's partial

25   to the government.

1          **MS. COSTANTIN:**  We might as well strike her now and

2     not have her come back.  I agree with that.

3          **THE COURT:**  So do you want me to send them out in the

4     hall?

5          **MS. COSTANTIN:**  I don't know if she's --

6          **THE COURT:**  I'll show you the ones that I'm going to

7     strike on this panel.  This is second.  I mean I think when

8     I say I'm going to strike them, I think this is --

9          **MR. ROSENBLUM:**  They've already been struck, I think.

10    I would just move to strike Ms. Winters, who is

11    Juror No. 50 --

12         **MS. COSTANTIN:**  Fifty-nine.

13         **MR. ROSENBLUM:**  Fifty-nine.  She's the lady that

14    indicated that her husband worked for the government for 31

15    years, FBI, CIA.

16         **THE COURT:**  Yeah, she's here.

17         **MS. COSTANTIN:**  You've got her on the -- we haven't

18    struck her yet.

19         **THE COURT:**  Well, what I'm saying is, these are the

20    ones that I think -- that I believe we had come to agreement

21    that they would be struck.

22         **MS. COSTANTIN:**  Correct.  I think everybody else --

23    48 -- yeah, everybody else, and everybody else has been sent

24    home except for 59.

25         **THE COURT:**  Except 59.

1        **MR. ROSENBLUM:**  Yes.  We would be saying that she

2    doesn't need to come back tomorrow.

3        **THE COURT:**  If you want to send them out in the hall

4    and do your other strikes.

5        **MS. COSTANTIN:**  Do you want to do strikes tonight?

6        **THE COURT:**  Not peremptories for cause.

7        **MR. ROSENBLUM:**  The only strike that's left open is --

8    we've all agreed that 59 -- it's just a question of whether

9    you -- she doesn't need to come back tomorrow.

10       **THE COURT:**  I'm going to send -- everybody come back

11   except 59.

12       **MS. COSTANTIN:**  Exactly.

13       **MR. ROSENBLUM:**  Perfect.

14       **(End of discussion at sidebar.)**

15                     *   *   *   *

16       **THE COURT:**  The attorneys in this case worked really

17   hard today to try to accomplish what we hoped we might do,

18   and that was to determine everyone who would have to come

19   back in the morning, and then the balance of you could stay

20   home, but we can't get there.  We have to do some other work

21   in the morning, so it will be necessary -- and, Number 59

22   you will not have to come back in the morning.  Other than

23   that, you all will be required to come back in the morning

24   at 10:00.  I don't anticipate it will take a lot of time,

25   but it's necessary to pick the jury for you to come back in

```
 1    the morning at 10:00.  Everyone understand?  I don't expect

 2    to be happy about it, but everyone understand 10:00 in the

 3    morning?  Okay.  And report in the jury assembly room.

 4    Anyone who has any questions about that?  Okay.  All right.

 5    Well, court will be in recess at this time.

 6         (Jury out.)

 7         (The following proceedings were conducted in the

 8          presence of the defendants.)

 9         THE COURT:  Could we talk a moment about the first

10    panel, make sure I have the right numbers.

11         MS. COSTANTIN:  Yes.  Judge, also, I'm going to --

12    there is another strike cause on the first panel that I

13    wanted to do on the first panel.  Do you want to go through

14    who's been struck for cause already on the first panel?

15         THE COURT:  I'm sorry.

16         MS. COSTANTIN:  Do you want to go through the first

17    panel, who already has been struck for cause?

18         THE COURT:  These are the ones that I believe have

19    been struck:  Number 4, 6; correct?

20         MS. COSTANTIN:  Correct.

21         THE COURT:  Fourteen.

22         MS. COSTANTIN:  Yes.

23         THE COURT:  Eighteen.

24         MS. COSTANTIN:  Correct.

25         THE COURT:  Twenty-two.
```

1      **MS. COSTANTIN:**  Twenty-two?  I don't have 22 yet,

2  Judge.

3      **THE COURT:**  Okay.  I think what happened, I had

4  earlier marked and then --

5      **MR. ROSENBLUM:**  He wasn't struck.

6      **THE COURT:**  -- upon her -- after she was interrogated

7  by Mr. Rosenblum, I have another mark.  So we'll take her

8  off.  She's not --

9      **MS. COSTANTIN:**  Who did you have past 22, Judge?

10     **THE COURT:**  Pardon me?

11     **MS. COSTANTIN:**  We also show 31 and 32 as being

12 struck.

