UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| PLAINTIFF. | ) ) ) |
| VS. | ) NO.: 4:18-cr-00975-ERW-1 ) |
| DUSTIN J. BOONE, | ) ) |
| DEFENDANT. | ) |

**OBJECTIONS TO PRESENTENCE REPORT**

Comes now the Defendant, Dustin Boone, by his lawyers Stephen Williams and Justin Kuehn, and respectfully makes the following objections to the presentence report (PSR):

1. Mr. Boone Objects to paragraphs 13 & 14 of the PSR. Mr. Boone generally objects to these two paragraphs to preserve the record and to not forfeit any issues that might be raised in post-trial motions or appeal.

2. More specifically, Mr. Boone objects to the first sentence of ¶ 13 which states that Mr. Boone and others had "no probable cause" to arrest L.H. The unrebutted evidence at trial refutes this assertion. In fact, the government's own witnesses and evidence established that a dispersal order had been issued – along with a warning that chemical agents would be used – prior to L.H.'s arrest.

    a. Government's witness L.H. testified that the dispersal order, which was given at the same time as the warning about the use of chemical weapons, was given (and can be heard on tape) before he was ordered to the ground by Bailey Coletta. Trial Trans., 6/10/21, at p. 118.

    b. The dispersal orders and warnings can also be heard on the recording of L.H.'s

      livestream that was offered by the government in evidence. Gov. Ex. 2 at 00:21 & 3:15.

  c. Sergeant Anthony Caruso also testified that he heard the dispersal orders given before L.H.'s arrest. Trans., 6/14/21, p. 235.

  d. Government witness Marcantano testified that he was aware that a dispersal order had been given prior to L.H.'s arrest. Trial Trans., 6/11/21, p. 94. Officer Marcantano further testified that at the time of the L/H.'s arrest, failure to comply with a dispersal order subjected an individual to lawful arrest. Trans., 6/11/21, p. 92 – 93.

  e. Officer Paul Chester also testified at trial that failure to disperse was an arrestable offense. Trans., 6/12/21, p. 10.

  f. L.H. further agreed that failure to comply with a dispersal order would subject someone to arrest. Trans. 6/10/21, pp. 91 – 92.

Given the testimony at trial, it is undisputed that dispersal orders had been given that warranted – and provided probable cause for - the arrest of L.H.

3. Mr. Boone similarly objects to ¶ 29 of the PSR in that it assesses a two-level enhancement for the physical restraint of L.H. "during the illegal arrest." In paragraph 2 of this Objection, Mr. Boone has established that there was probable cause for the arrest which justified the application of flex cuffs. Moreover, there was absolutely no evidence presented at trial which established that any violation of civil rights occurred during, or after, the flex cuffing of L.H.

  a. As to Mr. Boone, the jury was instructed – and found Mr. Boone guilty of –

2

      violating L.H.'s civil rights by aiding and abetting the use of excessive force. Jury Instruction No. 9, doc. 480, p. 12 – 15.

   b. Sergeant Caruso, who placed the flex cuffs on Mr. Hall, did not witness any use of force – or "aggression" – towards L.H. at any time during or after he placed the flex cuffs on L.H. Trans., 6/14/21, pp. 196, 198, 216, 223, 225.

   c. Additionally, L.H. himself testified in the second trial that he was not sure exactly when the assault stopped. However, his testimony strongly suggested that the assault had ended by the time the flex cuffs were put on him. Trans., 6/9/21, p. 228 & 6/10/21, p. 114.

   d. USSG § 3A1.3 provides for a two-point enhancement when the victim "was physically restrained in the course of the offense." "Physically restrained" is defined as forcible "restraint of the victim such as being tied, bound, or locked up." USSG § 1B1.1, n. 1(L).

Here, there is no evidence suggesting that L.H. was "physically restrained" within the meaning of the Guidelines during the offense. In fact, all the evidence suggests that the restraint itself was lawful and occurred after any unlawful use of force. Mr. Boone therefore requests that the Court decline to impose the enhancement suggested in ¶29 of the PSR.

4. Mr. Boone objects to the enhancement in ¶27 of the PSR for life threatening or permanent bodily injury. Mr. Boone instead suggests that the enhancement for serious bodily injury is more appropriate to the injuries suffered by L.H. USSG §§ 2A2.2(b)(3)(B), (C) & 1B1.1, n.1(K) & (M).

   a. The defense does not contest the fact that Mr. Hall suffered serious injuries, to

    include two disc herniations requiring surgery.  But these injuries fall squarely within what is contemplated by the Guidelines as a "serious bodily injury."

b.  "Serious Bodily Injury" is defined as "injury involving extreme physical pain or the protracted impairment of function of a bodily member, organ or mental faculty; or requiring medical intervention such as **surgery**, hospitalization or physical rehabilitation." § 1B1.1, n. 1(M)(emphasis added).

c.  "Permanent or life-threatening bodily injury" is an injury involving "substantial risk of death; **loss or substantial impairment** of the function of a bodily member, organ or mental faculty that is likely to be permanent." § 1B1.1, n. 1(K).

d.  Here, L.H.'s injuries are more properly categorized as "serious" within the definitions of the Guidelines.  First, there is no evidence that L.H.'s injuries are permanent.  Dr. Buchowski offered no testimony on permanency.  Trans., 6/14/21, pp. 101-112.  To be sure, L.H. testified that he still has some pain, even after the surgery. Trans., 6/10/21, p. 52.  But that does not establish that it is permanent.  Moreover, even if there were evidence establishing that L.H. would experience pain on a permanent basis, it would not amount to "loss or substantial impairment of the function of a bodily member" as is required by the guideline's definition for permanent injury.

e.  The defense therefore requests that the Court apply the enhancement for "serious bodily injury" rather than "permanent injury" suggested by the PSR.  Should the Court grant this objection, the resulting base offense level in ¶ 27 would be 23 instead of 24.

4

5. Should the Court grant both objections, the resulting adjusted offense level would be 30.

**WHEREFORE**, the Defendant, Dustin Boone, respectfully requests that the Court GRANT his Objections to the PSR.

/s/Justin A. Kuehn
Kuehn, Beasley & Young, P.C.
23 South 1st Street
Belleville, IL   62220
Telephone: (618) 277-7260
Fax: (618) 277-7718
justinkuehn@kuehnlawfirm.com

/s/STEPHEN C. WILLIAMS
Kuehn, Beasley & Young, P.C.
23 South 1st Street
Belleville, IL   62220
Telephone: (618) 277-7260
Fax: (618) 277-7718
Swilliams@kuehnlawfirm.com

## CERTIFICATE OF SERVICE

We hereby certify that on October 18th, 2021, we electronically filed the Objections to PSR with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/STEPHEN C. WILLIAMS
Kuehn, Beasley & Young, P.C.
23 South 1st Street
Belleville, IL   62220
Telephone: (618) 277-7260
Fax: (618) 277-7718
Swilliams@kuehnlawfirm.com