UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18 CR 975-1 ERW |
| | ) | |
| DUSTIN BOONE, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT**

Comes now the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Carrie Costantin and Robert F. Livergood, Assistant United States Attorneys for said District, and files its Response to Defendant's Objections to the Presentence Report.

Defendant specifically objects to three portions of the Presentence Report (PSR): 1) the statement in Paragraph 13 that co-defendant Colletta ordered Detective Hall (L.H.) to the ground despite having no probable cause to arrest him; 2) the two-level enhancement for physical restraint pursuant to United States Sentencing Guideline (USSG) §3A1.3; and 3) the enhancement for permanent or life-threatening injuries pursuant to USSG §2A2.2(b)(3)(C). Because the PSR's findings are supported by the evidence and law, defendant's objections should be over-ruled.

   I.  <u>The Objection to the First Sentence of Paragraph 13 Should be Over-ruled</u>

Defendant objects generally to Paragraphs 13 and 14 of the PSR which contain the offense conduct in order to preserve his record on appeal. He specifically objects to the first

1

sentence of Paragraph 13 which states "Despite having no probable cause to arrest L.H., and believing that L.H. was a protestor, Bailey Colletta ordered L.H. to the ground." Defendant objects on the basis that the evidence at trial established that a dispersal order had been given. This objection would have no effect on the guideline calculations.

Defendant's argument fails because: 1) co-defendant Bailey Colletta has admitted that she did not have probable cause when she ordered Detective Hall to the ground; and 2) Detective Hall was leaving the area as the dispersal order was being broadcast and thus was not in violation of any law.

In co-defendant Colletta's guilty plea agreement, she admits:

> As the CDT approached the corner of 14th and Olive Streets, Defendant Colletta and other CDT officers veered off and approached L.H. When the officers approached L.H., L.H. was standing on the corner by an electrical box. *L.H. did not appear to be committing a crime and Defendant Colletta did not witness anything that gave them probable cause to arrest L.H. Nonetheless, believing that LH was a protester, Defendant Colletta* and other CDT officers *ordered L.H. to the ground*. L.H. 's cell-phone video footage captures Defendant Colletta's voice as she ordered L.H. to the ground.

[Document 111, Colletta Guilty Plea Agreement, pp. 3-4. (emphasis added)]. The sentence in Paragraph 13 simply summarizes co-defendant Colletta's actions. It is supported by her admissions in her guilty plea agreement.

In addition, defendant contends that the fact that a dispersal order had been issued provided probable cause for Detective Hall's arrest. It is correct that the dispersal order is heard on the recording of Detective Hall's livestream moments before he is confronted. However, Detective Hall was leaving the area while the dispersal order was being given. He paused briefly during his path south along the side of the library to the park on the south side of Olive. He was confronted by officers at the corner of Olive and 14th Street. Trial Transcript, 6/9/21, pp. 220-222. Detective Hall's departure from the area as the dispersal order was being given complied

with the order.

Other officers testified that they did not see Detective Hall committing any crime, there was no description of any wanted person matching Detective Hall, and they did not direct anyone to arrest Detective Hall. Sgt. Caruso testified that there was no description of a wanted person like Detective Hall at the time of the arrest. Trial Transcript, 6/14/21, pp. 234-235. He did not direct anyone to arrest Detective Hall. Trial Transcript, 6/14/21, p. 235. He did not see what Detective Hall did to prompt him to be knocked to the ground by a CDT officer. Trial Transcript, 6/14/21, p. 235. Sgt. Marcantano testified that he did not see Detective Hall committing a crime. Trial Transcript, 6/11/21, p. 17. He also did not direct anyone to arrest Detective Hall. Trial Transcript, 6/11/21, p. 17.

Defendant's objection to the first sentence of Paragraph 13—"Despite having no probable cause to arrest L.H., and believing that L.H. was a protestor, Bailey Colletta ordered L.H. to the ground"—should be over-ruled.

II. The Enhancement for Restraint of Victim Applies

Defendant objects to Paragraph 29 of the PSR that found the two-level enhancement for restraint of victim pursuant to USSG §3A1.3. The PSR found that the two-level enhancement was appropriate because the victim "was physically restrained with flex cuffs during the illegal arrest." PSR, para. 29. Defendant argues that the assault was completed before the flex cuffs were placed on Detective Hall. However, even if Detective Hall was not flex cuffed until after the assault was over, the restraint-of-victim enhancement is appropriate because defendant forcibly restrained Detective Hall during the assault. The Government requests that the Court find the restraint-of-victim enhancement applies because of defendant's forcible restraint of Detective Hall during the assault.

