UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. S1 - 4:18 CR 975 ERW |
| v. ) | |
| ) | |
| DUSTIN BOONE, ) | |
| ) | |
| Defendant. ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

COMES NOW the United States of America, by and through Sayler Fleming, United States Attorney for the Eastern District of Missouri, and Carrie Costantin and Robert F. Livergood, Assistant United States Attorneys for said District, and files its Sentencing Memorandum.

On June 17, 2021, defendant was found guilty by the jury of Aiding and Abetting the Deprivation of Rights Under Color of Law. The Presentence Investigation Report (PSR) calculated a total offense level of 32 and a criminal history category of I. Defendant's advisory guideline range of imprisonment is 120 months. It is anticipated that defendant will request a downward variance from the guideline sentence. The Government requests that defendant be sentenced to the guideline sentence of 120 months.

I. The Section 3553(a) Factors Dictate Imposition of a Substantial Prison Sentence

Title 18, United States Code, Section 3553(a) lists the following relevant factors to be considered by the Court in sentencing:

    1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    2) the need for the sentence imposed --
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;

>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> 3) the kinds of sentences available;
> 4) the kinds of sentences and the sentencing range established for--
>   (A) the applicable category of offenses committed by the applicable category of defendant as set forth in the guidelines...
> 5) any pertinent policy statement ---
>   (A) issued by the Sentencing Commission...
> 6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct...

The application of these factors in this case supports a significant prison sentence.

A. <u>The Nature and Circumstances of the Offense and History and Characteristics of the Defendant</u>

1. <u>The Nature and Circumstances of the Offense</u>

As established at trial, defendant pinned Detective Hall to the ground and co-defendant Hays struck him with a riot baton. Detective Hall had violated no laws and did not resist the unlawful arrest. He sustained serious injuries from the assault: a through-and-through laceration to his lip that required layers of stitches to repair and a severe injury to his cervical spine that led to the replacement and fusion of discs in his neck. Detective Hall's injuries are permanent and painful.

Just as damning as defendant's actions during the assault are his words. While other officers dreaded working on the Civil Disobedience Team (CDT), defendant reveled in it as an opportunity to beat protestors. Two days before he assisted co-defendant Hays in their assault of Detective Hall, defendant texted that on CDT his role was to "…just fuck people up when they don't act right." Gov. Ex. 248. He texted "But it's gonna be a lot of fun beating the hell out of these shitheads once the sun goes down and nobody can tell us apart!!!!" Gov. Ex. 250. The day before the assault, defendant texted "This shit is crazy……. but it's fucking AWESOME too! Except for cops getting hurt. People on the streets got FUCKED UP! Lol." Gov. Ex. 253. Three

2

days after the assault, defendant texted "The problem is when they start acting like fools, we start beating the shit out of everyone on the street after we give two warnings…." Gov. Ex. 263.

Defendant's use of FaceTime during the assault emphasized the fact that he found the assault to be entertaining. FaceTime is a video cell phone call between two people. On September 17, 2017, defendant FaceTimed his then-girlfriend for 59 minutes, including the period of the assault. He placed his cell phone in his CDT uniform with the camera facing outward so that it sent video of his actions to her.

Defendant sent his then-girlfriend texts approximately twelve minutes before the assault stating "I'll FaceTime u when we get close. I won't say anything tho. Should have told u first! II'll [sic] try to get it so u can hear the radio too." After the assault, she texted him: "Lol no! That's so gross. But damn you guys need to practice more. Even I was confused. One guy was sayin HANDS DOWN, HANDS DOWN. Next dude saying HANDS UP. Then HANDS DOWN, HANDS DOWN, GET YOUR FUCKIN HANDS UP. 🤣🤣🤣🤣 " Later she texted him: "That was SOOOOOO COOL!!!!" Defendant responded "What was? The FaceTime? Or just all of it together?" She replied "The FaceTime." Gov. Ex. 485. This exchange highlights that defendant was basically showing off for his girlfriend by participating in the assault of Detective Hall.