13     **THE COURT:**  I show 31 as excused.  And let me look at

14 32.

15     **DEPUTY CLERK:**  Thirty-two was excused.

16     **THE COURT:**  It's Madison Green.  Tell me -- I didn't

17 mark her as excused yet, but explain why she should be

18 excused.

19     **MS. COSTANTIN:**  Judge, I believe we let her go because

20 she indicated that she had concerns that the feelings about

21 the Floyd case would spill over, that she was not going to

22 be able to keep that separate.

23     **THE COURT:**  Yeah, that's right.  If spilled over,

24 probably help -- yeah.  Okay.  That's correct.  So, 32.

25     **MS. COSTANTIN:**  Judge, I would like to move to strike

1   Number 25.  And this is the man who knows that this is the
2   second time.  I just think we're playing with fire here.
3   This is someone who knows that there's a retrial.  He read
4   about it, he knows about it, and I just think it's not
5   proper that we have someone on the jury who knows that there
6   was a first trial.  And he said multiple times he would do
7   his best to set it aside but it would be hard.  I'm just
8   reading my notes.  He also thought that race was
9   hyperexaggerated in some instances.
10      **MR. FEIN:**  He thought sometimes it's exaggerated but
11  it's awful that we have these issues.
12      **MS. COSTANTIN:**  And when people use racist language in
13  front of him, he just let it pass.  My true concern is that
14  he knows about the first trial and he's familiar with the
15  fact that this is a second --
16      **MR. ROSENBLUM:**  Your Honor, I would say that would be
17  a peremptory challenge because I think that he clearly -- I
18  questioned him -- unlike some of the other jurors that read
19  in detail and they knew the splits, he generally said, "I
20  was aware that there was another trial."  And I questioned
21  him at some length and he repeatedly said that would not
22  affect him at all and he would not -- he would
23  compartmentalize and decide this case just on the evidence
24  and the law.
25      **MR. FEIN:**  All of the instructions.

1          **MR. ROSENBLUM:**  He would follow the instructions.  He

2    seemed to me to be a very conscientious juror, in fact.

3          **MS. COSTANTIN:**  He was bothered by the news coverage

4    that there were two white police officers attacking a police

5    officer that that created unnecessary tensions in the

6    environment.

7          **THE COURT:**  Well, inevitably he did say he could put

8    it aside and decide the case based on the evidence, so I'll

9    deny the challenge at this time on 25.

10          We do not need the other 15 tomorrow; am I correct?

11    Anyone disagree with that?

12          **MR. ROSENBLUM:**  I'm sorry.  What?

13          **THE COURT:**  We do not need the extra 15 tomorrow?

14          **MS. COSTANTIN:**  I think that's right, but let me just

15    double check.  Yeah, we're fine.

16          **THE COURT:**  Are we agreed we do not need the extra?

17          **MS. COSTANTIN:**  Correct, Judge.  We don't need the

18    other panel.

19          **MR. ROSENBLUM:**  Do you want to go through the second

20    panel causes?

21          **THE COURT:**  Are we finished with the first panel?

22          **MR. ROSENBLUM:**  Okay.  I just want to make sure I got

23    it right.  I have 4, 6, 14, 18, 31, and 32.

24          **MS. COSTANTIN:**  I have to say, I'm looking at -- you

25    had raised 22, and my notes are showing that there would be

1    an impact on her ability to be fair.  It's a struggle being

2    there in general.  Struggle being -- I'm not sure if that

3    was reflected as being a juror in general.  She had a father

4    who was treated unjustly.

5            **MR. ROSENBLUM:**  Your Honor, if I may.

6            Number 22, the government didn't raise the issue at

7    the time because they correctly indicated that I

8    rehabilitated her, and I think your notes would also show

9    that she was rehabilitated.  Her issue was generally serving

10   as a juror, that she finds it difficult, but I questioned

11   her that:  "Nobody's going to say it's not difficult, but

12   the question is, again, can you set aside any feelings you

13   have and decide this case just on the evidence and facts?"

14           And she indicated that rather -- she indicated that a

15   couple times and also said that she can decide this case

16   fairly and impartially for both sides not only the

17   government but for the defense.

18           **THE COURT:**  Initially she said, "Can't say.  Might

19   have impact."

20           Would you -- on the very -- would you pull up the

21   Number 22.  Do you want to do this in the morning?  We can

22   pull it up and see.  I have another note which said, yes,

23   this is why I struck her; yes, it would have impact.  And

24   that's why I was -- I thought she was gone.  But I also have

25   a note that -- as to some of the other matters, that I

1  thought she had been rehabilitated.