Sentencing Guideline §3A1.3 states that "if a victim was physically restrained in the course of the offense, increase by 2 levels." "Physically restrained" is defined in the Commentary to §1B1.1 as "the forcible restraint of the victim such as by being tied, bound, or locked up." "The Eighth Circuit has stated that the words 'such as' within that definition are illustrative examples and 'do not limit the type of conduct that may constitute a physical restraint.'" *United States v. Plenty,* 335 F.3d 732, 735 (8th Cir. 2003), citing *Arcoren v. United States,* 929 F.2d 1235, 1246 (8th Cir. 1991).

Defendant held Detective Hall down while co-defendant Hays struck him with a riot baton. Defendant told two fellow officers that he held Detective Hall down and Detective Hall testified he was held down. Trial Testimony, 6/14/21, pp. 118-119 (defendant told officer that he knelt on the upper portion of Detective Hall's back and forced his head back on the ground); Trial Testimony, 6/14/21, p. 139 (defendant told officer that he was on top of Detective Hall and he held his head down); Trial Testimony, 6/9/21, p. 226 (Detective Hall felt pressure holding him down on his back and neck while he was being hit).

In *United States v. Long Turkey,* 342 F.3d 856, 859 (8th Cir 2003), the Eighth Circuit Court of Appeals affirmed the district court's finding of a physical restraint enhancement based on the defendant's "conduct of holding [victim] down by her arms and hair and pinning her beneath him during intercourse." *See also, United States v. Aguilar*, 512 F.3d 485, 488 (8th Cir. 2008) (physical restraint includes being held to floor and threatened); *United States v. Acoren*, 929 F.2d 1235, 1246 (8th Cir. 1991) (physical restraint where defendant placed hand on throat of victim and forced her to lie on the bed); *United States v. Kime,* 99 F.3d 870, 886 (8th Cir. 1996) (physical restraint where defendant pulled victim into van, held gun to head, and held him down while co-defendant assaulted him).

4

Other Circuits agree that physical restraint includes holding a victim down. *United States v. Johnson,* 492 F.3d 254, 257 (4th Cir. 2007) (physical restraint where defendant gripped victim's arms and held her down while co-defendant raped her); *United States v. Troup*, 426 F. Supp. 1072, 1135 (D. N.M. 2019) (physical restraint where defendant held bottom of victim's body while co-defendant strangled him); *United States v. Townsend*, 521 Fed. Appx. 904, 909 (11th Cir. 2013) (physical restraint where defendant pinned down victim and pulled hair).

Even a brief restraint constitutes physical restraint. In *United States v. Checora*, 175 F.3d 782, 791 (10th Cir. 1999), the Court held that defendants' tackle of the victim constituted physical restraint within the meaning of §3A1.3. The Court stated: "Their actions facilitated commission of the offense and therefore further endangered the victim." *Id.* "The fact the restraint of [victim] was brief does not alter our conclusion. As the Ninth Circuit has noted, the 'Guidelines do not distinguish between long and short-term restraint, and neither will we.'" *Id., citing United States v. Foppe,* 993 F.2d 1444, 1452 (9th Cir. 1993). Defendant's kneeling on Detective Hall's back and pushing his head down during the assault constituted "physical restraint" as defined by the Sentencing Guidelines and caselaw.

The Court should find that the two-level enhancement for "physical restraint" pursuant to §3A1.3 applies because defendant physically restrained Detective Hall by holding him down during the assault.

### III. The Enhancement for Permanent or Life-Threatening Bodily Injury Applies

Defendant objects to Paragraph 27 which imposes a seven-level enhancement because Detective Hall suffered a "permanent or life-threatening bodily injury" under USSG §2A2.2(b)(3)(C). Because there is a ten-level limit to the cumulative adjustments for §2A2.2(b)(2)(B) (four levels for use of a dangerous weapon) and §2A2.2(b)(3)(C) (permanent or

life-threatening bodily injury), in effect, the enhancement for Detective Hall's injury is reduced to six levels. This objection should be denied.