The next day, after defendant learned that the person beaten was a police officer—not a protestor—he texted his then-girlfriend: "Nothing about that story to anyone please. Not something I am proud of and not entertaining at all at this point. I love you." Gov. Ex. 485. His text confirms that he viewed his participation in the beating as entertainment to be shared with his then-girlfriend—until he learned he had helped injure a police officer. At that point, the cover-up began, including defendant's attempt to minimize his role in the assault.

3

2. <u>The History and Characteristics of the Defendant</u>

Defendant has no criminal convictions. However, his texts indicate that he participated in at least four other assaults during the short time that he was a police officer.

On April 19, 2017, defendant texted other officers that he had tased a motor vehicle theft suspect and "Caught him in some THICK over grow in a side vacant lot, there was nobody around except me. [Officer] Shaw, shithead and god…he is at the hospital now…poor guy." He texted them: "Hahaha we made him tell the other officers on scene that he is a pussy! Hahaha he was puking on himself while EMS was looking at him and saying 'I'm a pussy, in [sic] a pussy.' And crying…… *it was the greatest moment of my short career! Lol*." Gov. Ex. 472. (emphasis added).

On October 12, 2017, defendant texted another police officer: "I've open hand slapped him one time down there when [Officer] santa and I were doing shit with MR [Mobile Reserve unit]. he is an ignorant mother fucker! We didn't arrest him but he got his eyes widened a little with a slap from a white boy. Lol." Gov. Ex. 487.

On November 7, 2017, defendant texted another police officer: "Yep. Mother fuckers. Dude got caught in a dead end gangway tho…He was crying and bloody for making me run that far…" Gov. Ex. 474.

On March 28, 2018, defendant arrested a juvenile. Another police officer texted defendant "I hope u beat that kids ass." Defendant responded: We didn't take him to children's [Hospital] for nothin! Lol. There r so many damn RTCC [Real Time Crime Center] cameras in the fifth now, I had to literally drag him behind a privacy fence to avoid one. Can't believe how inconvenient they have made things." Gov. Ex. 490.

Defendant had a practice of abusing suspects, both before and after he participated in the

4

assault of Detective Hall. His history supports a stiff prison sentence.

  B. <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense</u>

Defendant was a police officer at that time that he assisted in the assault of Detective Hall. A significant prison sentence is necessary to reflect the seriousness of the offense, promote respect for the law and provide just punishment. Our society has delegated the use of appropriate force to our law enforcement officers. The vast majority of police officers take this responsibility seriously. Defendant did not. As seen in his text messages, defendant used his position of authority to abuse citizens and boasted about his actions. The justice system must impose a stiff prison sentence so that the community sees that this conduct by police officers is unacceptable. Moreover, a substantial prison sentence is just punishment for the offense, taking into account defendant's action in this assault and, as revealed by his text messages, his other assaults of suspects.

  C. <u>To Afford Adequate Deterrence to Criminal Conduct</u>

Defendant's sentence must create adequate deterrence to criminal conduct by other police officers. Scholars have differed on the effectiveness of lengthy sentences to deter other actors because deterrence depends on the assumption that the other individuals are aware of the consequences. Police officers will be deterred because they are sensitive to the prosecution of officers for civil rights violations—they do not want to be in that position. A significant prison sentence will deter other police officers from abusing citizens.

  II. <u>Conclusion</u>

Defendant texted that he was going to have fun beating protestors when the sun went down and nobody could tell the officers apart. He held Detective Hall down while co-defendant Hays

5

struck him with a riot baton. Detective Hall suffered serious, permanent injuries. Defendant FaceTimed the assault to his then-girlfriend as entertainment.  After the assault, he continued to relish "beating the shit out of everyone on the street."  Defendant gloried in at least four other assaults that he committed both before and after he participated in the assault on Detective Hall. His conduct is inexcusable and demands a lengthy prison sentence.

For the foregoing reasons, the Government respectfully requests that the Court sentence defendant to the guideline sentence of 120 months.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

*s/Carrie Costantin*
Carrie Costantin, #35925 MO
Robert F. Livergood, #35432MO
Assistant United States Attorneys
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Carrie Costantin*
CARRIE COSTANTIN #35925 MO
Assistant United States Attorney