2      But would you pull up her -- could you give me -- have

3  it available in the morning, Laura?

4      **COURT REPORTER:**  Of course, Judge.

5      **THE COURT:**  And we'll take it up.

6      **MS. COSTANTIN:**  And at that time can we talk sort of

7  about what we anticipate the schedule's going to be like

8  tomorrow as in, if I need to be bringing witnesses and --

9      **THE COURT:**  I would expect that it won't take long in

10 the morning to get the jury, and I would expect this to go

11 into opening statements and --

12     **MS. COSTANTIN:**  Okay.  Judge, we'll have witnesses

13 here starting in the afternoon.

14     **THE COURT:**  Yes.

15     **MS. COSTANTIN:**  If that's okay.

16     **THE COURT:**  I think that's fair.

17     **MR. ROSENBLUM:**  All right.  You want to go through

18 the --

19     **MS. COSTANTIN:**  Scott, let's -- you mean just go

20 through to see if there's any -- what strikes we already

21 have?

22     **MR. FEIN:**  What we've already agreed on.

23 Thirty-eight.

24     **MR. ROSENBLUM:**  Thirty-eight, Ms. Murray.  I have --

25     **MR. FEIN:**  Forty-seven.

 1          **MR. ROSENBLUM:**  Forty-seven, Mr. Boyle.  Forty eight,

 2   Mr. Holder.

 3          **MR. FEIN:**  Fifty-four.

 4          **MR. ROSENBLUM:**  Fifty-four, Ms. Seib.

 5          **MR. FEIN:**  Fifty-seven.

 6          **MR. ROSENBLUM:**  Fifty-seven, Ms. Winters.

 7          **MR. FEIN:**  Fifty-nine.

 8          **MS. COSTANTIN:**  No, no.  Fifty-seven is Schultz.

 9          **MR. ROSENBLUM:**  Fifty-seven, Mr. Schultz.  Fifty nine,

10   Ms. Winters.

11          **MS. COSTANTIN:**  Yep.  That's what I agree.

12          **THE COURT:**  Are there others for cause from the

13   United States?

14          **MS. COSTANTIN:**  I don't have any additional cause at

15   this point, any for additional cause at this point, but I

16   would like the opportunity to review my notes in the

17   morning.

18          **THE COURT:**  Sure.

19          **MR. ROSENBLUM:**  Do you want me to go over the second

20   panel again?

21          **THE COURT:**  I'm sorry?

22          **MR. ROSENBLUM:**  Did you wanted me to go over the

23   second panel that we can agree on?

24          **THE COURT:**  Sure.

25          **MR. ROSENBLUM:**  Okay.  I think we've agreed on 38,

1  Ms. Murray; 47, Mr. Boyle; 48, Mr. Holder; 54, Ms. Seib; 57,

2  Mr. Schultz; and 59, Ms. Winters.

3       **THE COURT:**  That's what I show.  Any other challenges

4  for cause?

5       **MR. ROSENBLUM:**  Not at this time, but I'll review my

6  notes just like Ms. Costantin.

7       **THE COURT:**  Okay.  Good.  I am leaning towards my old

8  system of putting the names in a box and pull them out,

9  so -- I don't like just excusing people on the end just

10 because they're on the end.  My name was Webber.  I always

11 got kicked off on the end.

12      We'll talk about it in the morning.

13      **(Proceedings adjourned at 5:20 p.m.)**

14                     *   *   *   *

15

16

17

18

19

20

21

22

23

24

25

1                    **REPORTER'S CERTIFICATE**

2

3        I, Laura A. Esposito, Registered Professional Reporter

4   and Certified Realtime Reporter, hereby certify that I am a

5   duly appointed Official Court Reporter for the United States

6   District Court for the Eastern District of Missouri.

7        I further certify that the foregoing is a true and

8   accurate transcript of the proceedings held in the

9   above-entitled case, that said transcript contains pages 1

10  through 235, inclusive, and was delivered electronically.

11  This reporter takes no responsibility for missing or damaged

12  pages of this transcript when same transcript is copied by

13  any party other than this reporter.

14       Dated at St. Louis, Missouri, this 2nd day of September

15  2021.

16

17                          _Laura A. Esposito_

18                          _____
                            Laura A. Esposito, RPR, CRR, CRC
19                          Official Court Reporter

20

21

22

23

24

25

_USA vs. Boone and Myers, Case #18-975_          6/7/21 - Pg. 236
_Voir dire_