Dr. Jacob Buchowski testified that when he saw Detective Hall in August 2018—eleven months after the assault—Detective Hall had pain that was seven out of ten in severity with 75 percent in the neck and the remaining 25 percent in his left arm. Trial Transcript, 6/14/21, pp. 105-106. The MRI disclosed disc bulges/herniations at the C4-C5 and C5-C6 positions in the spine in his neck. Trial Transcript, 6/14/21, pp. 106-107. Because physical therapy, injections and medications were not working, Dr. Buchowski recommended surgery. Trial Transcript, 6/14/21, p. 107. He concluded that Detective Hall's symptoms were caused by and directly related to the assault. Trial Transcript, 6/14/21, p. 110.

Dr. Buchowski performed the surgery in October 2018. He made an incision in Detective Hall's neck, moved the throat contents to the side, removed the discs between the C4 and C5 vertebrae and between the C5 and C6 vertebrae. He then replaced those discs with pieces of cadaver bone and placed a plate in the front extending from the C4 vertebrae to the C6 vertebrae. Trial Transcript, 6/14/21, p. 108. This surgery caused Detective Hall to lose 16 to 20 degrees of motion in his neck. The cervical fusion also increased the chance of additional surgery by 2 ½ to 3 percent *each year*—in effect, ensuring that Detective Hall will have to endure additional surgeries on his spine. Trial Transcript, 6/14/21, p. 110. In 2021, Detective Hall testified that the shooting pain stopped after the surgery but that he continues to have pain every day. Trial Transcript, 6/10/21, p. 52. Luther Hall Jr. Victim Impact Statement, p. 2. He also has a visible scar on his neck from the surgery.

"Permanent or life-threatening bodily injury" is defined as "injury involving…loss or substantial impairment of the function of a bodily member, organ or mental faculty that is likely

to be permanent; or an obvious disfigurement that is likely to be permanent." USSG §1B1.1 Note 1(K). Detective Hall's injuries involve a substantial impairment of the function of his neck and upper body that is likely to be permanent. He has lost 16 to 20 degrees of the movement in his neck and still suffers pain. He has a scar on his neck. He is likely to require additional surgery in the future.

In *United States v. Price*, 149 F.3d 352, 354 (5th Cir. 1998), the Court of Appeals affirmed the district court's application of the "permanent or life-threatening bodily injury" enhancement where the victim and the doctor stated that he had lost 15 to 25 percent function in his left thumb and the damage was permanent. The Court stated "The plain language of application note 1(h) encompasses injuries that may not be terribly severe but are permanent, hence the disjunctive: 'permanent or life-threatening injuries.'" *Id. See also, United States v. Alvirez,* 831 F.3d 1115, 1126 (9th Cir. 2016) (enhancement appropriate where victim's ankle required steel and screws to stabilize which may require additional surgery and cause posttraumatic osteoarthritis); *United States v. Bogans,* 15 Fed. Appx. 504, 505 (9th Cir. 2001) (permanent bodily injury when victim will be prevented from heavy lifting and repeated bending and stooping). *United States v. Tinsley,* 166 F.3d 336, *8 (4th Cir. 1998) (permanent bodily injury where victim cannot perform strenuous activities but can still perform day-to-day activities); *United States v. Miner,* 345 F.3d 1004, 1006 (8th Cir. 2003) (permanent scar supports permanent injury enhancement).

Detective Hall suffered permanent substantial injury to his cervical spine that required surgery and is likely to require additional surgery. He suffers from pain and has a scar on his neck. The PSR properly found that the enhancement for permanent or life-threatening injuries applied.

7

For the foregoing reasons, the Government respectfully requests that the Court over-rule defendant's objections to the Presentence Report.

        Respectfully submitted,

        SAYLER A. FLEMING
        United States Attorney

        *s/ Carrie Costantin*
        Carrie A. Costantin #35925 MO
        Robert F. Livergood, #35432 MO
        Assistant United States Attorneys
        111 S. 10th Street, Room 20.333
        St. Louis, Missouri 63102
        (314) 539-2200
        carrie.costantin@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all parties of record.

        s/*Carrie Costantin*
        CARRIE COSTANTIN  #35925 MO
        Assistant United States Attorney